UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILIP FEI, on behalf of himself and classes
of those similarly situated,

                                    Plaintiff,

                    v.

WESTLB AG,

                                    Defendant.

Index No.:  07 Civ. 8785 (HB) (FM)

## MEMORANDUM OF LAW OF WESTLB AG
## IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT OR
## ALTERNATIVELY TO PRECLUDE THE USE OF MISAPPROPRIATED
## INFORMATION AND PRECLUDE PHILIP FEI FROM BEING THE
## COLLECTIVE/CLASS ACTION REPRESENTATIVE

# TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT .................................................................................................1

II.  STATEMENT OF FACTS ....................................................................................................2

    A.   Fei's Responsibilities As Payroll Manager................................................................2

    B.   WestLB's Policies Concerning Use Of Its Documents And Information ..............4

    C.   Fei's Misappropriation Of WestLB's Documents And Information ......................7

III. ARGUMENT .......................................................................................................................13

    A.   Fei's Complaint Should Be Dismissed. ...................................................................13

    B.   Alternatively, The Misappropriated Information Should Not Be Able To Be Used In This Lawsuit And Fei Should Be Precluded From Being The Collective/Class Action Representative.................................................................15

        1.   The Misappropriated Information Should Not Be Able To Be Used In This Lawsuit. ...................................................................................15

        2.   Fei Should Be Disqualified From Serving As Collective/Class Action Representative...............................................................................16

            a.   Fei Should Be Disqualified Because Of His Misappropriation.........................................................................16

            b.   Fei Should Be Disqualified Because His Claim Is Without Merit...................................................................................17

CONCLUSION...................................................................................................................19

# TABLE OF AUTHORITIES

Page

## CASES

*Castro v. Metro. Transp. Auth.*, No. 04 Civ. 1445 (LTS)(THK), 2006 U.S. Dist. LEXIS 32842 (S.D.N.Y. May 23, 2006)......................................................................19

*Cobb v. Avon Products, Inc.*, 71 F.R.D. 652 (W.D. Pa. 1976) ....................................16

*Doe v. A Corp.*, 709 F.2d 1043 (5th Cir. 1983) ...........................................................17

*Fayemi v. Hambrecht & Quidt, Inc.*, 174 F.R.D. 319 (S.D.N.Y. 1997) ..................13, 15

*Jackson v. Microsoft Corp.*, No. C01-775P, 2002 U.S. Dist. LEXIS 19048 (W.D. Wa. Feb. 12, 2002), *aff'd*, 78 Fed Appx. 588 (9th Cir. 2003)....................................13, 15

*Kahn v. Superior Chicken & Ribs, Inc.*, 331 F. Supp. 2d 115 (E.D.N.Y. 2004) ..........18

*Lahr v. Fulbright & Jaworski, L.L.P.*, 94-CV-0981-D, 1996 U.S. Dist. LEXIS 20133 (N.D. Tex. July 10, 1996) ......................................................................................15, 16

*Lipin v. Bender*, 84 N.Y.2d 562 (1994) ...........................................................13, 14, 15

*Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326 (5th Cir. 2000) ...........18

*Lynch v. Jet Center of Dallas, LLC*, No. 3:05-CV-2229-L, 2007 U.S. Dist. LEXIS 5728 (N.D. Tex. Jan. 26, 2007).......................................................................................19

*McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246 (E.D. Pa. 2006) ............................17

*Perna v. Elec. Data Sys. Corp*, 916 F. Supp. 388 (D.N.J. 1995)............................14, 15

*In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89 (D. Conn. 2006) .....................16, 17

*Robinson v. Sheriff of Cook County*, 167 F.3d 1155 (7th Cir. 1999).......................17, 18

*In re Shell Oil Refinery*, 143 F.R.D. 105 (E.D. La. 1992) ...........................................15

## STATUTES

29 C.F.R. § 541.200(a)(1)-(3) (2004) .........................................................................18

29 C.F.R. § 541.201(b) (2004).....................................................................................18

29 C.F.R. § 541.202(b) (2004)......................................................................................19

60092356_1.DOC

Defendant and Counterclaim Plaintiff WestLB AG ("WestLB") respectfully submits this memorandum of law in support of its Motion to Dismiss the Complaint in its entirety or alternatively to preclude the use in this litigation of the documents and information that Plaintiff and Counterclaim Defendant Philip Fei ("Fei") misappropriated from WestLB and to preclude Fei from being the collective/class action representative.

Fei alleges that WestLB violated the Fair Labor Standards Act and New York State law by failing to pay overtime to Fei and other current and former WestLB employees. WestLB has answered Fei's Complaint by denying that there is any factual or legal basis for these allegations, and has asserted Counterclaims against Fei for misappropriating WestLB's privileged and confidential information, and the private information of its employees, including but not limited to their Social Security Numbers.

## I.    PRELIMINARY STATEMENT

At the outset, it must be emphasized that the circumstances surrounding Fei's misconduct are troubling. They render him an unsuitable collective/class action representative. Moreover, his own overtime claim is demonstrably weak.

As discussed below in detail:

- In violation of both the law and Bank policy, Fei, while employed as WestLB's Payroll Manager, misappropriated, by sending outside the Bank to his own personal email account, privileged, confidential and proprietary WestLB information. In addition, separate and apart from the emails, Fei removed hard copies of 32 documents containing WestLB's confidential information. Before leaving the employ of WestLB, he falsely represented to a fellow member of WestLB's Human Resources Department that he had returned all Bank property.

- The WestLB information that Fei, in fact, misappropriated rather than returned includes data assembled by a team of Human Resources professionals—of which Fei was a member—and the Bank's attorneys in connection with a privileged review of the Banks' classification of employees for overtime purposes that is the very subject of this lawsuit by Fei.

- Fei presents himself to this Court as someone who can be relied upon faithfully to represent the interests of other former and current employees of WestLB. Yet, in violation of law, his fiduciary duty and the privacy of his fellow employees, Fei sent to his personal email account such personal information as the social security numbers of virtually all of the employees he seeks leave to represent in this lawsuit.

- Fei's misappropriation represents a blatant circumvention of the judicial procedures of this Court. Therefore, for the reasons set forth below, Fei should be sanctioned accordingly.

- A review of Fei's own resume and self-evaluations show that he was a senior level member of the Human Resources Department and vested with substantial discretion and otherwise well outside of the collective/class intended to be covered by the FLSA and New York State law. These documents undermine Fei's personal claim and his ability to serve as a collective/class action representative.

## II.    STATEMENT OF FACTS

### A.    Fei's Responsibilities As Payroll Manager

WestLB hired Fei in July 2000 as its Payroll Manager. (Affidavit of Linda Shirley [hereinafter "Shirley Aff."] ¶ 3.) In this position, Fei worked independently and with little supervision to administer the payroll obligations of WestLB. Specifically, Fei's responsibilities included: running payroll; resolving queries raised by WestLB's Human Resources staff and other employees, most of which required advanced knowledge and research; providing expertise to employees regarding payroll, tax, benefits, expatriate calculations and other issues; advising foreign nationals as to the Bank's payroll policies; liaising with the accounting firms retained by WestLB; and interpreting and applying WestLB's policies governing payments to employees. (*Id.* ¶¶ 5-6, 12-15.) WestLB employees often deferred to Fei's knowledge and judgment in his areas of responsibility. Indeed, Fei was WestLB's payroll expert, and employees up to and including the Executive Director of Human Resources deferred to his knowledge and expertise in this area. (*Id.* ¶ 5.) Fei's own resume states that at WestLB he "supervised and trained

employees in all aspects of payroll processing." (A copy of Fei's resume is attached to the Affirmation of Jason Habinsky [hereinafter "Habinsky Aff."] as Exhibit A.)

In his position as Payroll Manager, Fei was involved in issues regarding the payment of overtime and administered WestLB policy with regard to overtime. For example, Fei received the names of employees classified as non-exempt for overtime purposes, sent them the appropriate timesheet form, and explained WestLB's policies regarding the recording of hours to the employees. (Shirley Aff. ¶ 12.) Non-exempt employees submitted their timesheets directly to Fei. Fei was responsible for reviewing the timesheets, and could raise objections as to the accuracy of the timesheets. (*Id.* ¶ 13.) Fei also generated reports providing the hours of overtime worked by the Bank's non-exempt employees and therefore was aware of the amounts of overtime worked by the employees. (*Id.* ¶ 14.) Moreover, Fei participated in reclassification projects where certain employees' overtime status was reviewed and revised. Fei even served as a WestLB representative who would answer any questions from the reclassified employees. (*Id.* ¶ 15.)

Fei also was involved in developing and implementing WestLB's policies and procedures. By Fei's own admissions, he assisted with the Bank's "new global secondment policy" (relevant excerpts of self-evaluations completed by Fei while employed by WestLB are attached to the Habinsky Aff. as Exhibit B, at 2), " [r]eview[ed], coordinat[ed] and implement[ed] [WestLB's] new global expat policies", (*id.* at 5), and was "[i]nvolve[d] and collaborate[d] with [Human Resources] regarding WestLB's time off/payment policy and procedures," (*id.* at 5). In his resume, Fei stated that his duties at WestLB included: "implementation, communication, and administration of expatriate's compensation package"; "implement[ing] the direct deposit program"; and "develop[ing] and implement[ing] the

company's severance pay procedure….'" (Habinsky Aff., Ex. A.)  Fei also stated in his resume

that at WestLB, he was responsible for administering and managing several Bank programs,

including: "401k account including enrollment, employee contribution, employer match, loan

repayment, funds wire transfer, and reporting" and the deferred compensation program.  (*Id.*)

Fei held a sensitive position, and, accordingly, was required by law to take two

consecutive weeks of vacation per year.  (Shirley Aff. ¶ 8.)  He had B-level signature authority,

which allowed him to contractually bind the Bank, sign checks and execute wire transfers on

behalf of the Bank with the concurrence of another employee holding signature authority.  (*Id.* ¶

9.)  On several occasions Fei stated to Linda Shirley, an Executive Director for Human

Resources, that he wanted his position title to be changed to Associate Director based upon his

responsibilities and performance.  (*Id.* ¶ 10.)

In accordance with these job responsibilities, Fei had access to highly sensitive,

confidential, and privileged information belonging to WestLB, including personal and private

information regarding WestLB's employees.  (*Id.* ¶ 7.)  As a result, Fei owed WestLB a fiduciary

duty to protect this information and act in good faith and in WestLB's best interests.

On June 6, 2007, Fei gave notice of his resignation from employment with WestLB.

Fei's last day of employment was June 19, 2007.  (*Id.* ¶ 3.)

**B.    WestLB's Policies Concerning Use Of Its Documents And Information**

WestLB maintains several policies governing its employees' use of Bank documents and

information.  First, WestLB maintains the WestLB Code of Conduct ("Code of Conduct") by

which all employees are required to abide.  The Code of Conduct provides:

> all employees…are required to read and follow the WestLB Code of
> Conduct.  WestLB expects that all of its employees and representatives to
> act in accordance with the highest standards of personal and professional

integrity in all aspects of their activities and to comply with the letter and spirit of all applicable laws, regulations and internal policies.

(The Code of Conduct is attached to the Habinsky Aff. as Exhibit C.)  As an employee of

WestLB, Fei was required to read and follow the Code of Conduct and, on August 22, 2005 and

December 7, 2006, acknowledged that he had done so. (Fei's Code of Conduct

acknowledgement is attached to the Habinsky Aff. as Exhibit D.)

The Code of Conduct further provides:

Employees should not disclose or use for their own benefit, or the benefit of anyone other than WestLB, information about WestLB that is not known to the general public . . . . While employed at WestLB, employees will have access to certain confidential and/or proprietary information, including but not limited to . . . personnel and compensation records, business strategies and practices, and financial data.  In consideration of employment, employees are prohibited from revealing any of WestLB's confidential and/or proprietary information to persons outside the employ of WestLB, both during their employment with WestLB or at any time after WestLB employment ends.

(Habinsky Aff., Ex. C.)  The Code of Conduct also provides:

Employees are not allowed to remove from WestLB's offices any of WestLB's . . . records, documents, files, correspondence, reports, memoranda, or other materials or property of any kind, whether in electronic, paper or other form, except as necessary for the performance of their job responsibilities while working at WestLB. In the event of any such removal being necessary, manager approval must be obtained… Employees agree not to make, retain or distribute any copies of any such material for any reason except as authorized and necessary for the performance of their responsibilities.  They shall not divulge to any third person the nature or contents of any such material or of any information to which they may have access or with which for any reason they may become familiar, except as such disclosure shall be necessary in the performance of their job responsibilities.

*(Id.)*

All WestLB employees also receive the WestLB-US Policy Manual & Employee

Handbook (the "WestLB Handbook").  On August 3, 2000, Fei signed an Acknowledgment

Form stating that "I have received a copy of the WestLB-US Policy Manual & Employee Handbook.  I understand that as an employee of WestLB that I am obligated to adhere to and cooperate with the policies as written."  (A copy of Fei's WestLB Handbook acknowledgement is attached to the Habinsky Aff. as Exhibit E.)

Bank Policy 4.1.3, "Electronic Messaging, Remote Access and Communication" in the WestLB Handbook provides:

> Employees may not use e-mail to disclose confidential or proprietary information about or belonging to the Bank or for any purpose that is illegal, against Bank policy or contrary to the Bank's interest.

(A copy of Bank Policy 4.1.3 is attached to the Habinsky Aff. as Exhibit F.)

On July 31, 2000, Fei executed an E-mail/Hardware/Software Policy Consent Form and acknowledged that WestLB's electronic communication systems "are to be used solely for job related purposes."  (A copy of the acknowledgement is attached to the Habinsky Aff. as Exhibit G.)

WestLB also maintains Security Awareness Guidelines.  The Security Awareness Guidelines provide, "All members of staff (employees, temps, consultants, etc.) are responsible for the security of the information that is entrusted to them.  Within his or her area of influence, every manager is directly responsible for the implementation of and compliance with the rules governing the security of information."  (Security Awareness Guidelines at 3.  A copy of the Security Awareness Guidelines is attached to the Habinsky Aff. as Exhibit H.)  Section 8 "Sensible Communication Practices", provides: "Do not send attachments of Bank documents to non-WestLB email addresses without permission."  (*Id.* at 10.)

On June 19, 2007, Fei's last day of employment with WestLB, Human Resources Manager Amy Favetta had an exit interview with Fei.  Ms. Favetta asked Fei whether he had returned all WestLB property.  Fei stated that he had.  (Shirley Aff. ¶ 4.)

### C.    Fei's Misappropriation Of WestLB's Documents And Information

After Fei's resignation, on November 21, 2007, WestLB discovered that during Fei's employment, he used the WestLB computer that WestLB had given him access to for authorized purposes to transmit without authorization highly sensitive WestLB documents and information to his personal Hotmail account.  (Shirley Aff. ¶ 16.)  On November 30, 2007, WestLB's counsel, Hughes Hubbard & Reed LLP, sent a letter to Fei's counsel Outten & Golden LLP demanding the return of the WestLB documents and information that Fei transmitted to his personal Hotmail account, along with any other WestLB information in Fei's and/or his attorneys' possession.  (A copy of the letter is attached to the Habinsky Aff. as Exhibit I.)  By letter dated December 13, 2007 and received December 14, 2007, Fei's counsel, Outten & Golden LLP, confirmed that "Fei does have emails related to West LB in his hotmail account."  (A copy of the letter is attached to the Habinsky Aff. as Exhibit K.)  That letter also enclosed and returned separate, additional documents from Fei "related to West LB in his possession", as described *infra*.

The information that Fei transmitted to his personal Hotmail account, includes, *inter alia,* personal and private information of WestLB's employees, including, but not limited to, their social security numbers, home addresses, birthdates, home telephone numbers and salaries.  The information that Fei transmitted to his personal Hotmail account also includes, *inter alia*, WestLB's confidential, proprietary and attorney-client privileged information.  (Shirley Aff. ¶ 17.)

Specifically, the WestLB documents and information Fei transmitted to his personal

Hotmail account include, but are not limited to:[1]

> 12/10/2002 – an email from Pankaj Khosla, an accountant at PricewaterhouseCoopers, containing tax advice received by Fei's then-supervisor, Patt Reid, and Fei.

> 10/19/2004 – an email and document from Executive Director of Human Resources Janine Cristiano setting forth WestLB's updated Severance Benefit Plan.

> 10/25/2004 – an email and document from Mark Tobia, an accountant at KPMG, setting forth the incomes of 13 WestLB employees.

> 10/25/2004 – an agreement between WestLB and former employee Jack Seifert, labeled "STRICTLY PERSONAL AND CONFIDENTIAL", governing the termination of the employment relationship.

> 12/1/2004 – an email from Connie Kain, an employee in Group Communications setting forth WestLB's priorities for a new marketing strategy.

> 12/2/2004 – a 9/16/2003 email from Sonya Clark, an accountant, containing New York City tax advice received in connection with his duties at WestLB.

> 12/2/2004 – a 11/3/2003 email from Sonya Clark, an accountant, containing New York City tax advice received in connection with his duties at WestLB.

> 12/3/2004 – a secondment contract between WestLB and employee Thomas Rapp, outlining pay and benefits and marked "Private/Confidential".

> 12/15/2004 – a document from WestLB's London Payroll Manager specifying the income and benefits paid in 2004 to an employee who moved to New York.

---

1.  If it would assist the Court in deciding this Motion, WestLB will provide the Court with a copy of the documents taken by Fei for an in camera inspection.

3/15/2005 – an email listing the Human Resources employees who received title promotions that month.

3/15/2005 – an email concerning an applicant for a Human Resources position, including the applicant's resume.

3/25/2005 – a spreadsheet containing a listing of all employees and their total compensation, bonuses, and all promotions given in the 2004 review cycle.

6/2/2005 – a 3/22/2005 email from Phillip Grasso, an accountant at KPMG, containing tax advice concerning an ex-patriate.

7/6/2005 – an email between Daniel Orchant, an accountant at KPMG, and WestLB employees concerning tax calculation issues for an ex-patriate.

9/9/2005 – an email between Executive Director Human Resources Lisa Carro and Mary Claire Costello, a former WestLB employee containing information about Ms. Costello's hours worked, as well as her 401k participation level.

10/18/2005 – an email and PowerPoint presentation from a Ceridian web seminar that Fei attended entitled "Data Privacy and Security Trends: Here and Abroad."

11/17/2005 – an email from Phillip Grasso, an accountant at KPMG, containing tax and accounting advice Fei received in his position as Payroll Manager.

4/7/2006 – an email from Tommi Aberle regarding overtime eligibility of employee and memorializing Fei's role in informing employee of eligibility.

8/8/2006 – July 2006 Department List and Personnel Activity containing a list of WestLB employees and information concerning their employment, including corporate positions and titles, as well as a list of all employment actions, such as hirings and firings, that occurred in July 2006.

8/8/2006 – a "gross-up" calculator created by Phillip Grasso for Fei's use in his job duties at WestLB.

9/25/2006 – Benefits Checklist for the month of September 2006 containing a list of WestLB employees and their personal

information, including their Social Security Numbers, home addresses and telephone numbers, birthdates and salaries.

9/25/2006 – August 2006 Department List and Personnel Activity containing a list of WestLB employees and information concerning their employment, including corporate positions and titles, as well as a list of all employment actions, such as hirings and firings, that occurred in August 2006.

11/9/2006 – an email received by WestLB employees from KPMG accountants, containing detailed accounting advice concerning federal tax law.

12/6/2006 – an attorney-client privileged email and document received by WestLB employees from Hughes Hubbard & Reed attorneys containing legal advice concerning "seconded employees."

12/6/2006 – an email chain between Fei and Executive Director Human Resources Gregg Rieber regarding WestLB's policy for providing additional compensation to exempt employees who worked on holidays.

1/19/2007 and 1/23/2007 - internal emails concerning overtime to be paid to specific employees, including details of hours worked on specific days by the employees.

1/30/2007 – an email between Fei and WestLB Human Resources employees concerning specific, named employees who had been recently classified as non-exempt for overtime purposes and the Bank's decisions regarding retroactive pay and the bank's reasons for reclassifying the employees.

6/8/2007 – the Human Resources departmental phone list.

6/8/2007 – a document entitled "Final exemption report Updated June 6.xls" containing information regarding the Bank's overtime reclassification project as of June 6, 2005, including names of employees and their classification status, their annual salaries, and the number of overtime hours that they had worked in 2005.

6/8/2007 – May 2007 Department List & Personnel Activity report containing a list of WestLB employees and information concerning their employment, including corporate positions and titles, as well as a list of all employment actions, such as hirings and firings, that occurred in May 2007.

6/8/2007 – stock option information provided to WestLB by a prospective employee, Michael Xie, containing information regarding stock options he received from Moody's, including the date, number, and prices of various grants of stock options.

6/12/2007 – a 5/15/2006 email and salary update letters for the HR department containing information regarding the promotion of certain employees to new positions.

6/12/2007 – an email and document that Fei had originally sent to HR employees on 2/27/2006 specifying the amounts of overtime pay paid to WestLB employees in 2005, including the amount the employees received in overtime pay, as well as their overall compensation for 2005 including their bonuses.

6/12/2007 – the June 6 Final Exemption report that he originally sent himself on 6/8/2007.

6/12/2007 – a 1/31/2005 email and document that contained a headcount of WestLB employees as of December 2004 listing WestLB employees and their place in the organizational structure, as well as their status as employees, temporary workers or consultants, or in-pats.

6/13/2007 and 6/14/2007 – emails concerning the federal employer tax identification numbers used by WestLB, including advice from KPMG accountants and Hughes Hubbard & Reed attorneys.

Fei's transmission of this information to his personal Hotmail account was not necessary for or in furtherance of his job responsibilities with WestLB, and was not authorized by WestLB. (Shirley Aff. ¶ 16.)

Significantly, Fei transmitted WestLB documents and information to his personal Hotmail account at least ten times between June 6, 2007, the date he gave WestLB notice of his resignation, and June 19, 2007, his last day of employment.  (Shirley Aff. ¶ 20.)

Separate and apart from using the WestLB email system to misappropriate information, Fei also removed hard copies of over 30 documents containing WestLB confidential information. (Habinsky Aff. ¶ 15, Ex. K, L.)[2]  These documents that Fei misappropriated include: records of overtime payments made to specific WestLB employees; agendas and notes memorializing Human Resources meetings at which FLSA reclassification projects were discussed; notifications to Fei of particular employees' eligibility for overtime payments; an email authored by Fei that notified WestLB employees that they were eligible to receive overtime payments and offering to answer any related questions; a proposed WestLB policy governing payments to non-exempt employees; and a PowerPoint presentation entitled "Americas Human Resources, 2005 Year In Review," dated March 16, 2006.  (Habinsky Aff. ¶ 15, Ex. L.)

Beginning on September 25, 2006, the same day that Fei forwarded to his personal Hotmail account the Benefits Checklist for the month of September 2006, containing WestLB's employees Social Security Numbers, home addresses and telephone numbers, WestLB became aware that employees included on this list had become the victims of identity theft.  (Shirley Aff. ¶ 19.)

Fei's misappropriation of WestLB's documents and information, and the personal and private information of its employees, violated WestLB's policies, included those contained in its Code of Conduct, WestLB Handbook and Security Awareness Guidelines.  Fei violated the Computer Fraud and Abuse Act and his fiduciary duty and duty of loyalty to WestLB by

---

2.   If it would assist the Court in deciding this Motion, WestLB will provide the Court with a copy of the documents taken by Fei for an in camera inspection.

misappropriating WestLB's documents and information, and the personal and private information of its employees.

### III.    ARGUMENT

####     A.    Fei's Complaint Should Be Dismissed.

It is well-settled that Courts have the inherent equitable power over their own process "to prevent abuses, oppression and injustices." *Fayemi v. Hambrecht & Quidt, Inc.*,, 174 F.R.D. 319, 324 (S.D.N.Y. 1997). Pursuant to this authority, a Court has the power to sanction a party like Fei who has wrongfully obtained evidence for use in a litigation. *Id*.

Courts routinely have held that the dismissal of a complaint is an appropriate remedy for the plaintiff's wrongful taking of evidence for use in litigation. In *Jackson v. Microsoft Corp*., No. C01-775P, 2002 U.S. Dist LEXIS 19048, at *3 (W.D. Wa. Feb. 12, 2002), *aff'd*, 78 Fed Appx. 588, 589 (9th Cir. 2003), the plaintiff, like Fei, misappropriated his employer's information, including confidential, privileged and private employee information, for use in the litigation. The Court granted Microsoft's motion to dismiss the complaint as a sanction for the plaintiff's misconduct. *Id*. at *32, 40.

Similarly, in *Lipin v. Bender*, 84 N.Y.2d 562, 572 (1994), the court upheld the dismissal of the plaintiff's complaint because of her taking and use of her adversary's documents. The court, in words equally applicable here, stated that the plaintiff "preserved the information gleaned for maximum advantage to herself (and maximum disadvantage to defendants in the litigation)" and her "knowledge of course can never be purged." *Id.*; *see also Perna v. Elec. Data Sys. Corp*, 916 F.Supp. 388, 400, 403 (D.N.J. 1995) (dismissing complaint where plaintiff photocopied defendant's documents because his behavior "evidence[d] a willful and improper design to avoid the rules of discovery and gain an unpermitted advantage").

Likewise, here, the dismissal of Fei's complaint is the appropriate sanction.  It has not been disputed that during Fei's employment, he misappropriated WestLB's confidential, proprietary and attorney-client privileged information, and the personal and private information of its employees (including all of those employees whom he purports to represent in this litigation).  Fei's transmission of this material to his personal Hotmail account and his taking of hard copy documents were without authorization and not in furtherance of any of his work responsibilities, and therefore squarely violated WestLB's policies.  Notably, Fei transmitted WestLB's documents and information to his personal Hotmail account on at least ten separate occasions during the two weeks following his notice of resignation and preceding his last day of employment. (Shirley Aff. ¶ 20.)  Further, Fei flatly lied to WestLB's Human Resources Manager during his exit interview by affirming that he had returned all WestLB property. (Shirley Aff. ¶ 4.)

Not surprisingly, much of the information that Fei misappropriated pertains to overtime information and employee information, which is the subject of Fei's claims in this lawsuit.  The misappropriated information includes WestLB's attorney-client privileged information and the personal and private information of its employees.

Consequently, Fei, like the plaintiffs in *Jackson* and *Lipin*, has gained an unfair advantage to WestLB's disadvantage by circumventing the Court's well-established discovery procedures by improperly having misappropriated information.  Even if Fei were to return the misappropriated information, his knowledge of such information "can never be purged."  As the Court stated in *Perna*,

> dismissal is the only form of discipline that will insure the orderly
> administration of justice and the integrity of the courts.  It is the only
> remedy that will punish the perpetration of fraud upon the court.  It is his

> conduct which offends the basic notions of fair play that must be sanctioned.  Thus, there is no other sanction available that will in my view, deter him as well as others from engaging in this type of behavior.

916 F. Supp. at 401.  Similarly, Fei's Complaint should be dismissed in its entirety.

**B.      Alternatively, The Misappropriated Information Should Not Be Able To Be Used In This Lawsuit And Fei Should Be Precluded From Being The Collective/Class Action Representative.**

**1.      The Misappropriated Information Should Not Be Able To Be Used In This Lawsuit.**

In the event that the Court chooses not to dismiss this lawsuit, alternatively the information that Fei misappropriated should not be able to be used.  Courts routinely preclude the use of wrongfully obtained information in similar circumstances.  For example, in *Fayemi*, 174 F.R.D. at 322, an employee copied "highly confidential" bonus information from his former employer's computers immediately following his termination and then used such information in his lawsuit against his former employer.  The Court found the plaintiff's conduct "clearly wrongful" and determined that precluding the plaintiff from using the bonus information in the litigation was an appropriate remedy.  *Id.* at 325; *see also In re Shell Oil Refinery*, 143 F.R.D. 105 (E.D. La. 1992) (precluding the use of evidence improperly obtained from an employee in a class action lawsuit in order to "preserv[e] the integrity of [the] judicial proceeding"); *Lahr v. Fulbright & Jaworski, L.L.P.*, 94-CV-0981-D, 1996 U.S. Dist. LEXIS 20133, at *12-13 (N.D. Tex. July 10, 1996) (precluding the use of documents by a former employee of the defendant law firm and finding that the "exclusion of deceptively obtained evidence remains a matter within the sound discretion of the court").  Accordingly, in the event that Fei's Complaint is not dismissed, the information that Fei misappropriated should not be able to be used in this lawsuit.

> ### 2.    Fei Should Be Disqualified From Serving As Collective/Class Action Representative.

Fei should be disqualified from serving as collective/class action representative as a result of his misappropriation of WestLB's information.  Fei also should be disqualified from being the collective/class action representative because his claim is "extremely weak."

> ### a.    Fei Should Be Disqualified Because Of His Misappropriation.

Fei should be disqualified from serving as collective/class action representative as a result of his wrongful conduct.  Courts have found plaintiffs engaging in misconduct directed towards their employer to be inadequate class representatives.  For example, in *Cobb v. Avon Products, Inc.*, 71 F.R.D. 652, 655 (W.D. Pa. 1976), the court disqualified the plaintiff as class action representative in a Title VII class action against her former employer because during her last three months of her employment she secretly worked for another employer and neglected her job duties and responsibilities.  The Court held that a "person who is capable of deceiving her employer and disregarding her duties and responsibilities to the extent which the plaintiff has exhibited here . . . is not the type of person who would be attentive to her responsibilities and duties as a representative of a class of litigants."  *Id.*  Here, Fei engaged in misconduct far more egregious and unseemly than that exhibited by the plaintiff in *Cobb* – a deliberate pattern of misappropriation – which renders him an inadequate representative.  *See also In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 100 (D. Conn. 2006) (noting that if plaintiffs are "evasive, untruthful, or lack credibility, this weighs heavily against them as adequate class representatives") (quoting *Smyth v. Carter*, 168 F.R.D. 28, 33 (W.D. Va. 1996)).

Moreover, in *McCall v. Drive Financial Services, L.P.,* 236 F.R.D. 246, 252 (E.D. Pa. 2006), the Court stated that a plaintiff is an inadequate representative where he had engaged in

criminal or unethical behavior that "was relevant to the class action at hand." Fei's

misappropriation of WestLB's documents and information is directly relevant to the case at

hand, as he took documents and information specifically relating to the very issues at the heart of

this lawsuit. Accordingly, Fei should be precluded from serving as the collective/class action

representative.[3]

> **b.    Fei Should Be Disqualified Because His Claim Is Without Merit.**

Where a collective/class action representative's claim is "extremely weak, this is an

independent reason to doubt the adequacy of his representation." *Robinson v. Sheriff of Cook*

*County*, 167 F.3d 1155, 1157 (7th Cir. 1999). Indeed, where the claim is a "clear loser," that

person is inadequate as a representative. *Id.* Here, Fei occupied a position that clearly falls

within the administrative exemption to overtime to both the FLSA and the New York Labor

Law.[4] Plaintiff's position satisfied all three requirements of the exemption: 1) he received a

---

3.  Additionally, Fei should also be disqualified as the collective/class action representative because during his employment with WestLB he was privy to confidential information relevant to this litigation. Courts have held that former employees with fiduciary or ethical duties to their employers to protect the confidentiality of information cannot serve as collective/class action representatives where that information is relevant. *See Doe v. A Corp.*, 709 F.2d 1043, 1047 (5th Cir. 1983) (former in-house attorney could not serve as class representative where he had received confidential information during employment relevant to the claim). As discussed *supra*, Fei, during his employment with WestLB, was privy to confidential information, much of which was directly related to WestLB's payment of overtime and classification of its employees for overtime purposes. Such information is directly relevant to a litigation like this one regarding the payment of overtime. In fact, much of the information Fei misappropriated was related to WestLB's payment of overtime and its reclassification projects, following work by a team of attorneys and HR professionals of which he was a member. Fei had and continues to have a fiduciary duty to preserve and protect this information – a duty which he already has breached. Accordingly, Fei should be disqualified from serving as representative.

4.  Fei's claim for overtime pursuant to the New York State Labor Law is substantially the same. *Kahn v. Superior Chicken & Ribs, Inc.*, 331 F. Supp. 2d 115, 117 n.1 (E.D.N.Y. 2004).

salary in excess of $455 per week; 2) his primary duties were the performance of office work directly related to the management or general business operations of WestLB; and 3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a)(1)-(3) (2004).

First, Fei's salary was never lower than $1,307.69 per week ($68,000 per year) during his employment with WestLB and therefore was well above the $455 threshold. (A copy of Fei's offer letter is attached to the Habinsky Aff. as Exhibit J.)  Further, Fei's work in administering and implementing WestLB's payroll and benefit procedures and programs was directly related to the management or general business operations of WestLB.  This requirement is satisfied where, as here, the employee works in "functional areas such as tax; finance; . . . personnel management; human resources; [and] employee benefits."  29 C.F.R. § 541.201(b).  An employee who, like Fei, addresses issues concerning payroll processing and tax withholding fulfills this requirement.  See *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331-32 (5th Cir. 2000).  As discussed *supra*, by Fei's own admissions, his duties as a Payroll Manager undoubtedly included these responsibilities, as well as responsibilities involving employee benefits.  (Habinsky Aff., Ex. B at 2, 5, 6.)  Therefore, Fei clearly meets the second requirement for the administrative exemption.

Finally, as Payroll Manager, Fei exercised discretion and independent judgment.  This requirement is satisfied where the employee has responsibility in "formulat[ing], . . . interpret[ing], or implement[ing] management policies or operating practices", "provid[ing] consultation or expert advice to management", and "investigat[ing] and resolv[ing] matters of significance on behalf of management."  29 C.F.R. § 541.202(b); *Castro v. Metro. Transp. Auth.*, No. 04 Civ. 1445 (LTS)(THK), 2006 U.S. Dist. LEXIS 32842, at *10 n.16, 14 (S.D.N.Y.

May 23, 2006) (holding employee administratively exempt where the duties included "the development and implementation of new policies"). Fei's own description, from his resume and his self-evaluations, demonstrate that he had all of these responsibilities on a regular basis. Furthermore, because he was the payroll expert at WestLB, he generally worked under little supervision.[5] (Shirley Aff. ¶ 5.) In fact, on several occasions Fei stated to Linda Shirley, an Executive Director for Human Resources, that he wanted his position title to be changed to Associate Director based upon his responsibilities and performance. (*Id.* ¶ 10.) Because Fei is clearly exempt for purposes of overtime under both the FLSA and the New York Labor Law, his claim is a "clear loser" and he should be precluded from serving as collective/class action representative.

## CONCLUSION

For the foregoing reasons, WestLB's Motion to Dismiss should be granted in its entirety, or alternatively, Fei and his attorneys should be precluded from using in this litigation documents and information that he misappropriated from WestLB and Fei should be disqualified from serving as collective/class action representative. In addition, Fei should be ordered to

---

5. This is not a situation like the one in *Lynch v. Jet Center of Dallas, LLC*, No. 3:05-CV-2229-L, 2007 U.S. Dist. LEXIS 5728, at *13 (N.D. Tex. Jan. 26, 2007), where the employee only moved data from one program to another, "did not set up the accounts or make any judgments about whether or how to account for items", lacked signing authority, and whose payroll duties were limited to data input and did not require the employee to "review the data for accuracy, prepare the formulas, or calculate the figures." Here, Fei frequently was charged with developing and implementing employer policies; had signing authority; was fully responsible for the accuracy and completion of the payroll process, including sophisticated issues involving expatriates and inpatriates; and was deferred to by WestLB's other employees on payroll and other issues. (Shirley Aff. ¶¶ 5-9.)

immediately return to WestLB all documents and information that he transmitted or removed from the premises of WestLB, including copies, and any copies that he provided to others.

Dated: New York, New York
       December 14, 2007

                        HUGHES HUBBARD & REED LLP


                        By:/s/ Ned H. Bassen
                            Ned H. Bassen
                            Vilia B. Hayes
                            Jason Habinsky
                            One Battery Park Plaza
                            New York, New York 10004
                            bassen@hugheshubbard.com
                            (212) 837-6000

                            Attorneys for Defendant WestLB AG