**Outten & Golden LLP**
Adam T. Klein (AK 3293)
Jack A. Raisner (JR 6171)
Linda A. Neilan (LN 4095)
Tara Lai Quinlan (TQ 0717)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**PHILIP FEI,** on behalf of himself
and classes of those similarly situated,

               **Plaintiff,**

       **-against-**

**WEST LB AG,**

               **Defendant.**

           **07 Civ. 8785 (HB)(FM)**

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR CONDITIONAL**
**CERTIFICATION AND COURT-AUTHORIZED**
**NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

PROCEDURAL HISTORY ................................................................................ 1

STATEMENT OF FACTS .................................................................................. 3

    I.    WestLB Executives and Managers Were Subject to the Same Uniform
        Wage and Hour Policies and Practices. ................................................... 3

    II.   WestLB's Corporate Structure. ........................................................... 3

        A.  Executives Are the Lowest Level Employees at WestLB. ........................... 4

            1.   In 2005, WestLB Reclassified Executives as Nonexempt After Not
                 Paying Them Overtime Wages for Years. ................................... 5

        B.  Managers Are the Second Lowest Group of Employees in WestLB's
            Corporate Hierarchy. ..................................................................... 7

            1.   For Years, WestLB Classified All Managers as Exempt. ......................... 8

            2.   In 2007, WestLB Reclassified Approximately 24 Managers Without
                 Paying Them Any Backwages For Overtime Hours
                 They Had Worked. ................................................................... 10

LEGAL FRAMEWORK ................................................................................... 11

ARGUMENT ...................................................................................................... 13

    I.    Court-Authorized Notice Is Fair, Efficient, and Advances Public. ............... 13

    II.   Plaintiff Has a Low Burden. ................................................................. 14

    III.  Plaintiff and Potential Plaintiffs Are Similarly Situated With Respect to
         Their FLSA Claims. ......................................................................... 17

        A.  In Accordance With WestLB Policy, Defendant Did Not Pay All Executives
            and Managers Overtime Compensation. ......................................... 18

        B.  In Accordance With WestLB Practice, Defendant Classified All Executives
            and Managers As Exempt. ............................................................. 18

        C.  In Accordance With WestLB's Reclassification Plan, Defendant

**Improperly Withheld Overtime Wages from Executives and Managers.**... 20

**IV. Different Job Positions or Duties Are Not a Bar to Conditional Certification.** ................................................................. 21

**V. The Court Should Approve Plaintiff's "Timely, Accurate and Informative" Proposed Notice.** ................................................................. 22

**CONCLUSION** ........................................................................................ 23

# TABLE OF AUTHORITIES

## CASES

*A.H. Phillips, Inc. v. Walling,*
  324 U.S. 490 (1945)........................................................................................................11

*Anglada v. Linens 'n Things, Inc.,*
  06 Civ. 12901, 2007 U.S. Dist. LEXIS 39105 (S.D.N.Y. Apr. 26, 2007)..............................20

*Bilyou v. Duchess Beer Distrib., Inc.,*
  300 F.3d 217 (2d Cir. 2002) ...........................................................................................11

*Braunstein v. E. Photo. Labs., Inc.,*
  600 F.2d 335 (2d Cir. 1978), *cert. denied*, 441 U.S. 944 (1979)...........................................14

*Carter v. Indianapolis Power & Light Co.,*
  IP 1:02-CV-01812-SEB-VSS,
  2003 U.S. Dist. LEXIS 23398 (S.D. Ind. Dec. 23, 2003).......................................................17

*Chowdhury v. Duane Reade, Inc.,*
  06 Civ. 2295, 2007 U.S. Dist. LEXIS 73853 (S.D.N.Y. Oct. 2, 2007) ............................20, 22

*Corning Glass Works v. Brennan,*
  417 U.S. 188 (1974)........................................................................................................11

*Cuzco v. Orion Builders, Inc.,*
  477 F. Supp. 2d 628 (S.D.N.Y. 2007)...........................................................................14, 15

*Damassia v. Duane Reade, Inc.,*
  04 Civ. 8819, 2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 5, 2006) ............................15, 20

*Doucoure v. Matlyn Food, Inc.,*
  07 Civ. 3839, 2008 U.S. Dist. LEXIS 30851 (S.D.N.Y. Apr. 15, 2008)................................17

*Fasanelli v. Heartland Brewery, Inc.,*
  516 F. Supp. 2d 317 (S.D.N.Y. 2007).................................................................................21

*Gjurovich v. Emmanuel's Marketplace, Inc.,*
  282 F. Supp. 2d 101 (S.D.N.Y. 2003).............................................................................15, 16

*Gonzalez v. Nicholas Zito Racing Stable, Inc.,*
  04-CV-22, 2008 U.S. Dist. LEXIS 27598 (E.D.N.Y. Mar. 31, 2008)..............................21, 22

*Hallissey v. Am. Online, Inc.,*

99 Civ. 3785, 2008 U.S. Dist. LEXIS 18387 (S.D.N.Y. Feb. 19, 2008) ..........................15, 22

*Harrington v. Educ. Mgmt. Corp.,*
02 Civ. 0787, 2002 U.S. Dist. LEXIS 8823 (S.D.N.Y. May 17, 2002)......................15, 18, 20

*Heagney v. European Am. Bank,*
122 F.R.D. 125 (E.D.N.Y 1988) ......................................................................................21

*Hoffman-La Roche, Inc. v. Sperling,*
493 U.S. 165 (1989)...............................................................................................13 , 14, 22

*Hoffman v. Sbarro, Inc.,*
982 F. Supp. 249 (S.D.N.Y. 1997)..........................................................................14 , 15, 16

*Holbrook v. Smith & Hawken, Ltd.,*
246 F.R.D. 103 (D. Conn. 2007)....................................................................................22

*Iglesias-Mendoza v. La Belle Farm, Inc.,*
239 F.R.D. 363 (S.D.N.Y. 2007) ........................................................................11, 15, 16, 18

*Jacobsen v. Stop & Shop Supermarket Co.,*
02 Civ. 5915, 2003 U.S. Dist. LEXIS 7988 (S.D.N.Y. May 15, 2003)..................................20

*Khalil v. The Original Homestead Rest., Inc.,*
07 Civ. 695, 2007 U.S. Dist. LEXIS 70372 (S.D.N.Y. Aug. 9, 2007) ....................................17

*Krueger v. N.Y. Tel. Co.,*
93 Civ. 0178-79, 1993 U.S. Dist. LEXIS 9988 (S.D.N.Y. July 21, 1993) ..............................16

*Krzesniak v. Cendant Corp.,*
No. C 05-05156 MEJ,
2007 U.S. Dist. LEXIS 47518 (N.D. Cal. June 20, 2007) ......................................................20

*Legrand v. Educ. Mgmt. Corp.,*
03 Civ. 9798, 2004 U.S. Dist. LEXIS 17696 (S.D.N.Y. Sept. 2, 2004) ..................................17

*Lynch v. United Servs. Auto Ass'n,*
491 F. Supp. 2d 357 (S.D.N.Y. 2007)..................................................................................16

*Masson v. Ecolab, Inc.,*
04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005) ..........................16, 17

*Patton v. Thomson Corp.,*
364 F. Supp. 2d 263 (E.D.N.Y. 2005) ..................................................................................16

*Realite v. Ark Rests. Corp.,*

7 F. Supp. 2d 303 (S.D.N.Y 1998)..................................................................................14, 15

*Roebuck v. Hudson Valley Farms, Inc.,*
239 F. Supp. 2d 234 (N.D.N.Y. 2002)......................................................................17

*Schwed v. Gen. Elec. Co.,*
159 F.R.D. 373 (N.D.N.Y. 1995)..............................................................................17

*Sipas v. Sammy's Fishbox, Inc.,*
05 Civ. 10319, 2006 U.S. Dist. LEXIS 24318 (S.D.N.Y. Apr. 24, 2006).................14

*Tierno v. Rite Aid Corp.,*
No. C 05-02520, 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006)..............19

*Torres v. Gristede's Oper. Corp.,*
04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 28, 2006) ...............15, 16, 20

*Wang v. Chinese Daily News, Inc.,*
231 F.R.D. 602 (C.D. Cal. 2005) ........................................................................19, 20

*Whiteway v. FedEx Kinko's Office & Print Servs.,*
No. C 05-2320 SBA,
2006 U.S. Dist. LEXIS 69193 (N.D. Cal. Sept. 13, 2006) ......................................20

## FEDERAL STATUTES

29 U.S.C. § 201 ......................................................................................................1, 13

29 U.S.C. § 207(a)(1)..................................................................................................11

29 U.S.C. § 213(a)(1)..................................................................................................11

29 U.S.C. § 216(b) ..........................................................................................1, 10, 11, 13

29 U.S.C. § 255(a) ......................................................................................................14

## FEDERAL REGULATIONS

29 C.F.R. § 541.100(a)................................................................................................12

29 C.F.R. § 541.102.................................................................................................12

29 C.F.R. § 541.105.................................................................................................12

29 C.F.R. § 541.200(a)............................................................................................13

29 C.F.R. § 541.202(a)............................................................................................13

29 C.F.R. § 541.700(a)............................................................................................12

## INTRODUCTION

This case is about an international investment bank that does not pay overtime compensation to its lowest-level employees – whom it calls "executives" and "managers" – in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Plaintiff Philip Fei ("Fei" or "Plaintiff"), a former so-called manager at WestLB AG ("WestLB" or "Defendant"), seeks to protect the rights of WestLB employees in the United States by sending them Court-approved notice of this action and letting them decide whether to join and attempt to recover their unpaid overtime wages.

Plaintiff meets his low burden on this motion.  Through his declaration, the declarations of other WestLB employees, deposition testimony of WestLB's corporate representatives, the well-pled allegations in Plaintiff's Amended Complaint, and Defendant's own documents, Plaintiff demonstrates that Defendant subjected him to the same policies and practices to which it subjected other "similarly situated" WestLB workers, who will, therefore, benefit from Court-authorized notice pursuant to 29 U.S.C. § 216(b).

## PROCEDURAL HISTORY

Plaintiff Philip Fei filed this class and collective action complaint on October 11, 2007, on behalf of so-called "executives" and "managers" at WestLB.  (Neilan Dec. ¶ 2.) In response, on December 14, 2007, Defendant filed its Answer and Counterclaims against Mr. Fei.  (Neilan Dec. ¶ 3.)  That same day, Defendant also filed a Motion to Dismiss the Complaint or Alternatively to Preclude the Use of Misappropriated Information and Preclude Philip Fei from Being the Collective Class Action Representative.  (Neilan Dec. ¶ 4.)  On January 11, 2008, Plaintiff filed a Motion to

Dismiss Counterclaims.  (Neilan Dec. ¶ 5.)  On March 6, 2008, Plaintiff amended his

complaint adding retaliation claims under the FLSA and the New York Labor Law

("NYLL").  (Neilan Dec. ¶ 6.)  On March 24, 2008, Defendant filed an amended Answer

and Counterclaims.  (Neilan Dec. ¶ 7.)  On April 15, 2008, the Court heard oral argument

on the motions to dismiss.  (Neilan Dec. ¶ 8.)

    Discovery is at the initial stage.  (Neilan Dec. ¶¶ 9-16.)  Defendant has not yet

taken any depositions.  Plaintiff has taken two depositions pursuant to Fed. R. Civ. P.

30(b)(6) – one related to Defendant's counterclaims and one related to Defendant's

policies and practices concerning Defendant's classification and reclassification of

employees as exempt from the overtime provisions of the FLSA and NYLL.[1]  (Neilan

Dec. ¶ 9.)  Although Plaintiff noticed depositions for three individuals who are key

players involved in Defendant's reclassification project, Defendant has not yet produced

them.  (Neilan Dec. ¶¶ 11-13.)

    Despite having served Plaintiff's First Set of Requests for Production of

Documents on December 26, 2007, Defendant failed to produce all responsive documents

until being ordered to do so.  (Neilan Dec. ¶ 15.)  After Plaintiff sought the Court's

assistance, Magistrate Judge Maas ordered Defendant to produce all "micro documents"

regarding Defendant's policies and practices concerning classification and

reclassification of employees by April 10, 2008 and all "macro documents" regarding

these same policies and practices by April 24, 2008.  (Neilan Dec. ¶ 15.)  With respect to

Plaintiff's Second Set of Requests for Production of Documents, Defendant still has not

[1] On March 18, 2008, Defendant produced two witnesses to testify at this 30(b)(6)
deposition.  Because the witnesses were not competent to testify regarding the entire time

produced all responsive documents.  (Neilan Dec. ¶ 16.)

## STATEMENT OF FACTS

I.     **WestLB Executives and Managers Were Subject to the Same Uniform Wage and Hour Policies and Practices.**

WestLB's policies and practices with respect to compensation, classification of employees as exempt or non-exempt, and payroll processes are uniform throughout all of its offices in the United States.  (Neilan Dec. Ex. F (Shirley Dep. 4/18/08) at 73:1-21.)  According to WestLB's Non-Exempt Employees Policy, non-exempt employees who work over 40 hours per week are to be paid "at time and half for overtime worked on weekdays" and Saturdays and "double time" for "[o]vertime worked … on Sundays." (Neilan Dec. Ex. K (Non-Exempt Employees Policy, D0234-D0235); Neilan Dec. Ex. E (Shirley Dep. 3/18/08) at 71:25-73:6.)  "Exempt employees are paid a base salary for all hours worked in performance of their jobs, and are generally not eligible for compensatory time or overtime for time worked in excess of the standard workweek." (Neilan Dec. Ex. K (Non-Exempt Employees Policy, D0234-D0235).)

II.     **WestLB's Corporate Structure.**

WestLB, a European commercial bank with offices in New York, Chicago, and Houston (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 15:20-21; 16:22; 17:1-2), employs approximately 500 employees in the United States.  (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 81:12.)  WestLB organizes its employees into the following hierarchy from bottom to top:  executive, manager, associate director, director, executive director, and managing director.  (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 17:23-18:2; Neilan Dec.

---

period, Defendant produced another witness on April 18, 2008 to further testify.  (Neilan Dec. ¶ 10.)

Ex. F (Shirley Dep. 4/18/08) at 71:25-72:3.)  Lisa Carro, Executive Director of Human

Resources, Regional Head of the Americas, and one of WestLB's corporate designees

pursuant to Fed. R. Civ. P. 30(b)(6), testified that titles like executive and manager are

simply "corporate titles" that mean nothing.  (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at

18:24-25; Neilan Dec. Ex. F (Shirley Dep. 4/18/08) at 71:25-72:6.)  According to Ms.

Carro: "A corporate title is just a title."  (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 25:6-

7.)  Nevertheless, WestLB classified employees as exempt from overtime pay if their

corporate title was executive or manager.  *See* Sections II(A)(1) & (B)(1) *infra*.

### A.    Executives Are the Lowest Level Employees at WestLB.

In its hierarchy, Defendant gives the corporate title of "executive" to its lowest

strata of employees despite its seemingly lofty connotation.  (Neilan Dec. Ex. B (Am.

Compl.) ¶ 14; Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 19:10-11.)  As Ms. Carro

testified, "executive" is "a title for certain employees who are at a lower level in the

organization.  By 'lower,' I mean secretaries, people in the mail room, not necessarily

professional, what we considered to be professionals."  (Neilan Dec. Ex. D (Carro Dep.

3/18/08) at 19:2-7.)  In addition to secretaries and clerks in the mailroom, other positions

classified by WestLB as "executive" include receptionists, personal assistants, team

assistants, clerks, senior clerks, and administrators, among others.  (Neilan Dec. Ex. H

(List of Executive & Manager Positions); Neilan Dec. Ex. D (Carro Dep. 3/18/08) at

170:3-6.)

**1.      In 2005, WestLB Reclassified Executives as Nonexempt After Not Paying Them Overtime Wages for Years.**

From at least October 2001 until June 2005, Defendant classified most executives – like secretaries and assistants – as exempt from the overtime provisions of the FLSA, and therefore, did not pay them any overtime compensation for hours they worked over 40 per week.  (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 29:5; Neilan Dec. Ex. F (Shirley Dep. 4/18/08) at 29:3-5.)

In the summer or fall of 2004, WestLB embarked on a project to review the classification of its executives because of "some change in legislation."  (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 29:19-22; 57:6-10; 191:14-19.)  As part of that project, Vivian Yost, an outside consultant, and Gregory Leahy, in-house counsel at WestLB, reviewed WestLB's classification of its "executive" employees.  (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 33:18-34:7.)  In performing their review, Ms. Yost and Mr. Leahy reviewed job descriptions in conjunction with an overly simplified "exemption testing document," (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 55:3-17; 59:10-24; 62:24-25; 68; 69; 117:23-118:10; 122:11-124:14; Neilan Dec. Ex. J (Fair Labor Standards Act Exemption Audit Worksheet, D0340-D0342)), without even considering the duties actually performed by executive employees.  According to Ms. Carro, "*You can't determine by looking at an individual whether or not they are exempt or nonexempt*."  (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 63:4-9 (emphasis added).)  Ms. Carro never had any training on the FLSA.  (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 117:11-16.)

In June 2005, WestLB decided that some executives "*should have been reclassified as exempt*."  (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 78:3-6,12) (emphasis added).)  WestLB, however, did not reclassify *all* executives as non-exempt.

5

(Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 35:8-10 ("[M]any of them, [I] *didn't say all of them*, many of them were reclassified as non-exempt.") (emphasis in original); Neilan Dec. Ex. G (Email from G. Rieber to P. Fei dated 5/9/06).)  In fact, at least 18 categories of "executives" – team secretaries, team assistants, marketing assistants, junior accountants, financial assistants, senior analysts, financial assistants, system developers, and corporate network consultants – remained exempt after the reclassification project. (Neilan Dec. Ex. G (Email from G. Rieber to P. Fei dated 5/9/06).)

      As part of its reclassification of some executives from exempt to non-exempt, WestLB gave them retroactive payments to compensate them for some of the overtime hours that they had worked, but for which WestLB had never paid them.  (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 84:7-10; Neilan Dec. Ex. I (FLSA Changes, D0353-D0358).)  WestLB, however, paid them only as far back as August 23, 2004.  (Neilan Dec. Ex. I (D0353-D0358); Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 84:23-85:2; 94:19-95:3.)  It did not pay them any interest or liquidated damages on their overtime wages from August 23, 2004 to June 2005.  (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 100:16-23.)  It did not pay them any retroactive wages whatsoever for the overtime hours that they had worked prior to August 23, 2004.  (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 93:15-18.)

**B.**    **Managers Are the Second Lowest Group of Employees in WestLB's Corporate Hierarchy.**

"Managers" are the next lowest strata of employees at WestLB.  (Neilan Dec. Ex. B (Am. Compl.) ¶ 14; Neilan Dec. Ex. F (Shirley Dep. 4/18/08) at 71:25-72:3.) Managers occupy various positions at WestLB including client relationship manager, officer/clerk, senior officer/clerk, personal assistant, senior administrator, and team secretary, among others.  (Neilan Dec. Ex. H (List of Executive & Manager Positions).)

Although their corporate title is "manager," WestLB managers do not have any managerial duties.  (Neilan Dec. Ex. O (Fei Dec.) ¶ 2; Neilan Dec. Ex. R (Killoran Dec.) ¶ 2; Neilan Dec. Ex. Q (Nguyen Dec.) ¶ 2; Neilan Dec. Ex. P (Pennycooke Dec.) ¶ 2.) They do not supervise any employees.  (Neilan Dec. Ex. E (Shirley Dep. 3/18/08) at 23:24-24:2; Neilan Dec. Ex. N (Candela Dec.) ¶ 8; Neilan Dec. Ex. R (Killoran Dec.) ¶ 5; Neilan Dec. Ex. Q (Nguyen Dec.) ¶ 5; Neilan Dec. Ex. P (Pennycooke Dec.) ¶ 5.)  In fact, they themselves are not free from supervision.  (Neilan Dec. Ex. O (Fei Dec.) ¶ 7; Neilan Dec. Ex. N (Candela Dec.) ¶ 12; Neilan Dec. Ex. R (Killoran Dec.) ¶ 9; Neilan Dec. Ex. P (Pennycooke Dec.) ¶ 9.)  They do not have authority to hire or fire employees. (Neilan Dec. Ex. O (Fei Dec.) ¶ 4; Neilan Dec. Ex. N (Candela Dec.) ¶ 9; Ex. R (Killoran Dec.) ¶ 6; Neilan Dec. Ex. Q (Nguyen Dec.) ¶ 6; Neilan Dec. Ex. P (Pennycooke Dec.) ¶ 6.) They do not make recommendations regarding hiring and firing employees.  (Neilan Dec. Ex. O (Fei Dec.) ¶ 4; Neilan Dec. Ex. N (Candela Dec.) ¶ 9; Neilan Dec. Ex. R (Killoran Dec.) ¶ 6; Neilan Dec. Ex. Q (Nguyen Dec.) ¶ 6; Neilan Dec. Ex. P (Pennycooke Dec.) ¶ 6.)

Some of their primary duties include performing data entry, processing paperwork, verifying that transactions are processed, monitoring systems, and reviewing data. (Neilan Dec. Ex. O (Fei Dec.) ¶ 3; Neilan Dec. Ex. N (Candela Dec.) ¶¶ 5-6; Neilan Dec. Ex. R (Killoran Dec.) ¶ 3; Neilan Dec. Ex. Q (Nguyen Dec.) ¶ 3; Neilan Dec. Ex. P (Pennycooke Dec.) ¶ 3.) They do not have authority to make operational decisions beyond the parameters of their own administrative tasks. (Neilan Dec. Ex. O (Fei Dec.) ¶ 5; Neilan Dec. Ex. N (Candela Dec.) ¶ 10; Neilan Dec. Ex. R (Killoran Dec.) ¶ 7; Neilan Dec. Ex. Q (Nguyen Dec.) ¶ 7; Neilan Dec. Ex. P (Pennycooke Dec.) ¶ 7.) They do not have authority to exercise their own discretion and independent judgment with respect to matters of significance. (Neilan Dec. Ex. O (Fei Dec.) ¶ 6; Neilan Dec. Ex. N (Candela Dec.) ¶ 11; Neilan Dec. Ex. R (Killoran Dec.) ¶ 8; Neilan Dec. Ex. P (Pennycooke Dec.) ¶ 8.)

### 1.     For Years, WestLB Classified All Managers as Exempt.

Prior to 2007, WestLB classified all managers as exempt from the overtime provisions of the FLSA. (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 119:18-21.) WestLB did not pay them any overtime compensation for hours that they had worked over 40 in a workweek in accordance with its policy that "[e]xempt employees are paid a base salary for all hours worked in performance of their jobs, and are generally not eligible for compensatory time or overtime for time worked in excess of the standard workweek." (Neilan Dec. Ex. K (Non-Exempt Employees Policy, D0234-D0235); Neilan Dec. Ex. E (Shirley Dep. 3/18/08) at 71:25-73:6.)

In fact, prior to 2007, no one from Human Resources ever conducted any study regarding managers' exempt status or observed the duties of managers. (Neilan Dec.

D (Carro Dep. 3/18/08) at 118:17-21; 141:19-142:9.)  Rather, WestLB simply classified

all managers as exempt based on their titles and job descriptions.  (Neilan Dec. Ex. D

(Carro Dep. 3/18/08) at 119:8-10; 130:7-10; 138:12-18; 140:3-7; 140:21-142:9.)  In

hiring new employees, WestLB did not undertake any individualized inquiry into the

individual's duties.  (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 140:3-7.)  It simply gave

them the same classification as their predecessors regardless of their actual job duties.

(Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 142:2-144:15.)

> [I]f a new employee joined WestLB and they were filling a job which was
> a job which had been held by someone else and there was a job
> description which was already in place which [pre]sumably would have
> been classified already, then, yes, they would have had the previous
> classification that the former employee had.

(Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 142:20-143:5.)  Ms. Shirley confirmed that

this was WestLB policy.

> Q.     I understand that in asking about the classification, she said that
>        most positions were replacement?
> A.     Yes.
> Q.     In which case there wasn't a full review of the job duties like you
>        just described.
> A.     Yes.
> Q.     So, but you mentioned if someone, if someone was hired into a
>        position where they are replacing somebody or transfers into a
>        position where someone has an opening in a department or
>        someone to replace a prior person, no one would have to go
>        through the trouble of consulting a job description, talking to the
>        managers about the duties and having to reassess or reevaluate the
>        classification of the job, is that correct?
> A.     That's correct.
> Q.     So the –
> A.     I mean, they would have some conversation with that.
> Q.     But the position is exempt or nonexempt?
> A.     It's a --
> Q.     You are replacing her, basically, in the position that the incumbent
>        was in and the person who left would be taking that person's job
>        duties, more or less, and classification with it?
> A.     Yes.

(Neilan Dec. Ex. F (Shirley Dep. 4/18/08) at 38:19-39:25.)  This was WestLB's practice

as far back as 2001.  (Neilan Dec. Ex. F (Shirley Dep. 4/18/08) at 47:20-50:16; Neilan

Dec. Ex. D (Carro Dep. 3/18/08) at 139:25-140:7.)

### 2. In 2007, WestLB Reclassified Approximately 24 Managers Without Paying Them Any Backwages For Overtime Hours They Had Worked.

In or about August 2006, WestLB hired an outside attorney and, months later,

began classifying managers as exempt – for the first time.  (Neilan Dec. Ex. D (Carro

Dep. 3/18/08) at 118:9-16.)  The outside attorney reviewed job descriptions and

interviewed the supervisors of the managers.  (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at

117:23-118:4; 124:1-22.)  Notably, WestLB's 30(b)(6) witness did not know whether the

outside attorney interviewed the managers themselves regarding their duties.  (Neilan

Dec. Ex. D (Carro Dep. 3/18/08) at 124:19-22.)

As a result of these classification changes, in January 2007, WestLB reclassified

approximately 12 managers from exempt to nonexempt, (Neilan Dec. Ex. D (Carro Dep.

3/18/08) at 119:18-24; 120:4-13) and, in May 2007, WestLB reclassified another 12

managers.  (Neilan Dec. Ex. D (Carro Dep. 3/18/08) at 119:25-120:13.)  WestLB,

however, did not pay the newly-classified nonexempt managers *any* backwages

whatsoever for the overtime hours that they had worked without pay.  (Neilan Dec. Ex. D

(Carro Dep. 3/18/08) at 132:10-13.)

Because WestLB did not pay any overtime compensation to the executives who

remained exempt after the reclassification project in 2005 (hereinafter, the "exempt

executives") or to any managers (except the approximately 24 who were reclassified in

2007), Plaintiff respectfully requests that the Court send notice pursuant to 29 U.S.C.

§ 216(b) to exempt executives and managers employed by WestLB during the past three years.

## LEGAL FRAMEWORK

The FLSA requires employers to pay all employees one and one-half times their regular rate of pay for all hours, or partial hours, worked in excess of 40 during any workweek, unless they are exempt from coverage.  29 U.S.C. § 207(a)(1).  Because the FLSA is a remedial act, its exemptions to overtime coverage are narrowly construed. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) ("To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people."); *Bilyou v. Duchess Beer Distrib., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002).  They are affirmative defenses and the burden of proof is on the employer to prove them.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *see Iglesias-Mendoza v. La Belle Farm*, *Inc.*, 239 F.R.D. 363, 372 (S.D.N.Y. 2007).  An employee is exempt from overtime coverage only if she falls within one of several enumerated exemptions, most commonly the "white collar" exemptions for executive, administrative, and professional employees. 29 U.S.C. § 213(a)(1).  Here, WestLB claims to have classified executives and managers as exempt.  (Neilan Dec. Ex. C (Answer) ¶¶ 65-66.)

To qualify as an exempt executive, an employee must (1) earn $455 per week or more, (2) "customarily and regularly direct[] the work of two or more employees," (3) have management[2] as his primary duty,[3] and (4) have the authority to hire or fire

---

[2] "Generally 'management' includes activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work;

employees, or have his recommendations as to hiring, firing or other change of status be given "particular weight." 29 C.F.R. § 541.100(a). Whether recommendations as to hiring, firing or other status changes are given "particular weight" turns on whether it is in the employee's duties to make those recommendations, the frequency with which they are made or requested, and the frequency with which they are relied upon. 29 C.F.R. § 541.105.

     To qualify for the administrative exemption, an employee (1) must earn at least $455 per week; and (2) have her "primary duty" be (i) "performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and (ii) "the exercise of discretion and independent judgment[4] with respect to matters of significance."[5] 29 C.F.R.

---

directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures." 29 C.F.R. § 541.102.

[3] "Primary duty" means the "principal, main, major or most important duty that the employee performs. . . . Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a).

[4] "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a).

[5] "Matters of significance" refers to the "level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a).

§ 541.200(a)(1)-(3).

## ARGUMENT

**I.     Court-Authorized Notice Is Fair, Efficient, and Advances Public
Policy Goals.**

The FLSA authorizes private parties to sue in federal court to recover damages.

29 U.S.C. § 201, *et seq.*  In addition to bringing individual suits, aggrieved employees

may bring a collective action "on behalf of themselves and other employees similarly

situated."  29 U.S.C. § 216(b).

Allowing FLSA suits to proceed as collective actions furthers the goal of judicial

economy.  Collective actions enable the "efficient resolution in one proceeding of

common issues of law and fact . . . ." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165,

170 (1989).  The alternative, a multitude of virtually identical individual suits, would

burden courts unnecessarily and risk inconsistent judgments on claims arising from the

same events and brought under the same laws.

Collective actions also provide workers an opportunity to "lower individual costs

to vindicate rights by pooling resources."  *Id.*  Considering the high cost of litigation,

individual WestLB workers are unlikely to have the resources to pursue their claims

individually.  If they are not pooled in a collective action, many claims will go unheard

and WestLB's unlawful practices will go unchecked.

To participate in a collective action, an employee must "opt in" by executing a

written consent and filing it with the court.  *Id.* at 168.  The statute of limitations runs on

each employee's claims until her consent form is filed.  *Hoffman v. Sbarro, Inc.,* 982 F.

Supp. 249, 260 (S.D.N.Y. 1997).  The statute of limitations for willful violations of the

FLSA is three years.  29 U.S.C. § 255(a).  Plaintiff alleges that WestLB's violations were willful.  (Neilan Dec. Ex. B (Am. Compl.) ¶ 30.)

In furtherance of the "broad remedial purpose" of the FLSA, courts have the authority to notify potential opt-in plaintiffs that they may join an existing action early in the proceedings.  *Hoffman-La Roche*, 493 U.S. at 169; *Braunstein v. E. Photo. Labs., Inc.,* 600 F.2d 335, 336 (2d Cir. 1978), *cert. denied*, 441 U.S. 944 (1979); *Realite v. Ark Rests. Corp.,* 7 F. Supp. 2d 303, 308 (S.D.N.Y 1998).  This is the preferred method for managing collective actions because, for the "intended benefits of the collective action … to accrue, employees must receive 'accurate and timely notice concerning the pendency'" of the litigation.  *Cuzco v. Orion Builders, Inc*., 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007) (quoting *Hoffman-La Roche*, 493 U.S. at 170).  The Second Circuit "encourages the sending of notice to 'similarly situated' individuals."  *Sipas v. Sammy's Fishbox, Inc.,* 05 Civ. 10319, 2006 U.S. Dist. LEXIS 24318, at *5 (S.D.N.Y. Apr. 24, 2006) (quoting *Braunstein,* 600 F.2d at 336).

## II.    <u>Plaintiff Has a Low Burden</u>.

Courts in the Second Circuit typically employ a two-step approach in handling collective actions – the initial notice stage and the second stage after full discovery.  *Cuzco,* 477 F. Supp. 2d at 632; *Sipas,* 2006 U.S. Dist. LEXIS 24318, at *6-7 & n.1.  This case is currently in the initial notice stage[6] when the court determines, on the basis of the

---

[6] The fact that some discovery has occurred does not subject Plaintiff to a heightened second-stage burden.  *Hallissey v. Am. Online, Inc*., 99 Civ. 3785, 2008 U.S. Dist. LEXIS 18387, at *4 (S.D.N.Y. Feb. 19, 2008); *Cuzco*, 477 F. Supp. 2d at 632 ("even though discovery is underway, it would be inappropriate at this time to attempt to make more than the first-step certification decision" whether putative class members are "similarly situated"); *Iglesias-Mendoza*, 239 F.R.D. at 367-68 (where "[o]nly very limited

pleadings and affidavits, whether to notify potential members of the collective that the case is pending. *Torres v. Gristede's Oper. Corp.,* 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at *22-23 (S.D.N.Y. Sept. 28, 2006). To obtain notice, Plaintiff must merely establish the existence of other employees who are "similarly situated" to him. *Harrington v. Educ. Mgmt. Corp.*, 02 Civ. 0787, 2002 U.S. Dist. LEXIS 8823, at *3 (S.D.N.Y. May 17, 2002); *Realite,* 7 F. Supp. 2d at 306. Employees are "similarly situated" if they have been subjected to the same policies and practices that Plaintiff challenges in his complaint. *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003); *Harrington*, 2002 U.S. Dist. LEXIS 8823, at *3.

At this initial stage, Plaintiff faces only a "minimal" burden. *Damassia,* 2006 U.S. Dist. LEXIS 73090, at *9-10. He must only make a "modest factual showing" that he and other employees are victims of "a common policy or plan that violated the law." *Hoffmann*, 982 F. Supp. at 261. Courts apply "a fairly lenient standard" in evaluating motions for conditional certification and, when they do, they "typically grant[]" them. *Torres*, 2006 U.S. Dist. LEXIS 74039, at *23 (quotations omitted).

Extensive discovery is not necessary at the initial stage.[7] *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 268 (E.D.N.Y. 2005) (ordering notice before full discovery); *Hoffmann*, 982 F. Supp. at 262 ("Nor must this Court wait for defendant to complete its

---

discovery" had taken place, plaintiffs are entitled to rely on pleadings and own declarations in seeking, and court is to apply "fairly lenient" standard in granting, conditional certification); *Damassia v. Duane Reade, Inc.,* 04 Civ. 8819, 2006 U.S. Dist. LEXIS 73090, at *12 (S.D.N.Y. Oct. 5, 2006) (refusing to hold plaintiffs to the more stringent standard where discovery was "in its early phases").

[7] At the second stage, after full discovery, typically on a motion for decertification, courts undertake a more searching factual inquiry and re-examine whether members of the collective are, in fact, similarly situated. *Torres*, 2006 U.S. Dist. LEXIS 74039, at *22-

discovery before authorizing class notice."); *Lynch v. United Servs. Auto Ass'n*, 491 F.

Supp. 2d 357, 369 (S.D.N.Y. 2007) (extensive discovery is not necessary); *Masson v.*

*Ecolab, Inc.*, 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022, at *41-42 (S.D.N.Y. Aug. 17,

2005) (defendant's stated need for discovery does not bear on the collective action issue);

*Iglesias*-Mendoza, 239 F.R.D. at 368 (courts should not wait until after discovery to

certify the collective action). In lieu of discovery, courts rely upon the allegations set

forth in the complaint and in employee declarations. *Gjurovich*, 282 F. Supp. 2d at 104-

105. Courts do not weigh the merits of the underlying claims in determining whether

plaintiffs are similarly situated to potential plaintiffs. *See, e.g., Hoffmann*, 982 F. Supp.

at 262 ("the Court need not evaluate the merits of plaintiffs' claims in order to determine

that a definable group of 'similarly situated' plaintiffs can exist here"); *Krueger v. N.Y.*

*Tel. Co.*, 93 Civ. 0178-79, 1993 U.S. Dist. LEXIS 9988, at *6 (S.D.N.Y. July 21, 1993)

("even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out *not*

to be similarly situated, notification at this stage . . . may enable more efficient resolution

of the underlying issues. . ."). "[C]irculating the notice now is a means of facilitating the

Act's broad remedial purpose and promoting efficient case management. In particular,

early notice will help to preserve and effectuate the rights of potential plaintiffs whose

claims might otherwise become time-barred during the discovery phase of the case."

*Doucoure v. Matlyn Food, Inc.*, 07 Civ. 3839, 2008 U.S. Dist. LEXIS 30851, at *11

(S.D.N.Y. Apr. 15, 2008) (citations omitted).

      Based on Plaintiff Fei's declaration, the declarations of four potential plaintiffs,

the 30(b)(6) deposition testimony of WestLB's corporate representatives, the allegations

---

23; *Gjurovich*, 282 F. Supp. 2d at 105 n.1.

in the Amended Complaint, and other documentary evidence, Plaintiff comfortably

makes the "modest factual showing" required for conditional certification. Courts in the

Second Circuit and elsewhere regularly authorize notice on such records. *See, e.g.,*

*Khalil v. The Original Homestead Rest., Inc.*, 07 Civ. 695, 2007 U.S. Dist. LEXIS 70372,

at *3 (S.D.N.Y. Aug. 9, 2007) (four named plaintiffs and one opt-in); *Masson*, 2005 U.S.

Dist. LEXIS 18022, at *1-2 (three opt-ins); *Legrand v. Educ. Mgmt. Corp.*, 03 Civ. 9798,

2004 U.S. Dist. LEXIS 17696, at *2 (S.D.N.Y. Sept. 2, 2004) (three named plaintiffs);

*Carter v. Indianapolis Power & Light Co.*, IP 1:02-CV-01812-SEB-VSS, 2003 U.S. Dist.

LEXIS 23398, at *4 (S.D. Ind. Dec. 23, 2003) (three affidavits and one opt-in); *Roebuck*

*v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002) (three

affidavits); *Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373, 376 (N.D.N.Y. 1995) (two

affidavits in ADEA case).

## III.    Plaintiff and Potential Plaintiffs Are Similarly Situated With Respect to Their FLSA Claims.

Plaintiff and potential plaintiffs are similar situated by virtue of WestLB's policy

of not paying exempt executives and managers overtime compensation in accordance

with WestLB policy, its plan of classifying them based on their titles without conducting

an individualized inquiry into their actual job duties, and its flawed reclassification plan.

### A.    In Accordance With WestLB Policy, Defendant Did Not Pay All Executives and Managers Overtime Compensation.

Plaintiff alleges that WestLB violated the FLSA by not paying overtime

compensation to exempt executives and managers. WestLB does not deny that its policy

was to classify exempt executives and managers as exempt and not pay them overtime

compensation. *See* Sections II(A)(1) & II(B)(1) *supra*. This policy alone is sufficient to

satisfy Plaintiff's light burden on this motion. *See, e.g., Iglesias-Mendoza*, 239 F.R.D. at

367-68 ("[C]ourts have held that at the preliminary or conditional certification stage,

plaintiffs can satisfy the 'similarly situated' requirement by making a modest factual

showing sufficient to demonstrate that they and potential plaintiffs together were victims

of a common policy or plan that violated the law.") (citation and internal quotations

omitted).  Plaintiff and potential plaintiffs, therefore, are similarly situated with respect to

WestLB's policy of not paying overtime to exempt executives and managers in

accordance with WestLB's company-wide policy. *Id.* at 368 (granting collective action

notice based on plaintiffs' "modest showing" that they "were subjected to certain wage

and hour practices at the defendants' workplace [i.e., failure to pay overtime wages] and

to the best of their knowledge and on the basis of their observations, their experience was

shared by members of the proposed class."); *Harrington*, 2002 U.S. Dist. LEXIS 8823, at

*5 (granting collective action notice based on allegations that defendant failed to pay

overtime to assistant directors "because the position was classified as exempt").

**B.     In Accordance With WestLB Practice, Defendant Classified All Executives and Managers As Exempt.**

    WestLB's (mis)classification, itself, also presents a common policy or plan that

applied to all executives and managers in the same way, and further supports this motion.

In hiring new employees, WestLB did not conduct an assessment of each executive's and

manager's job duties.  Instead, WestLB simply classified executives and managers as

exempt by virtue of them having filled the position of a former executive or manager that

WestLB had already deemed exempt. *See* Section II(B)(1) *supra*.  This practice of

(mis)classifying incumbent employees simply based on the classification of their

predecessors without inquiring into the employees' actual job duties is also sufficient to

satisfy Plaintiff's burden.

Moreover, after having uniformly classified all executives and managers as exempt for years without performing any assessment, WestLB cannot now claim that the Court must do so to determine whether they are exempt. In other words, if WestLB can make this determination on a collective basis, so can the Court. As one district court recently explained in granting a motion for class certification under Federal Rule of Civil Procedure 23, which is a higher burden,

> [Defendant] has had sufficient confidence that all Store Manager jobs are sufficiently similar that it . . . categorically classified all Store Managers as exempt employees . . . without making any individualized assessments to account for potential variation between individual Store Managers. Given this, [Defendant's] contention that each Store Manager position must now be individually assessed to determine whether the position can be categorized as exempt or non-exempt rings hollow.

*Tierno v. Rite Aid Corp.*, No. C 05-02520, 2006 U.S. Dist. LEXIS 71794, at *26-27 (N.D. Cal. Aug. 31, 2006). *See also, Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 613 (C.D. Cal. 2005); *Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 U.S. Dist. LEXIS 47518, at *46-47 (N.D. Cal. June 20, 2007) (citing *Whiteway v. FedEx Kinko's Office & Print Servs.,* No. C 05-2320 SBA, 2006 U.S. Dist. LEXIS 69193, at *6 (N.D. Cal. Sept. 13, 2006)) ("Defendant cannot, on the one hand, argue that all reporters and account executives are exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job duties of each reporter and account executive in order to determine whether that individual is 'exempt.'").

Courts routinely approve collective actions in misclassification cases such as this one. *See, e.g., Chowdhury v. Duane Reade, Inc.*, 06 Civ. 2295, 2007 U.S. Dist. LEXIS 73853, at *12-15, 18, 22 (S.D.N.Y. Oct. 2, 2007); *Anglada v. Linens 'n Things, Inc.,* 06

Civ. 12901, 2007 U.S. Dist. LEXIS 39105, at *27 (S.D.N.Y. Apr. 26, 2007); *Torres*,

2006 U.S. Dist. LEXIS 74039, at *31-34; *Damassia*, 2006 U.S. Dist. LEXIS 73090, at

*2, 26; *Jacobsen v. Stop & Shop Supermarket Co.*, 02 Civ. 5915, 2003 U.S. Dist. LEXIS

7988, at *11-12 (S.D.N.Y. May 15, 2003); *Harrington*, 2002 U.S. Dist. LEXIS 8823, at

*5.

      **C.**      <u>In Accordance With WestLB's Reclassification Plan, Defendant</u>
<u>Improperly Withheld Overtime Wages from Executives and</u>
<u>Managers</u>.

      WestLB's reclassification of executives and managers is further support for this

motion.  After realizing that its policy of wholesale labeling executives and managers as

exempt based on their titles alone was unlawful, it reclassified some of them.  The

reclassification plan, however, did not result in full backpay for the admittedly

improperly classified executives and managers.  As part of its reclassification of some

executives in 2005, it paid them unpaid overtime wages only as far back as August 2004.

As part of its reclassification of some managers in 2007, WestLB did not pay them *any* of

their unpaid overtime wages whatsoever.  Thus, after admitting that it had improperly

classified many of its employees as exempt, it failed to properly pay them all of the

overtime wages that it had illegally withheld.  Plaintiff and potential plaintiffs, therefore,

are similarly situated with respect to WestLB's flawed reclassification plan.

Accordingly, they should have an opportunity to be informed that the Court is evaluating

the legality of WestLB's reclassification plan and they should be given an opportunity to

join this lawsuit.

**IV.**      <u>Different Job Positions or Duties Are Not a Bar to Conditional Certification</u>.

      Even though WestLB executives and managers have different job titles in

addition to their corporate titles, they are still similarly situated because WestLB applies

the same policies and plans to all of them (i.e., not paying them overtime,

(mis)classifying them as exempt, and subjecting them to the same flawed reclassification

plan), and because they allege the same violations of the FLSA (i.e., failing to pay

overtime compensation). *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322

(S.D.N.Y. 2007) (conditionally certifying collective of workers holding different

positions but who all were "employees of the same restaurant enterprise" who alleged the

"same types of FLSA violations"); *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127

(E.D.N.Y 1988) (granting conditional certification and holding that "[c]lass treatment . . .

is not defeated simply because . . . the plaintiffs performed a variety of jobs in a number

of departments at different locations . . . . [so long as] the fundamental allegation . . . is

common to all . . . plaintiffs and dominates each of their claims"). The only question

pertinent to this motion is whether exempt executives and managers were subject to the

same unlawful policies or practices. *See, e.g., Gonzalez v. Nicholas Zito Racing Stable,*

*Inc.*, 04-CV-22, 2008 U.S. Dist. LEXIS 27598, at **16-18 (E.D.N.Y. Mar. 31, 2008)

(certifying a Rule 23 class consisting of stable workers with different titles and

responsibilities, all allegedly subject to defendant's policy of denying overtime, after

having already granted an FLSA collective action); *Hallissey v. Am. Online, Inc.*, 2008

U.S. Dist. LEXIS 18387, at **4-7 (S.D.N.Y. Feb. 19, 2008) (holding that consideration

of differences among class members is not appropriate during initial conditional

certification stage and noting that "the proper inquiry in a § 216(b) determination is

whether plaintiffs are similarly situated *with respect to their allegations that the law has*

*been violated*") (internal quotation omitted) (emphasis in original); *Chowdhury*, 2007

U.S. Dist. LEXIS 73853, at **12-18 (same); *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007) (rejecting defendant's objection to certification of class of employees who worked at different stores on the ground that the "court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated"). They all were.

**V.    The Court Should Approve Plaintiff's "Timely, Accurate and Informative" Proposed Notice.**

A collective action notice must be "timely, accurate, and informative." *Hoffman-La Roche,* 493 U.S. at 171-72. Plaintiff's Proposed Notice meets this standard. (Neilan Dec. Ex. L (Proposed Notice).) It is based on the model employment discrimination "plain-language notice" suggested by the Federal Judicial Center. (Neilan Dec. Ex. (Model Notice).)

## CONCLUSION

For all of these reasons, Plaintiff respectfully requests that the Court follow the well-established precedents from the Supreme Court, the Second Circuit, and the other district courts in this Circuit and

(1)    Promptly authorize this case to proceed as a collective action;

(2)    Authorize the mailing of Plaintiff's proposed plain-language notice to all exempt executives and managers employed by Defendant in the past three years.[8]

Dated: New York, NY
April 25, 2008

**OUTTEN & GOLDEN LLP**
*Attorneys for Plaintiff and the Putative Class*

By:____/s/ Linda A. Neilan_____

Adam T. Klein (AK 3293)
Jack A. Raisner (JR 6171)
Linda A. Neilan (LN 4095)
Tara Lai Quinlan (TQ 0717)
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

---

[8] Once Defendant fully complies with Plaintiff's discovery requests and provides information regarding the various job positions, Plaintiff is amenable to considering limiting the scope of 216(b) notice.