# Exhibit E

[Page 1]

UNITED STATES DISTRICT COURT **ORIGINAL**
SOUTHERN DISTRICT OF NEW YORK
----

PHILIP FEI, on behalf of : 07 Civ. 8785
himself and classes of :
those similarly situated, :
Plaintiff, :
    -against- :
WEST LB AG, :
Defendant : Rule 30(b)(6)

----

Tuesday, March 18, 2008

----

Pretrial examination of LINDA SHIRLEY, held in the offices of Outten & Golden, 3 Park Avenue, 29th Floor, New York, New York, commencing at 3:25 a.m., on the above date, before Mickey Dinter, Registered Professional Reporter, Certified Shorthand Reporter and Notary Public for the State of New York.

----

U.S. LEGAL SUPPORT
1 Penn Plaza
Suite 1410
New York, New York 10119
212.759-.6014

----

```
 1   the managers that -- do any of the
 2   managers that report to you hire or fire
 3   employees?
 4              MR. BASSEN:  I would like
 5   to call the magistrate.
 6              MS. NEILAN:  I'm in the
 7   middle of a question.
 8              MR. BASSEN:  No, because I
 9   will not let her, without having the
10   magistrate involved, I'm not going to
11   go completely and wholly beyond the
12   scope of this.
13              MS. NEILAN:  Sure.  Let's
14   get the phone number and call the
15   magistrate right now.
16              (Telephone call placed to
17   the magistrate.)
18              THE COURT:  What is the
19   problem?
20              MS. NEILAN:  This is Linda
21   Neilan, counsel for plaintiffs.  This
22   is a 30(b)(6) deposition.  There are
23   five notice areas of inquiry in
24   today's deposition.
25              Defendant's have produced
```

[Page 18]

1  two witnesses; the second witness is
2  here this afternoon.
3           The area of inquiry that I
4  just asked her about or competent to
5  testify, are regarding the recording
6  hours worked by class members and --
7  there's five areas of inquiry in the
8  30(b)(6) deposition notice.  Rather
9  than read them to you, the first three
10 areas of inquiry concern defendant's
11 classification, reclassification of
12 executives and managers as exempt from
13 the overtime provisions of the Fair
14 Labor Standards Act of the New York
15 Labor Law, recording hours worked by
16 class members and concerning payroll
17 procedures with respect to overtime
18 compensation.
19          We have just started this
20 deposition with the second witness
21 with respect to those last two
22 categories I just mentioned and the
23 witness testified about class members
24 who report to her and I simply asked a
25 follow-up question regarding those

[Page 19]

1  class members "managers" are allowed
2  to hire or fire employees because
3  these are her direct reports. They
4  report to her.
5          The question goes right to
6  the heart of the litigation and she is
7  sitting here today. I put the
8  question to her. I think not only is
9  the question relevant to the areas of
10 inquiry in today's deposition, the two
11 areas that she is here for the entire
12 scope of the notice, but also, I
13 think, that she has information and
14 she can answer that question.
15         I think it would just be
16 efficient to have her answer that
17 question as she sits here before me
18 for this deposition.
19         THE COURT: Suppose she
20 answers the question, then what?
21         MS. NEILAN: I can carry on
22 with the rest of my deposition and/or
23 I can continue to ask her further
24 questions regarding those individuals
25 that report to her regarding their

[Page 22]

1  concerning payroll procedures."
2      The reason I asked to
3  bother you at this juncture, even
4  though it was only one question, your
5  Honor, is that with the other witness
6  this morning, well over fifty percent
7  of the questions were outside the
8  scope of the topics noted. I objected
9  to all of them and I do not think that
10 if there is an answer given to this
11 question, which is not within the
12 scope, that it would stop there and,
13 furthermore, the real importance of
14 it, your Honor, is this, this witness
15 got ready and prepared for this
16 deposition based on these two noticed
17 topics, recording hours and payroll
18 procedures. That's why she's here.
19     If they would like to
20 notice a deposition of her based on
21 anything else that's relevant, we are
22 happy to produce her, but she didn't
23 prepare and she is not ready to speak
24 about these things at this deposition.
25     THE COURT: I have heard

[Page 23]

1   enough.  I'm going to direct that she
2   answer the question, but it will not
3   be as a 30(b)(6) witness in the sense
4   that her answer will not bind the
5   corporation; and I do think it is
6   beyond the scope of the notice and if
7   we have further issues along these
8   lines, then be forewarned I'm going to
9   take a fairly narrow view of the
10  notice if it's not within the two
11  topics for which this specific witness
12  has been produced.  It won't be
13  permissible as part of the 30(b)(6).
14  Do you understand one another?
15              MS. NEILAN:  Thank you,
16  your Honor.
17              MR. BASSEN:  Thank you,
18  your Honor.
19              THE COURT:  Good day.
20              MS. NEILAN:  Thank you.
21              (Question read back as
22  follows:  "Do any of the managers that
23  report to you hire or fire employees?")
24              THE WITNESS:  None of the
25  manager that report to me have people

[Page 24]

1    reporting to them, so they don't have

2    any employees. If they did, they

3    would be able to hire and fire, but

4    they don't.

5  BY MS. NEILAN:

6    Q. Okay. How does West LB record the

7  hours that executives work?

8    A. When the executives who are, and

9  all of the executives are overtime

10 eligible, the executives fill out a

11 timesheet every two weeks. They sign it.

12 They get the manager to sign it and they

13 then bring it to the payroll manager.

14 Then, the payroll manager pays them for

15 the appropriate, you know, regular hours

16 or overtime hours, and they file time

17 sheets with the payroll files.

18    Q. For how long has that process that

19 you just described been in place?

20    A. Ever since I have been there.

21    Q. So --

22    A. Anybody who is overtime eligible

23 fills out the timesheet and gives it to

24 the payroll manager.

25    Q. So, this process that you describe

1   has been in place since December 2003 to
2   the present, is that correct?
3       A. Yes.
4       Q. Do you know what practice was in
5   place to record hours worked by executives
6   prior to December 2003?
7       A. I don't know for sure.
8       Q. And is this process that you just
9   described that has been in the place since
10  December 2003, do all executives follow
11  that practice for reporting their hours?
12      A. All executives or all -- are you
13  saying all overtime eligible?
14      Q. I'm just referring to executives.
15      A. If they are overtime eligible, yes,
16  they fill out timesheets.
17      Q. Are there some executives who do
18  not fill out timesheets?
19      A. There may be some if they didn't
20  work overtime.
21      Q. Regardless of whether or not they
22  actually work overtime -- let me ask you
23  this: Do all executives have to complete
24  timesheets?
25      A. Yes.

[Page 70]

1   pay those managers time-and-a-half,
2   overtime compensation, for all hours that
3   they work over forty hours per week?
4           MR. BASSEN:  Objection.
5           THE WITNESS:  I would say
6   no, because they are exempt.
7   BY MS. NEILAN:
8       Q. Let's take a five-minute break.
9       A. Okay.
10          (Recess taken.)
11          (Back on the record.)
12  BY MS. NEILAN:
13      Q. Can you just look at a document
14  that is marked as Shirley-2 and turn to D
15  0236.
16      A. You said Shirley-2.
17      Q. I mean Shirley-1.
18      A. I just have one document.
19      Q. The document that you have in front
20  of you now.
21          MR. BASSEN:  I think that's
22  one, Shirley number 1.  Can you turn
23  to D 0236 ?
24  BY MS. NEILAN:
25      Q. Read for me the first two lines of

1  the second paragraph?
2      A. Yes. I think this is a draft of
3  the policy. I can read the lines, but
4  this isn't the policy we talked about
5  before which was the actual policy.
6      Q. Can you use the Bates stamp
7  numbers? Which document are you saying is
8  the draft of the policy?
9      A. This one here that says D 0236,
10  D 0237 and 238. And D 0229, these are
11  drafts. The policy is the one that is
12  D 0234 and the timesheet that we talked
13  about before is correct. D 240 and this
14  D 239 goes along with the timesheets. So
15  that's correct.
16      Q. Okay. Just to be clear, when you
17  say "policy," what do you mean by that?
18      A. I'm saying this is the policy that
19  we use and work with.
20      Q. Does it have --
21      A. These are drafts of the policy when
22  it was, you know, being finalized. But
23  this is not what was published or that we
24  worked with, you know.
25      Q. So, when you said "the policy,"

[Page 72]

```
 1   what policy are you referring to?
 2        A. I'm referring to D 0234.
 3        Q. Does it have a name, any other
 4   name, this policy?
 5        A. This is the non-exempt employee
 6   policy.
 7        Q. Then, documents that are marked
 8   D 0234 through D 0235, are those documents
 9   West LB's non-exempt employees policy?
10        A. Yes.
11        Q. And for how long has that policy
12   been in effect at West LB?
13        A. You know, as I said before, I think
14   this has been the policy, but we had --
15   when this -- I don't think it's changed.
16   It's just that it was published, you know,
17   on this date here.  First, I guess,
18   November 2005 and then December, I don't
19   know.
20        Q. For how long has this non-exempt
21   employees policy been the policy of West
22   LB?  Going how far back?
23        A. For sure, to the date that it's
24   published.  But, it's not so different.
25   What I have to do is, I would have to look
```

U.S. LEGAL SUPPORT, INC.
1 PENN PLAZA, NEW YORK, NY 10119 Tel: 212-759-6014

[Page 73]

1  -- before it was actually published on the
2  Intranet, the payroll manager used to have
3  sort of a policy attached to the timesheet
4  as well and I would have to look and see.
5  But the basics here in terms of how we pay
6  overtime, that has not changed.
7      Q. Are you saying, then, that
8  documents D 0229 through D 0233 are drafts
9  of the non-exempt employees policy?
10     A. Yes.
11     Q. What are these drafts from?
12     A. It looks like drafts before this
13 was published.
14     Q. When you say "this," do you mean
15 documents D 0234 to D 0235?
16     A. Yes.
17     Q. And how do you know that?
18     A. I know that because if you compare
19 this policy --
20     Q. Which document are you looking at?
21     A. D 0229 to the policy that says D
22 0234.
23              While most of it is the
24 same, there are things that specifically
25 references thirty-five hours for all

[Page 74]

1  employees, thirty-five hours; and in this
2  policy, on D 0234, it doesn't talk about
3  the thirty-five hours.
4             Now, essentially, it says,
5  you know, like one of these, a couple of
6  these lines are the same. It just is
7  worded differently. So that's for D 0229.
8             There's also something in
9  here, D 0231. It has edit marks in it.
10 So I can tell this was a draft document
11 because it has the edit marks on it.
12     Q. Do you see the date there of
13 February 2005 at the bottom left-hand
14 corner of the page?
15     A. Yes.
16     Q. So do you think, then, that this
17 draft here that is marked D 0229 through
18 D 0233 preceded the policy that is in
19 place now regarding non-exempt employees?
20     A. No, I don't think it preceded the
21 policy. I think it was a draft that was
22 prepared for review because when I look at
23 D 0231, as I said, it has edit marks in
24 there. When I look on page D 0232, there
25 is this section at the bottom that says