HUGHES HUBBARD & REED LLP
Ned H. Bassen
Vilia B. Hayes
Jason Habinsky
One Battery Park Plaza
New York, New York 10004

Attorneys for Defendant WestLB AG

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| PHILIP FEI, on behalf of himself and classes of those similarly situated, | |
| Plaintiff, | Index No.:  07 Civ. 8785 (HB) (FM) |
| v. | |
| WESTLB AG, | |
| Defendant. | |

## MEMORANDUM OF LAW OF WESTLB AG IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE PURSUANT TO SECTION 216(B) OF THE FAIR LABOR STANDARDS ACT

## TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ...........................................................................................3

    Fei's Job Duties...................................................................................................4

    WestLB's Review and Reclassification of Executives and Managers ................5

ARGUMENT.................................................................................................................8

I.     Plaintiff's Motion For Conditional Certification Should Be Denied..................8

    A.    Fei Has Not Demonstrated That He Is Similar To His Proposed Collective Members Based On Their Being Subject to a Common Policy............................10

    B.    There Is No Factual Nexus Between Fei and His Proposed Collective Because Their Positions Entail Diverse Duties and Responsibilities. ...................13

    C.    Fei Has Provided No Evidence Supporting His Claim That He Is Similarly Situated to Exempt Executives And Managers Based on the Same or Similar Job Duties..................................................................................................17

    D.    Fei Cannot Show That His Proposed Collective Members Will Rely on Common Evidence to Prove Their Claims. ..........................................................22

II.    If The Court Were to Conditionally Certify A Collective Action, the Proposed Notice Should Be Modified. ...........................................................................24

CONCLUSION...........................................................................................................25

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Allen v. Centillium Commcns., Inc.*, NO. C-06-06153 (E.D.L.), 2008 U.S. Dist. LEXIS 27435 (N.D. Cal. Apr. 3, 2008) ............................................................................23

*Anglada v. Linens 'n Things, Inc.*, No. 06 Civ. 1290 (CM) (LMS), 2007 U.S. Dist. LEXIS 39105 (S.D.N.Y. Apr. 26, 2007)................................................................14

*Chowdhury v. Duane Reade, Inc.*, 06 Civ. 2295 2007 U.S. Dist. LEXIS 73853 (S.D.N.Y. Oct. 2, 2007) ..........................................................................................14, 17

*Damassia v. Duane Reade, Inc.*, 04 Civ. 8819 (GEL), 2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 5, 2006) .........................................................................................14

*Davis v. Lenox Hill Hosp.*, No. 03 Civ. 3476 (DLC) 2004 WL 1926086 (S.D.N.Y. Aug. 31, 2004) .........................................................................................................8

*Dean v. Priceline.com, Inc.*, No. 3:00-CV-1273 (DJS) 2001 WL 35961086 (D. Conn. June 6, 2001)....................................................................................................11, 15

*Diaz v. Electronics Boutique of Am., Inc.*, No. 04-CV-0840E (SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17. 2005)...............................................................................9, 13, 15

*Doucoure v. Matlyn Food, Inc.*, No. CV-07-3839, (JG) (JO) 2008 U.S. Dist. LEXIS 30851 (E.D.N.Y. Apr. 15, 2008).........................................................................25

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007)..............................16

*Freeman v. Wal-Mart Stores, Inc.*, 265 F. Supp. 2d 941 (W.D. Ark. 2003) ..........................10, 11

*Gonzalez v. Nicholas Zito Racing Stable Inc.*, NO 04 CV 22, 2008 U.S. Dist. LEXIS 27598 (E.D.N.Y. Mar. 31, 2008)........................................................................16

*Hallissey v. Amer. Online Inc.*, No. 99 Civ 3785 (KTD) 2008 U.S. Dist. LEXIS 18387 (S.D.N.Y. Feb. 19, 2008)......................................................................................16

*Harrington v. Educ. Mgmt. Corp.*, No. 02 Civ. 0787 (HB), 2002 U.S. Dist. LEXIS 8823 (S.D.N.Y. May 16, 2002)..................................................................................14

*Harris v. FFE Trans. Serv., Inc.*, No. 3:00-CV-0077-P (JAS) 2006 U.S. Dist. LEXIS 51437 (N.D. Texas May 15, 2006) ......................................................................13

*Heagney v. European American Bank*, 122 F.R.D. 125 (E.D.N.Y. 1988) ...................................16

**Table of Authorities**
(Continued)

Page(s)

*Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103 (D. Conn. 2007)...........................................17

*Jacobsen v. Stop & Shop Supermarket Co.*, No. 02 Civ. 5915 (DLC), 2003 U.S. Dist. LEXIS 7988 (S.D.N.Y. May 14, 2003) ................................................................................14

*Krzesniak v. Cendant Corp.*, No. C 05-05156 (MEJ), 2007 U.S. Dist. LEXIS 47518 (N.D. Cal. June 20, 2007) ...........................................................................................15

*Legrand v. Educ.Mgmt. Corp.*, No. 03 Civ. 9798, (HB) (HSP) 2004 U.S. Dist. LEXIS 17696 (S.D.N.Y. Sept. 1, 2004)..........................................................................24

*Levinson v. Primedia Inc.*, No. 02 Civ. 2222 (CBM), 2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. Nov. 6, 2003) ............................................................................................8

*Mendoza v. Casa de Cambio Delgado Inc.*, No. 07-CV-2579 (HB) 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008)..........................................................................................8, 19

*Mike v. Safeco Ins. Co.*, 274 F. Supp. 2d 216 (D. Conn. 2003)................................................15, 22

*Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493 (D.N.J. 2000) ......................8, 10, 16

*Myers v. Hertz Corp.*, No. 02 Civ 4325 (BMC) (MLO), 2007 WL 2126264 (E.D.N.Y. July 24, 2007) ...............................................................................................15

*Reich v. Homier Distrib. Co.*, 362 F. Supp. 2d 1009, IOM-15 (N.D. Ind. 2005 ) .........................15

*Seltzer v. Dresdner Kleinwort Wasserstein, Inc.*, 356 F. Supp. 2d 288 (S.D.N.Y. 2005) .............22

*Tierno v. Rite Aid Corp., No. C 05-02520 (TEH)*, 2006 U.S. Dist. LEXIS 71794........................15

*Torres v. Gristede's Corp.*, No. 04 Civ. 3316 (PAC), 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 28, 2006).............................................................................................14

*Trinh v. JP Morgan Chase & Co.*, No. 07-CV-1666 (WMC) 2008 WL 1860161 (S.D. Cal. Apr. 22, 2008)...................................................................................9, 11, 22

*Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602 (C.D. Cal. 2005) ..........................................15

*Young v. Cerner Corp.*, 503 F. Supp. 2d 1226 (W.D. Mo. 2007)............................................11, 12

**STATUTES**

29 C.F.R. §§ 541.100, 541.200, 541.300, 541.400, 541.601 .........................................................18

29 C.F.R. § 541.200(a)(1)-(3)..........................................................................................................22

**<u>Table of Authorities</u>**
(Continued)

Page(s)

29 C.F.R. § 541.203(b) (2008) ........................................................................................ 21

29 C.F.R. §541.400 ........................................................................................................ 20

29 C.F.R. § 541.601(a) ................................................................................................... 21

29 U.S.C. § 216(b) ................................................................................................. *passim*

60291911_1 (3).DOC

This memorandum is submitted on behalf of Defendant WestLB AG ("WestLB") in opposition to Plaintiff Philip Fei's Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA") ("Fei's Motion").

## PRELIMINARY STATEMENT

Fei's Motion seeks conditional certification of a collective action pursuant to Section 216(b) of the FLSA on behalf of two different groups of employees at two separate corporate levels who held a variety of different jobs in over 50 positions at WestLB at different locations in the United States during the past three-year period.  The two groups are:  (1) "Exempt Executives" whom Fei defines as 18 Executives who remained exempt after WestLB undertook and executed a reclassification project in 2005, and (2) "Managers" within whom Fei appears to include every employee who held the corporate title of Manager during the past three years, namely 26 Managers whom WestLB reclassified as non-exempt in 2007 in another reclassification project, nine newly hired non-exempt Managers, and the Managers whom WestLB has classified as exempt.  (Fei's Motion at 10-11.)  Fei also seeks approval of an opt-in notice to be sent to potential collective members.

While the FLSA allows a collective action where the named plaintiff is "similarly situated" to a proposed collective, Fei has failed to establish anything close to the required factual nexus between his individual claim and the claims of the proposed collective for which he seeks conditional certification.  Unlike most FLSA motions for conditional certification with which federal courts are presented, Fei's proposed collective includes employees holding over 50 different jobs with dissimilar duties and responsibilities.  Fei bases his Motion on the erroneous proposition that WestLB had a common policy applicable to all his proposed collective members simply because exempt employees, like Fei, (who received a salary and bonus) did not receive

time and one-half pay for hours worked over 40 a week and non-exempt employees, unlike Fei, did receive overtime pay. Non-receipt of overtime pay by exempt employees does not, and cannot, constitute a common policy. Otherwise, every exempt employee would be deemed similarly situated to Fei regardless of vast disparity in job duties. Nor has Fei demonstrated, as he claims, that he and his proposed collective were the victims of a common policy or plan that violated the FLSA by his alleging that WestLB conducted a faulty classification and reclassification process. Fei's allegation that WestLB improperly classified employees without examining job duties is nothing more than a restatement of his claim that he and his proposed collective members were misclassified as exempt and, in all events, is belied by ample evidence. Likewise, Fei's argument that WestLB's reclassification of employees constitutes a common plan applicable to Fei and his proposed collective members is a non-starter given that WestLB had two different reclassifications, with each involving individual assessments of employees' particular job duties.

Indeed, Fei's Motion is counterintuitive because Fei acknowledges that WestLB conducted a review of all Executive and Manager positions in the 2004 to 2007 period. That review included an evaluation of *each* Executive and Manager position. It was only after *each* was found to be "exempt" after the reclassification process' application of individual job duties to the appropriate legal "white collar" exemption, that WestLB kept some Executives and Managers classified as exempt. Accordingly, for the Court to determine here whether *each* member of Fei's proposed collective, with over 50 different jobs, was properly classified will entail an *individual*, rather than collective, analysis. Thus, conditional certification of a collective action would not further judicial economy but, in fact, would be inefficient given the unusual facts of this case. Fei's Motion should therefore be denied.

## STATEMENT OF FACTS

WestLB employees have corporate titles that describe their position in the WestLB corporate hierarchy. (Affidavit of Lisa Carro ¶ 2 ("Carro Aff.").)  These corporate titles are Intern, Officer, Executive, Manager, Associate Director, Director, Executive Director, and Managing Director. (*Id.*)  WestLB's corporate titles do not describe an employee's job duties and responsibilities. (30(b)(6) Deposition Testimony of Lisa Carro 25:6-10, March 18, 2006 ("Carro Dep."), Habinsky Aff. Ex. D.)  In fact, different types of employees doing dissimilar work can, and do, have the same corporate title. (*Id.*)  Employees at WestLB also have job titles that are related to their duties and responsibilities. (*Id.*; Carro Aff. ¶ 2.)

All WestLB employees who have the corporate title of Executive currently are classified as non-exempt. (Carro Aff. ¶ 3.)  Employees who have the corporate title of Manager are classified as exempt or non-exempt based on each employee's job description and the duties for which each is responsible.[1]  (Carro Dep. 137:25-138:7.).  As WestLB's 30(b)(6) witness and Managing Director of Human Resources, Lisa Carro, testified at deposition, individuals were classified "[b]ased on the responsibilities.  In other words, if the individuals had a specific job description, specific responsibilities and the responsibilities in that job description was [sic] identified as being exempt or non-exempt, that's how they were classified." (*Id.* at 72:23-73:4.)  Non-exempt Executives and Managers received overtime pay for overtime hours worked. (Carro Aff. ¶ 3, 4, 9.)  Exempt Managers were paid a salary and were eligible for a discretionary bonus but did not receive overtime pay. (*Id.* at ¶10.)

---

1.  Based on their job duties, various employees at WestLB qualify for the different "white collar" exemptions under the FLSA such as the Administrative, Professional, Executive, Computer Employee, and Highly Compensated Employee exemptions.

**Fei's Job Duties**

WestLB employed Fei from July 2000 until he resigned on June 19, 2007. (Affidavit of Linda Shirley ¶ 3 ("Shirley Aff."), Habinsky Aff. Ex. E.) Fei had the corporate title of Manager and the job title of Payroll Manager. (Carro Aff. ¶ 12.) Fei's starting salary was $68,000 and $86,000 at the time he resigned. (Deposition of Philip Fei 16:12-17, 21:6-9 ("Fei Dep."), Habinsky Aff. Ex. F.) He also received an annual bonus each year in amounts up to $13,000. (Habinsky Aff. Ex. G.) Fei's total annual compensation ranged from $74,000 to $90,000 and would have been $97,000 if he had worked until the end of 2007. (*Id.*)

Fei was in charge of WestLB's payroll obligations, and he worked independently, with little supervision. (Shirley Aff. ¶¶ 5-6.) As Fei himself described in his resume and self-evaluations, his responsibilities included: running payroll; resolving queries raised by WestLB's Human Resources staff and other employees, most of which required advanced knowledge and research; providing expertise to employees regarding payroll, tax, benefits, expatriate calculations and other issues; the implementation and administration of expatriate compensation; developing and implementing WestLB's severance pay procedures; advising foreign nationals as to the Bank's payroll policies; liaising with the accounting firms retained by WestLB; working with Human Resources on WestLB's time off/payment policy and procedures; and interpreting and applying WestLB's policies governing payments to employees. (*See* Resume, Habinsky Aff. Ex. H; 2006 Performance Evaluation ("Perf. Eval."), Habinsky Aff. Ex. I.) On several occasions Fei told Linda Shirley, WestLB's Executive Director for Human Resources, that he wanted his corporate title to be changed to Associate Director based upon his responsibilities and performance. (Shirley Aff. ¶ 10.)

WestLB classified Fei as exempt and, accordingly, Fei did not receive overtime pay. However, Fei tracked the hours he worked in an "Overtime Log" that he maintained. (Fei Dep. 192:15-21; Overtime Log, Habinsky Aff. Ex. J.) According to Fei's "Overtime Log," assuming that he took an hour break for lunch as he testified at his deposition that he customarily did, he worked only slightly more than 80 hours of overtime during the three years prior to the filing of his complaint.[2] (*See* Fei Dep. 212:12-15; Overtime Log, Habinsky Aff. Ex. J)

### WestLB's Review and Reclassification of Executives and Managers

Beginning in July 2004, WestLB reviewed the FLSA classification of all its employees with the corporate title of Executive, some of whom were classified as exempt from overtime payments and some of whom were classified as non-exempt. (Carro Aff. ¶ 4.) WestLB retained an outside human resources consultant, Vivian Yost, to make recommendations in this regard. (Deposition of Vivian Yost 49:20-24 ("Yost Dep."), Habinsky Aff. Ex. I.) Yost performed a lengthy review of the job duties of employees with the corporate title of Executive. (*Id.* at 53:9-13.) Yost's focus was not on whether a particular job title or job description was exempt or non-exempt but instead she "need[ed] to know the person, understand how the person performed these duties, to make the determination." (*Id.* at 129:14-17.) Accordingly, as to each employee, Yost not only reviewed the job description but also "would have questions about the duties, and [] would go back to manager and/or the employee to ask specific questions about their duties to make sure that [she] understood the duties so that [she] could perform an exemption test." (*Id.* at

---

2.   This contrasts with the declaration Fei submitted with his Motion, in which Fei states that he worked "approximately 40 to 45 hours per week." (Fei Decl. ¶ 11.) Also, while Fei testified at deposition that he sometimes worked through lunch when WestLB's payroll was closing, his Overtime Log does not reflect this and Fei admitted at deposition that his Overtime Log reflects all of the time he worked on the days listed therein. (*See* Fei Dep. 208:16-21, 213:10-20; Overtime Log, Habinsky Aff. Ex. J.)

57:10-15.) Yost also spoke to WestLB's Human Resources staff "who had intimate knowledge of the duties and responsibilities of the individuals." (*Id.* 215:18-19.) Yost then used a computer program called the Overtime Exemption Expert to confirm her preliminary determinations. (*Id.* at 58:12-59:3.) As a result of Yost's recommendations, in June 2005, most employees with the corporate title of Executive who previously had been classified as exempt were reclassified as non-exempt and WestLB paid each of these reclassified Executives for overtime worked since August 2004. (Carro Aff. ¶ 4.)

As a result of Yost's classification analysis, 18 employees with the corporate title of Executive remained classified as exempt. (*Id.* at ¶ 5.) Five of these employees were promoted to the corporate title of Manager in April 2005. (*Id.* at ¶ 7.) An additional five of these employees left WestLB in 2004, prior to the completion of the reclassification process. (*Id.* at ¶ 6.) The eight remaining employees were either promoted to Manager or Associate Director and/or left WestLB following the reclassification. (*Id.* at ¶¶ 7-8.)

These 18 employees held positions with a wide array of duties. For example, seven of these employees were classified as exempt under the Computer Employee exemption. (*Id.* at ¶ 5.) These employees held job titles such as Network Security Engineer, Graphic Design/Intranet Administrator, LN Sr. Application Developer, and Desktop Engineer. (*Id.*) Each job had specific duties which differed from other computer related jobs and different from other exempt executives. (*See* Job Descriptions, Carro Aff. Ex. A.)

Seven of these employees worked in the offices of WestAM Houston; six positions held by these employees were eliminated following the closing of the WestAM Houston office. (Carro Aff. at ¶ 5.) One employee transferred to New York and has since left WestLB. These employees held job titles such as Account Administrator, Corporate Accountant, Credit Analyst,

Trade Settlement Supervisor, and Sr. Account Administrator. (*Id.*) Each of these jobs also had specific duties and responsibilities different from the others. (*See* Job Descriptions, Carro Aff. Ex. A.) For example, the duties of a Corporate Accountant included managing the monthly and quarterly preparation of financial statements while the duties of a Senior Account Administrator included preparing daily pricing and reconciliations for mutual funds. (*Id.)*

All current WestLB employees with the corporate title of Executive are classified as non-exempt and are paid overtime. (Carro Aff. ¶ 3.) The current job titles of the Executive positions include Administrative Assistant, Executive Assistant, Facilities Administrator, and Mail Assistant. (*Id.*)

Commencing in 2006, WestLB also conducted a review of the FLSA classification of all employees with the corporate title of Manager. (*Id.* at ¶ 10.) WestLB examined the job duties of the positions encompassed in the corporate title of Manager in order to determine whether each employee should be eligible for overtime pay. (Carro Dep. 137:25-138:7.) As a result of this analysis, in 2007, 26 employees with the corporate title of Manager were reclassified from exempt to non-exempt. (Carro Aff. ¶ 9.) During 2006 and 2007, nine new employees were hired as non-exempt Managers. Currently, the corporate title of Manager includes both employees who are classified as exempt and employees who are classified as non-exempt. (*Id.* at ¶ 10.)

The corporate title Manager encompasses a wide-range of job titles including, but not limited to: Associate Trade Finance, Deal Specialist, Expense Controller, Graphic Designer, Human Resources Manager, Junior Deal Specialist, Payroll Manager, and Regulatory Reporting Accountant. (*Id.* at ¶¶ 12-13.) These employees perform a differing array of duties. For example, a Human Resource Manager's duties include managing WestLB's tuition reimbursement program, managing human resources sponsored events, and working with other

human resources staff to manage all secondment contracts. (*See* Job Descriptions, Carro Aff. Ex. B.) As a further example, a Deal Specialist's job duties include working with the portfolio management team to develop new system modules, preparing progress reports and other project reports using project management software, and communicating with business unit staff gathering data, performing ad hoc reporting and assisting in the preparation of specification for new loan modules. (*Id.*)

## ARGUMENT

**I.    Plaintiff's Motion For Conditional Certification Should Be Denied.**

For a district court to conditionally certify a collective action and order that notice be given to potential collective members, the plaintiff must show that the proposed collective members are "similarly situated." *Levinson v. Primedia Inc.,* No. 02 Civ. 2222 (CBM), 2003 U.S. Dist. LEXIS 20010, at *3-4 (S.D.N.Y. Nov. 6, 2003). While in the early stages of litigation a plaintiff's burden in this regard is modest, certification is not automatic; "substantial allegations that the putative class members were together the victims of a single decision, policy or plan infected by discrimination are required." *Morisky v. Pub. Serv. Elec. & Gas Co.,* 111 F. Supp. 2d 493, 497 (D.N.J. 2000) (quotation omitted). The test is whether there is a "factual nexus" between the claims of the named plaintiff and the proposed collective. *Davis v. Lenox Hill Hosp.,* No. 03 Civ. 3476 (DLC) 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004). "[C]onclusory allegations or lack of a nexus with the putative class will prevent the case from moving forward as a collective action." *Mendoza v. Casa de Cambio Delgado Inc.,* No. 07-CV-2579 (HB) 2008 WL 938584 at *1 (S.D.N.Y. Apr. 7, 2008). Certification is denied where plaintiffs cannot make the modest showing "that they and the broad class they wish to represent

are similarly situated with respect to job requirements and pay provisions." *Trinh v. JP Morgan Chase & Co.*, No. 07-CV-1666 (WMC) 2008 WL 1860161, at *4 (S.D. Cal. Apr. 22, 2008).

Moreover, collective certification has been denied where "'significant differences' [between the plaintiff and the proposed collective members] are apparent at the outset." *Diaz v. Electronics Boutique of Am., Inc.,* No. 04-CV-0840E (SR), 2005 WL 2654270, at *5, n. 8. (W.D.N.Y. Oct. 17. 2005).[3] Here, even under the modest pre-discovery standard, the significant differences between Fei and his proposed collective members warrant denial of Fei's Motion.

Fei identifies his proposed collective members as 1) the "Exempt Executives" who remained exempt after the reclassification project in June 2005 and 2) Managers employed by WestLB during the past three years. (Motion at 10-11.) These include three distinct categories of employees: 1) the 18 Executives who were identified as remaining exempt after the 2005 reclassification project, (Neilan Decl. Ex. G,) 2) 26 Managers who were classified as non-exempt in 2007 and nine new non-exempt Managers, (Carro Aff. ¶ 10,) and 3) Managers who remained exempt after the 2007 reclassification project. Fei, who worked as WestLB's Payroll Manager, was classified as exempt under the administrative exemption. The only WestLB employee with job duties similar to Fei is the employee who replaced him as Payroll Manager. (*Id.* ¶ 14.)

---

3.  Fei argues strenuously both that the Court should apply the modest pre-discovery standard and that he has not had discovery. The fact is that although discovery is not complete, it has been significant. WestLB took Fei's deposition and Fei deposed various WestLB 30(b)(6) witnesses along with Vivian Yost, the consultant who participated in WestLB's reclassification project. (Habinsky Aff. ¶¶ 4, 11, 12.) WestLB also has produced more than 1700 pages of documents in response to Fei's requests. (*Id.* at ¶¶ 5, 7-9.) Moreover, Fei had possession of numerous documents relating to his claims before he commenced this lawsuit. While Fei was employed by WestLB, he removed WestLB's hard copy documents and also transmitted WestLB's documents and information from the computer that he was given access to while employed by WestLB to his personal Hotmail account. (*Id.* at ¶ 4.) Much of this information is directly relevant to his claim in this lawsuit. (*Id.*)

A.    Fei Has Not Demonstrated That He Is Similar To His Proposed Collective
Members Based On Their Being Subject to a Common Policy.

Plaintiff attempts to show that he is similar to the Exempt Executives and the Managers

in his proposed collective by arguing that they were all subject to a common policy. Based on

what Fei alleges to be three common policies, he asks the Court to find that he is similarly

situated to employees who hold or held over 50 different positions at WestLB. These positions

include numerous Accountant positions, Associate Trade Finance, Deal Specialist, Expense

Controller, Graphic Designer, Human Resources Manager, Junior Deal Specialist, and numerous

other jobs. (*See* Neilan Decl. Ex. H; Carro Aff. ¶¶ 5, 11, Exs. A, B.)

The first common policy that Fei alleges is that the WestLB did not pay overtime to

Executives and Managers classified as exempt. (Fei's Motion at 17-18.) If this were sufficient to

satisfy Fei's burden on this Motion, any person who claimed he or she was misclassified as

exempt could on that basis alone conditionally certify a collective of every other exempt

employee of a defendant. This very argument has been rejected by multiple courts. As the

*Morisky* court noted:

> Plaintiff argue [sic] that defendants' 'common scheme'…to deny them
> overtime binds the class, making all plaintiffs similarly situated. However,
> as defendants correctly point out, what plaintiffs are really challenging here
> is defendant's determination that they are exempt under the FLSA.
> Defendant classifies all employees…as exempt, therefore any 'plan' or
> 'scheme' which reduces or eliminates overtime compensation to such
> employees, if one existed, cannot be improper on its face. To determine
> which employees are entitled to overtime compensation under the FLSA
> depends on an individual, fact-specific analysis of each employee's job
> responsibilities under the relevant statutory exemption criteria. Therefore,
> 'similarly situated' in this case must be analyzed in terms of the nature of
> the job duties performed by each class member, as the ultimate issue to be
> determined is whether each employee was properly classified as exempt.

*Morisky*, 111 F.Supp.2d 493, 498 (D.N.J. 2000). Similarly, in *Freeman v. Wal-Mart Stores, Inc.*,

265 F. Supp. 2d 941, 945 (W.D. Ark. 2003), the court rejected plaintiff's claim that he was

similarly situated to all other employees below the officer level – no matter what the nature of their duties were, because they both claimed they were not being paid overtime. Instead, the court recognized that in FLSA cases, disputes regarding the nature of an employee's duties are questions of fact and to certify a collective action, the Court must "make a preliminary determination that Plaintiff's duties are generally comparable to those he seeks to represent." *Id.* *See also Trinh,* 2008 WL 1860161, at *4 (allegations that all loan officers were misclassified as exempt did not establish they were similar without evidence of the same job requirements and pay provisions); *Dean v. Priceline.com, Inc.,* No. 3:00-CV-1273 (DJS) 2001 WL 35961086, at *2 (D. Conn. June 6, 2001) (rejecting Plaintiff's argument that "putative class members are similarly situated because all were denied overtime pay as a result of being misclassified as exempt" where exempt status must be determined on an individual basis).

The second common policy that Fei alleges is that WestLB purportedly classified employees without conducting an inquiry into job duties. (Fei's Motion at 18.) Fei's Motion claims that WestLB misclassified new employees by basing the classification on his or her predecessor in the job and also, by classifying Executives and Managers as exempt without conducting an individual assessment. This is in actuality just a variation of Fei's argument that he and his proposed collective members are similar because they were improperly classified as exempt. Thus, this argument also has been rejected when the proposed collective contains employees whose jobs are not similar. In *Young v. Cerner Corp.,* 503 F. Supp. 2d 1226, 1229-30 (W.D. Mo. 2007), the plaintiff also sought to certify a collective action of all the employees in the two lowest tiers of seven tiers of employees who were classified as exempt. The court denied certification finding that the plaintiffs were not similarly situated to the proposed collective because members of the collective, like the members of the proposed collective here, had varied

12

job responsibilities and would need to be evaluated under different exemption tests. *Id.* at 1231-33.

Further, as a factual matter, there is ample evidence demonstrating that WestLB made individual assessments based on job duties and responsibilities in order to determine the FLSA classification of *each* Executive and Manager. By way of example, WestLB 30(b)(6) witness Lisa Carro, Managing Director for Human Resources, testified that:

- With respect to employees hired after WestLB's reclassification project, "If they were assuming a job whose responsibilities were deemed to be non-exempt, then they were non-exempt. If [the responsibilities] were deemed to be exempt, then they would have been exempt." (Carro Dep. 75:22-76:2;)

- Managers were classified as exempt based on their job responsibilities. (Carro Dep. 136:16-137:19;)

- With respect to the classification of executives: "all executives were evaluated, job descriptions were evaluated." (Carro Dep. 28:21-23;) and

- "[Y]ou need to look at a very individual basis or you would have to look person-by-person to determine whether or not individuals were classified as exempt or non-exempt." (Carro Dep. 38:2-6.)

The third common policy that Fei alleges is that pursuant to the purportedly flawed reclassification plan, WestLB did not pay full back pay to Executives and Managers reclassified as non-exempt. (Fei's Motion at 20.) The fact that Fei argues that the reclassification of Executives in June 2005 and two reclassifications of certain Managers in January and May 2007 were flawed, does not show that Fei, who was not reclassified, is similarly situated to the reclassified employees or to the other employees who remained exempt. The undisputed fact is that there were separate reclassifications of employees at both the Executive and Manager level and that each reclassification involved individual assessments of employees. That means there was no common policy or violation of the FLSA applicable to Fei's proposed collective.

Fei's proposed collective excludes the Executives who were reclassified in June 2005 and received back pay. It is unclear whether Fei's Motion seeks to include the 26 Managers who were reclassified in January and May of 2007 and have received overtime compensation since that time. (*See* Fei's Motion at 10-11.) Even if he seeks to include them, Fei is not similarly situated to the 26 managers who were reclassified as non-exempt employees. Fei's claim against WestLB involves an analysis of the duties and responsibilities of his position as Payroll Manager in order to determine whether he was properly classified as exempt. In contrast, any claim that a non-exempt Manager may have against WestLB would be solely for unpaid overtime allegedly owed and would thus entail an analysis of hours worked. Where the analysis of claims so vastly differs, this Court has denied conditional certification. *Diaz*, 2005 WL 2654270, at *3 (finding that potential plaintiffs were not similarly situated where exempt plaintiff's claim involved "an analysis of daily duties and responsibilities" and the non-exempt employee's claim involved "an examination of hours worked, payroll records and [the employer's] knowledge and/or permission of the alleged overtime hours worked"). *See also Harris v. FFE Trans. Serv., Inc.,* No. 3:00-CV-0077-P (JAS) 2006 U.S. Dist. LEXIS 51437 at *12 (N.D. Texas May 15, 2006) (distinguishing between collective members who challenge their classification as exempt and other collective members who were classified as non-exempt and refusing to certify the collective because highly individualized defenses would be required). Furthermore, as discussed above, Fei is simply not similarly situated to employees with dissimilar jobs.

      B.     There Is No Factual Nexus Between Fei and His Proposed Collective Because Their Positions Entail Diverse Duties and Responsibilities.

Fei argues that "[c]ourts routinely approve collective actions in misclassification cases such as this one." (Fei's Motion at 19.) However, when a plaintiff claims that he or she was misclassified as exempt and courts conditionally certify a collective of similarly situated

employees, the courts have been presented with a collective limited to employees with the same
or similar jobs as the named plaintiff. Thus, in the cases Fei cites at 19-20, the courts certified
classes of employees who had the same job as plaintiff. *See Chowdhury v. Duane Reade, Inc.*,
06 Civ. 2295 (GEL), 2007 U.S. Dist. LEXIS 73853, at *12-15 (S.D.N.Y. Oct. 2, 2007) (assistant
managers at Duane Reade stores with same job descriptions); *Anglada v. Linens 'n Things, Inc.*,
No. 06 Civ. 1290 (CM) (LMS), 2007 U.S. Dist. LEXIS 39105, at *27 (S.D.N.Y. Apr. 26, 2007)
(Department Manager and Assistant Store Managers at stores where plaintiffs worked); *Torres v.
Gristede's Corp.,* No. 04 Civ. 3316 (PAC), 2006 U.S. Dist. LEXIS 74039, at *31-34 (S.D.N.Y.
Sept. 28, 2006) (Co-Managers and Assistant Managers at Gristede's); *Damassia v. Duane Reade,
Inc.*, 04 Civ. 8819 (GEL), 2006 U.S. Dist. LEXIS 73090, at *2, 26 (S.D.N.Y. Oct. 5, 2006)
(Assistant Managers at Duane Reade stores); *Jacobsen v. Stop & Shop Supermarket Co.*, No. 02
Civ. 5915 (DLC), 2003 U.S. Dist. LEXIS 7988, at *1-2 (S.D.N.Y. May 14, 2003) (three jobs
plaintiff had held at Stop & Shop); *Harrington v. Educ. Mgmt. Corp.,* No. 02 Civ. 0787 (HB),
2002 U.S. Dist. LEXIS 8823, at *5 (S.D.N.Y. May 16, 2002) (Assistant Directors doing the same
work with the same duties).

    Where the proposed collective members hold a wide range of positions, like here, a
collective action is inefficient and overly burdensome on the Court due to the individualized
nature of the claims. Such cases would require a detailed factual inquiry into the daily activities,
job duties and responsibilities of each of many individuals and courts routinely decline to certify
collective actions on this basis, finding that that the named plaintiff and potential plaintiffs are

not similarly situated. [4] *E.g., Myers v. Hertz Corp.,* No. 02 Civ 4325 (BMC) (MLO) 2007 WL

2126264, at *1 (E.D.N.Y. July 24, 2007) (noting that sending out notice pursuant to 29 USC §

216(b) was inappropriate "because liability as to each putative plaintiff depends upon whether

that plaintiff was correctly classified as exempt ... [and] any collective action would require the

Court to make fact-intensive inquiry into each potential plaintiff's employment status"); *Diaz,*

2005 WL 2654270, at *4 (finding that plaintiff had not met his burden of showing that he was

similarly situated to proposed collective members where "a highly fact-specific and detailed

analysis" of job duties was required); *Reich v. Homier Distrib. Co.,* 362 F. Supp. 2d 1009, IOM-

15 (N.D. Ind. 2005) (denying plaintiff's motion for a collective action "where all of the potential

plaintiffs shared the same position but had differing job duties"); *Mike v. Safeco Ins. Co.,* 274

F. Supp. 2d 216, 220-21 (D. Conn. 2003) (declining to certify a collective action where "the

central question in determining [the employer's] liability will be whether the balance of tasks

[plaintiff] performed on a day-to-day basis were administrative or non-administrative" and "any

other plaintiff would also have to present specific evidence of his or her daily tasks, and the court

would have to apply the regulations on an individual basis."); *Dean,* 2001 WL 35961086, at *2

(D. Conn. June 6, 2001), (denying certification where the exempt status of each employee must

---

4.   Fei also argues that the Court need not look at the individual employee positions to determine whether or not
     each is exempt, because prior to undertaking the assessment of all executives and managers in the 2004 to 2007
     period, Fei contends WestLB did not do the proper individual assessment. (Fei's Motion at 19.) In each of the
     cases cited by Fei where the court rejected the need for individual inquiry, the court certified classes of
     employees who held the same or similar jobs and had all been treated as exempt. *Tierno v. Rite Aid Corp.,* No.
     C 05-02520 (TEH), 2006 U.S. Dist. LEXIS 71794, at *1 (N.D. Cal. Aug. 31, 2006 (Store Managers); *Wang v.
     Chinese Daily News, Inc.,* 231 F.R.D. 602, 613 (C.D. Cal. 2005) (Reporters and Account Executives);
     *Krzesniak v. Cendant Corp.,* No. C 05-05156 (MEJ), 2007 U.S. Dist. LEXIS 47518, at *1-2 (N.D. Cal. June 20,
     2007) (Station and Shift Managers). Here, WestLB made individual assessments of positions in order to
     determine each Executive's and Manager's exemption status. Moreover, the proposed collective holds over 50
     different jobs with varying duties and responsibilities and only one member has the same or similar job as
     Plaintiff.

be determined on an individual basis); *Morisky,* 111 F. Supp. 2d at 499 (declining to proceed as a collective action where "in its essence the proposed class consists of a group of individuals with different jobs and different responsibilities who believe they have been improperly classified as exempt and denied overtime wages").

Fei argues that the fact that the Exempt Executives and Managers have differing job titles and duties does not prevent the Court from granting his motion.  (Fei's Motion at 20-22.) However, the cases Fei relies on for this are inapposite.  *Heagney v. European American Bank,* 122 F.R.D. 125, 127 (E.D.N.Y. 1988), was brought under a different statute, the Age Discrimination in Employment Act.  An FLSA case as here, unlike an age discrimination case, focuses on "the nature of the employees' job duties....Therefore, a collective action would only be appropriate where 'the plaintiff[s] make[] some showing that the nature of the work performed by other claimants is at least similar to [their] own.'"  *Morisky,* 111 F. Supp. 2d at 498 (citation omitted).  Similarly, *Fasanelli v. Heartland Brewery, Inc.,* 516 F. Supp. 2d 317, 320 (S.D.N.Y. 2007), certified a collective of hourly workers at six restaurants who challenged the application of a clock in-out system, not, like here, classifications of employees.  The plaintiffs in *Hallissey v. Amer. Online Inc.,* No. 99 Civ 3785 (KTD) 2008 U.S. Dist. LEXIS 18387 at *2 (S.D.N.Y. Feb. 19, 2008) all were Community Leaders, who were alleged to have been improperly classified as volunteers.  Thus, none of Fei's three cases, unlike here, involved alleged improper classification based on job duties.

Moreover, the cases Fei cites that are based on an alleged misclassification have limited the collective to potential members holding the same or similar jobs to the plaintiff. *See Gonzalez v. Nicholas Zito Racing Stable Inc.,* NO 04 CV 22, 2008 U.S. Dist. LEXIS 27598, at *2-4 (E.D.N.Y. Mar. 31, 2008) (immigrant, non-English speaking employees involved in the

care of horses); *Chowdhury*, 2007 U.S. Dist. LEXIS 73853, at *2-3 (daytime and evening assistant store managers at Duane Reade stores.) *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 104 (D. Conn. 2007) (assistant store managers.) These cases provide no support for conditional certification of a collective with the wide-range of positions held by the WestLB Exempt Executives and Managers whom Fei seeks to include in a collective action.

      C.      Fei Has Provided No Evidence Supporting His Claim That He Is Similarly Situated to Exempt Executives And Managers Based on the Same or Similar Job Duties.

The collective proposed by Fei consists of over 50 job titles of Executives and Managers with varying duties and responsibilities. As such, there will need to be a fact-specific inquiry into each functional job. There are currently more than 50 different jobs in the corporate level of Manager. (Carro Aff. ¶ 11.) These managers have different duties and responsibilities. (*See* Job Descriptions, Carro Aff. Ex. B.) Individualized inquiries will need to be conducted as to each employee that plaintiff contends was improperly classified. These inquiries also will require analysis under different "white collar" exemptions. Some positions, like Fei's, will need to be analyzed under the administrative exemption, others, such as the numerous accounting positions, will require analysis under both the professional exemptions and administrative exemptions, a position such as the Developer FI will need to be analyzed under both computer employee and administrative exemptions, still other employees who earn over $100,000 per year will require analysis under the highly paid employee exemption, while others may need to be analyzed under the executive exemption.[5]

---

5.    Among the differences between the "white collar" exemptions are that: the administrative exemption focuses on whether an employee has a primary duty that is the performance of office work directly related to management or general business operations; the professional exemption focuses on whether an employee's primary duty

(Footnote continued on next page)

Fei did not submit any evidence from which this Court could conclude that any of the Exempt Executives or the exempt or non-exempt Managers, other than Fei's replacement, had the same or similar job duties. Rather, Fei's Motion includes a list of the numerous Executive and Manager titles identified during discovery. (Neilan Decl. Ex. H.)

Furthermore, instead of showing that Fei is similar to his proposed collective, the declarations that Fei has submitted in support of his Motion, (Declarations of TinaMarie Candela, Thelma Pennycooke, Ho Nguyen, and Sean Killoran (Neilan Decl. Exs. N, P, Q, R),) establish that each of these employees had a different job and that the job of each would need to be analyzed separately to see if he or she was properly classified as exempt.

Further, Ms. Candela, Ms. Pennycooke and Mr. Nguyen are not even members of Fei's proposed collective. Ms. Candela, Ms. Pennycooke and Mr. Nguyen worked for WestLB through December 2004, March 2005, and February 2005, respectively. (Candela Decl. ¶ 1, Pennycooke Decl. ¶ 1, Nguyen Decl. ¶ 1.) As Fei's Motion notes, the FLSA's "statute of limitations runs on each employee's claims until her consent form is filed." (Fei's Motion at 13.) Accordingly, even applying the FLSA's three-year limitations period for willful claims as Fei urges, the statute of limitations on these former employees alleged claims against WestLB has expired and they would not be among the potential collective members to whom notice would be

(Footnote continued from previous page)

consists of work requiring knowledge of an advanced type customarily acquired by a prolonged course of specialized intellectual instruction; the computer employee exemption focuses on whether an employee has the primary duty of work related to various aspects of dealing with computers; the executive exemption focuses on whether an employee has a primary duty that is management, regularly directs the work of two or more employees and has the authority to hire or fire other employees or make recommendations in this regard; and the highly paid employee exempt applies to an employee earning more than $100,000 who regularly performs any one or more of the exempt duties of an executive, administrative or professional employee. 29 C.F.R. §§ 541.100, 541.200, 541.300, 541.400, 541.601.

directed because they are outside the three-year period. The fact that WestLB has an additional

statute of limitations defense to these claims that is not available as to Fei's claim also shows that

Fei's proposed collective is inappropriate.

As indicated, the declarations that Fei has submitted show that these former employees

had very different jobs. TinaMarie Candela describes her duties as providing "follow up

information regarding trades of domestic/foreign equities, government securities, and corporate

bonds," "reconcili[ng] trade discrepancies," and "handl[ing] wire transfers." (Candela Decl. ¶

5). Thelma Pennycooke confirmed trades and foreign exchanges, processed payments for deals

and trades, issued payments and monitored them, processed settlements, and monitored the U.S.

dollar currency position. (Pennycooke Decl. ¶ 3.) Ho Nguyen supported traders on the trading

floor by maintaining and troubleshooting the computer system and fixing software programs and

other computer related tasks. (Nguyen Decl. ¶ 3.) Sean Killoran, who worked for the Bank for

less than 6 weeks in 2007, was a financial manager who prepared profit and loss reports for desk

traders' portfolios. (Killoran Decl. ¶ 3.)

Notably, the declarations that Fei has submitted are virtually identical in that each

contains conclusory language intended to show that the employee did not qualify for the

executive[6] or administrative[7] exemption to the FLSA. This cannot provide the requisite factual

nexus between Fei and his proposed collective. *Mendoza*, 2008 WL 938584, at *2 (denying

---

6.  Each declaration contains the identical statement: "I did not have authority to hire or fire employees. I did not make recommendations regarding hiring and firing employees." (Candela Decl. ¶ 9; Pennycooke Decl. ¶ 6; Nguyen Decl. ¶ 6; Killoran Decl. ¶ 6.)

7.  Each declaration contains the identical statement: "My primary duty was not related to the management or business operations of WestLB." (Candela Decl. ¶ 7; Pennycooke Decl. ¶ 4; Nguyen Decl. ¶ 4; Killoran Decl ¶ 4.) Three of the declarations alleged "I did not have authority to exercise my own discretion and independent judgment with respect to matters of significance. . . ." (Candela Decl. ¶ 11; Pennycooke Decl. ¶ 8, Killoran Decl. ¶ 8.)

plaintiff's motion to certify where the affidavits submitted were "boilerplate and virtually identical"). Even if Fei and some of the collective members were to be evaluated under the same administrative exemption, each person's conclusory statements would need to be weighed against the job duties and responsibilities of each to determine if he or she were classified as exempt.

In addition, an analysis of a claim by Mr. Nguyen that he should have been a non-exempt employee would regard a different legal analysis than that required by Fei's claim because while Fei was classified as exempt under the administrative exemption, Mr. Nguyen was classified as exempt under the computer employee exemption and his status as a highly compensated employee. Mr. Nguyen qualified for these exemptions because he 1) had an annual salary of $120,000 and total compensation of approximately $180,000; 2) was employed by WestLB in a position that required a degree in computer science; and 3) his duties consisted of creating and programming computer analytical tools for use by traders. 29 C.F.R. §541.400; (Affidavit of Kenneth Bigelow ¶¶ 6-9 ("Bigelow Aff."), Habinsky Aff. Ex. L.) Aside from the difference in applicable exemptions, Mr. Nguyen's job also was factually quite different from Fei's. As mentioned, Fei was the Payroll Manager whereas Mr. Nguyen maintained and troubleshot the computer system, fixed software programs and performed other computer related tasks.[8] Mr. Killoran likewise could not be a collective member given his status as a highly compensated employee. An employee with total annual compensation of at least $100,000 who performs one

---

8. In order to create and program an analytical tool, Mr. Nguyen first would consult with the traders to ascertain what specifications and trading functions that the tool needed to fulfill. (Bigelow Aff. ¶ 9.) He then would be required to use his discretion and skill to design and create computer code that would perform these trading functions. (*Id.*) In order to design and program a functioning analytical tool, Mr. Nguyen needed to understand the intricacies of the trading requirements and then had to use his own independent judgment and expertise to determine how to best create computer code that would most effectively satisfy these requirements. (*Id.*)

or more of the exempt duties or responsibilities of an executive, administrative, or professional employee is deemed exempt from the overtime requirements of the FLSA. 29 C.F.R. § 541.601(a). Mr. Killoran received an annual salary of $100,000. (Killoran Decl. ¶ 11; Affidavit of Alan Halperin ¶ 6 ("Halperin Aff."), Habinsky Aff. Ex. M.) Mr. Killoran clearly performed work directly related to the general business of WestLB that required the use of discretion and independent judgment. His job duties as Product Controller in the Finance Department included daily P&L production for Flow Interest Rate Derivatives Businesses; daily risk attribution reporting for Interest Rate Derivative businesses; and supporting daily curve pricing for relevant markets. (Halperin Aff. ¶ 8.)[9] Indeed, the FLSA's implementing regulations provide that employees in the financial services sector who service the employer's products generally meet the requirements of the administrative exemption. 29 C.F.R. § 541.203(b).

Fei admitted at deposition that he knows "very little" about the job duties of employees at WestLB aside from the people he worked with. (Fei Dep. 229:7-17.) Moreover, with respect to the people he worked with, Fei conceded that he does not know what duties they performed when they were not interacting with him. (*Id.* at 231:6-9.) It is apparent from Fei's testimony and the declarations submitted in support of his Motion, that Fei has failed to satisfy even the modest factual showing that there are potential plaintiffs to whom he is similarly situated.

---

9.    In order to fulfill these responsibilities, Mr. Killoran was required to use independent discretion and judgment to analyze financial data and gauge financial factors such as market movement, interest rates and risk factors. (Halperin Aff. ¶ 8.) Mr. Killoran also had authority to review traders' books and order the traders to make corrections in the event that their calculations with respect to valuations and rates were incorrect. (*Id.* at ¶ 9.)

     D.     Fei Cannot Show That His Proposed Collective Members Will Rely on Common Evidence to Prove Their Claims.

In granting a motion to conditionally certify a collective action, "the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case." *Safeco Ins. Co. of Amer.*, 274 F. Supp. 2d at 220. There is no purpose to a collective action where, as here, the potential collective members cannot rely on common evidence to prove their claims. Fei has not alleged, because he cannot, that the evidence applicable to the proof of his claims against WestLB will apply to the potential collective members. This is grounds alone for the Court to deny Fei's motion. *See e.g., Trinh*, 2008 WL 1860161 at *4 (denying plaintiff's motion for a collective action where plaintiffs did not "put forth any arguments suggesting that Plaintiffs and the putative class will rely on *any* common evidence to prove that each putative plaintiff falls outside each of these exemptions and is due overtime compensation").

In order to determine if Fei was correctly classified as exempt, the Court will need to consider if his specific primary duty was the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers and if his primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.[10] 29 C.F.R. § 541.200(a)(1)-(3); *Seltzer v. Dresdner Kleinwort Wasserstein, Inc.*, 356 F. Supp. 2d 288, 302 (S.D.N.Y. 2005) (finding that executive assistant to the president of an investment banking firm fell within the administrative

---

10. There is also a salary test of earnings of not less than $455 per week. Fei easily meets this test. Fei was a salaried employee, with his annual base salary rising from $68,000 in July 2000 when he was hired, to $86,000 at the time he resigned his employment with WestLB. (Habinsky Aff. Ex. G.) Fei's own salary clearly has no bearing on the salaries of other collective members.

exemption); *Allen v. Centillium Commcns., Inc.*, NO. C-06-06153 (E.D.L.) 2008 U.S. Dist.

LEXIS 27435, at *7-8 (N.D. Cal. Apr. 3, 2008) (finding that an employee who "processed

payroll . . ., trained and supervised personnel, and managed audits" qualified under the

administrative exemption).

Next, the facts will need to be examined relating to whether Fei's own, specific work was

directly related to the management or general business operations of the employer. This

evidence includes Fei's resume and self-evaluations, which show that his responsibilities as

Payroll Manager included:

- Running "multi state, multinational biweekly and monthly payroll." (Resume, Habinsky Aff. Ex. H;)
- "Constantly" providing expertise to employees regarding "complex compensation, tax, benefits and expatriate issues." (Perf. Eval., Habinsky Aff. Ex. I;)
- The "implementation, communication, and administration" of expatriate compensation. (Resume, Habinsky Aff. Ex. H;)
- Liaising with the accounting firms retained by WestLB. (*Id.*);
- Developing and implementing WestLB's severance pay procedures. (*Id.*);
- Working with Human Resources regarding "WestLB's time off/payment policy and procedures." (Perf. Eval, Habinsky Aff. Ex. I;) and
- Interpreting and applying WestLB's policies governing payments to employees. (Resume, Habinsky Aff. Ex. D.)

In contrast, in the self-serving declaration Fei submitted in support of this motion he

states that his "main job duties were data entry and related clerical tasks." (Fei Decl. ¶ 3.)

Regardless, it is clear that the specific analysis of his job duties is limited only to those with the

position of Payroll Manager. Then, consideration will need to be given to whether Fei

personally exercised discretion and independent judgment in the performance of his duties as

Payroll Manager. Once again, this entails a look at Fei's specific duties and responsibilities and

other factors such as the fact that he had B-level signature authority, which allowed him to

contractually bind the Bank, sign checks, and execute wire transfers on behalf of the Bank with the concurrence of another employee holding signature authority. (Shirley Aff. ¶ 9.)

It is clear that even if Fei can prove that he should have been classified as non-exempt and entitled to overtime, he will not have provided any evidence in support of claims of anyone else. Judicial economy is thus not served by certifying a collective action here.

## II.    If The Court Were to Conditionally Certify A Collective Action, the Proposed Notice Should Be Modified.

Fei's motion seeks Court authorization to send an opt-in notice to Exempt Executives and all Managers "employed by WestLB during the past three years." (Fei's Motion at 10-11.) As discussed in Section I above, WestLB maintains that Fei is not similarly situated to any Exempt Executives or Managers, other than his replacement as Payroll Manager. However, were the Court to conditionally certify a collective action, WestLB submits the following comments on Fei's proposed notice.

Plaintiff addresses the draft notice as follows:

"If you were employed by WestLB as a Manager or Exempt Executive between **[Date to be determined by Court]** and the present."

(Neilan Decl. Ex. L.)  Although Plaintiff does not specify the starting date, the notice should be directed only to employees within any designated collective who worked for WestLB within three years and two weeks of the date of the notice.[11] *Legrand v. Educ. Mgmt. Corp.,* No. 03 Civ. 9798, (HB) (HSP) 2004 U.S. Dist. LEXIS 17696, at *7 (S.D.N.Y. Sept. 1, 2004) ("[T]he opt-in notice should be limited to similarly situated individuals who have been employed by

---

11. Plaintiff acknowledges that the longest statute of limitations applicable to FLSA claim is three years and runs until employee opts-in. (Fei's Motion at 13.)  In addition, Defendant agreed to a two-week toll of statute of limitations.

defendants within the last three years."); *Doucoure v. Matlyn Food, Inc.,* No. CV-07-3839, (JG) (JO) 2008 U.S. Dist. LEXIS 30851, at *11-12 (E.D.N.Y. Apr. 15, 2008) (approving a notice for similarly situated employees who worked for employer within three years of the date of the notice).

Second, the notice should explain that it is directed to employees who contend they were misclassified as exempt from overtime pay, who actually worked over 40 hours a week and did not receive overtime pay.

Finally, WestLB produced in discovery a list of all Executives and Managers employed since October 2004. That list is broader than Fei's proposed collective. Were the Court to conditionally certify a collective action, WestLB will produce a list of the members of the collective certified by the Court to whom notice can be sent.

WestLB also requests an opportunity to review and comment on the final version of any notice before it is disseminated.

### CONCLUSION

For the foregoing reasons, Defendant WestLB AG respectfully requests that the Court deny Plaintiff's Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the Fair Labor Standards Act.

Dated: May 23, 2008
       New York, New York

HUGHES HUBBARD & REED LLP

By: _____
      Ned H. Bassen
      Vilia B. Hayes
      Jason Habinsky
      One Battery Park Plaza
      New York, New York 10004
      bassen@hugheshubbard.com
      (212) 837-6000

Attorneys for Defendant WestLB AG