# Affirmation of Jason Habinsky

# Exhibit

# E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILIP FEI, on behalf of himself and classes of those similarly situated,

                              Plaintiff,

v.

WESTLB AG,

                              Defendant.

Index No.: 07 Civ. 8785 (HB) (FM)

**AFFIDAVIT OF LINDA SHIRLEY**

STATE OF NEW YORK  )
                              : ss.:
COUNTY OF NEW YORK )

Linda Shirley, being duly sworn, deposes and says:

1.    I am the Executive Director in the Human Resources Department at WestLB AG ("WestLB").

2.    The information contained herein is based upon my personal knowledge, the records of WestLB, and information provided to me by the WestLB employees with knowledge.

3.    Philip Fei began working as the Payroll Manager for WestLB on July 31, 2000. He submitted his resignation on June 6, 2007, effective June 19, 2007.

4.    At Fei's exit interview, he was directly asked whether he had returned all WestLB property. He stated that he had.

**Fei's Job Responsibilities as Payroll Manager**

5.    During his employment, Fei was the only Payroll Manager employed by WestLB in New York. He possessed substantial knowledge and expertise in his field, and employees, including me, deferred to his knowledge and expertise. Because of his expertise, he worked independently under little supervision.

Fei_Affidavit_Revised.DOC

6. Fei was responsible for the accuracy and completion of the payroll process, including sophisticated issues involving expatriates and foreign nationals. He also conducted research to assist WestLB in resolving complicated issues regarding payroll, taxes, expatriate calculations and other issues. He liaised with WestLB's outside accountants. He frequently was involved when we developed and implemented employer policies.

7. Fei's job responsibilities required that he have access to highly sensitive, confidential, and privileged information belonging to WestLB. This included personal and private information regarding WestLB's employees, including their Social Security Numbers, salaries and bonuses, and home addresses and telephone numbers.

8. Fei held a sensitive position, and, accordingly, was required by New York law to take two consecutive weeks of vacation per year.

9. Fei also had B-level signature authority, which is not granted to all managers at WestLB. This authority allowed him to contractually bind the Bank, sign checks and execute wire transfers on behalf of the Bank with the concurrence of another employee holding signature authority.

10. Fei stated to me that he was ready for a promotion to Associate Director. Fei believed that his responsibilities and performance were consistent with such a title.

**Fei's Involvement in Issues Concerning Overtime Payment**

11. Fei was involved in WestLB's payment of overtime to eligible employees and administered WestLB policies with regard to overtime.

12. Fei would receive the names of employees classified as non-exempt for overtime purposes. He then would send the employees the appropriate timesheet form, and explain WestLB's policies regarding the recording of hours to the employees.

13. These employees would submit their timesheets directly to Fei. He was responsible for reviewing the timesheets, and could and did raise objections as to the accuracy of the timesheets.

14. Fei also generated reports demonstrating the hours of overtime worked by the Bank's non-exempt employees and therefore was aware of the amounts of overtime worked by the employees.

15. Fei participated in certain aspects of reclassification projects where certain employees' overtime status was reviewed and revised. In his position as Payroll Manager, Fei also served as a WestLB representative who could answer any questions from the reclassified employees.

### Fei's Misappropriation Of WestLB's Documents and Information

16. On November 21, 2007, after Fei's resignation, WestLB learned that during Fei's employment, he used the WestLB computer that WestLB had given him access to for authorized purposes to transmit without authorization highly sensitive WestLB documents and information to his personal Hotmail account for which we cannot determine a business purpose.

17. The information that Fei sent to his personal Hotmail account, includes personal and private information of WestLB's employees, including, but not limited to, their social security numbers, home addresses, birthdates, home telephone numbers and salaries. The information that Fei sent to his personal Hotmail account also includes WestLB's confidential, proprietary and attorney-client privileged information.

18. Fei's transmission of this information to his personal Hotmail account was not required for or in furtherance of his job responsibilities with WestLB, and was not approved by WestLB.

19. Beginning on September 25, 2006, WestLB learned that some employees had become victims of identity theft. We now know that on this day, Fei forwarded to his personal Hotmail account the Benefits Checklist for the month of September 2006, which contained WestLB's employees Social Security Numbers, home addresses and telephone numbers. Some of the victims of identity theft were included on this list.

20. Fei sent WestLB documents and information to his personal Hotmail account at least ten times between June 6, 2007, the date he gave WestLB notice of his resignation, and June 19, 2007, his last day of employment.

21. Fei's misappropriation of WestLB's documents and information, and the personal and private information of its employees, violated WestLB's policies, included those contained in its Code of Conduct, WestLB Handbook and Security Awareness Guidelines.

_____
Linda Shirley

Subscribed and sworn to before me on this
17th day of December 2007.

_____
Notary Public

SYLVIA O. ROJAS
Notary Public, State of New York
No. 01RO6054408
Qualified in Queens County
Commission Expires March 13th 2011

Fei_Affidavit_Revised.DOC         4