# Affirmation of Jason Habinsky

# Exhibit

# K



[Page 1]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

PHILIP FEI, on behalf of
himself and classes of
those similarly situated,

        Plaintiffs,

    vs.                No. 07 Civ. 8785

WEST LB AG,

        Defendant.

------------------------------------------------X

DEPOSITION OF VIVIAN J. YOST
New York, New York
Thursday, May 15, 2008

Reported by:
SHAUNA STOLTZ-LAURIE
CSR NO. 810490

```
 1                    Yost
 2       Q.   Okay.  And is this the list of the
 3  staff members that you had mentioned a few
 4  moments ago?
 5       A.   Yes.
 6       Q.   And is this the list of all the
 7  individuals -- all the executives that you
 8  were collecting job descriptions for?
 9       A.   Yes.
10       Q.   Okay.  And you mentioned another
11  one of your job duties as a consultant at
12  West LB was FLISA (ph.) work?
13       A.   Excuse me?
14       Q.   Was FLISA (ph.), was FLSA work?
15       A.   Oh, okay.  I've never heard it
16  pronounced that way.
17       Q.   We lawyers get in the habit of
18  doing that.
19       A.   Okay.
20       Q.   So what FLSA work did you have at
21  West LB?
22       A.   I tested the individuals that were
23  in the executive job category for exemption
24  status.
25       Q.   And are those individuals the ones
```

1                    Yost

2    instructions on how to conduct exemption

3    testing?

4         A.   No.

5         Q.   And so did you conduct it based on

6    your own knowledge and experience --

7         A.   Yes.

8         Q.   -- in this area?

9              And about how long did it take you

10   to conduct the exemption testing of the

11   executives?

12        A.   I don't remember, but it was not a

13   quick process.  It was lengthy.

14        Q.   And what, if anything, did anyone

15   from West LB give you to conduct the

16   exemption testing?  And I mean what

17   information or what documents.

18        A.   Anyone from West LB?

19        Q.   Yes.

20        A.   Well, the Human Resource -- not the

21   Human Resources.  Excuse me.  The managers

22   gave me job descriptions that I had either

23   asked for or helped them have their staff

24   members create.

25        Q.   Apart from the job descriptions,

```
 1                      Yost
 2    descriptions, the salaries and the official
 3    job titles, to conduct this exemption
 4    testing?
 5         A.   I reviewed the job description to
 6    see if I understood the general scope and
 7    responsibility of the individual, and then I
 8    went back -- well, no, I take that back.  I
 9    reviewed the job description, and inevitably
10    I would have questions about the duties, and
11    I would go back to the manager and/or the
12    employee to ask specific questions about
13    their duties to make sure that I understood
14    their duties so that I could perform an
15    exemption test.
16         Q.   Okay, and which executives did you
17    go back to?
18         A.   I don't remember.  I would always
19    have a conversation with the manager about
20    the group of executives that reported to
21    them, but I don't remember what executives I
22    spoke to in addition to their manager.
23         Q.   Okay, and what did you do next?
24         A.   If I felt that I understood
25    clearly, after having the conversation with
```

1                    Yost

2    the manager, this individual's duties and

3    responsibilities, then I would -- I had

4    pulled out the Federal Register that had the

5    latest rule -- the latest descriptions of the

6    -- all of the exemption categories, of which

7    there were five, and I would review those

8    against the job description and my notes from

9    the manager on that job description and those

10   individual's duties, and determine if that

11   individual qualified for an exemption.

12              Then I had a computer program I

13   used -- I think it was called the Overtime

14   Exemption Expert, or something like that --

15   and I would then plug -- answer questions in

16   that program to see if that program came up

17   with the same determination that I came up

18   with.  And I don't ever remember with it

19   coming up with a determination that was

20   contrary to my determination.  And I printed

21   out from that Overtime Exemption Expert

22   program whether they qualified for an

23   exemption or not, and I attached that to the

24   job description and made that part of my

25   documentation trail.  I mainly used that

U.S. LEGAL SUPPORT, INC.
1 PENN PLAZA, NEW YORK, NY  10119  Tel: 212-759-6014

1  Yost

2  Overtime Exemption Expert for documentation

3  and to confirm my determination.

4  Q. And then what did you do next?

5  A. I marked the job description exempt

6  or nonexempt, and compiled all of that data

7  into spread sheets, determining who was

8  currently exempt and needed to be moved to

9  nonexempt, who did not qualify for an

10 exemption, who could remain exempt, did

11 qualify for an exemption, and I don't

12 remember if there were any other categories

13 there in between. Individuals that were

14 currently nonexempt that could be moved to

15 exempt, that would be another category. I

16 think there were three categories.

17 Q. Okay. Did you create any other

18 documents, other than that spread sheet that

19 you're describing, after you completed the

20 exemption testing?

21 A. I don't remember.

22 Q. Okay. Did you ever complete and

23 draft any PowerPoint presentations regarding

24 the work that you did?

25 A. I don't remember.

1              Yost

2    talked to people and you interviewed

3    individuals, but I just want to know, looking

4    at this job description alone, could you

5    reach a determination on whether this person

6    should be classified as exempt or nonexempt?

7         A.   No.

8              MR. HABINSKY:   Objection.

9              Sorry.

10        Q.   Is there any way you can reach a

11   determination based on this document alone?

12        A.   I would need to -- because it's not

13   the document that's exempt or not or not

14   exempt, it's the person, I would need to know

15   the person, understand how the person

16   performed these duties, to make the

17   determination.

18        Q.   Okay.  Is there any way someone

19   could perform these duties, setting aside the

20   salary questions, but they could perform

21   these duties that would result in them being

22   classified as exempt?

23        A.   Are you -- I'm not sure I

24   understand what you're asking me.

25        Q.   Okay, let me rephrase it then.

1                       Yost

2     hiring, terminations and performance

3     reviews."

4          Q.   So you can?

5          A.   Yeah.

6          Q.   Okay.  Can you determine based on

7     this job description alone whether this

8     person should be classified as exempt or

9     nonexempt?

10         A.   No.

11         Q.   Okay.  You would need to talk to

12    the person or their manager?

13         A.   Right.

14              I just want to add one thing.

15         Q.   Sure.

16         A.   I also at times spoke to the Human

17    Resources representative for that department

18    who had intimate knowledge of the duties and

19    responsibilities of the individuals.

20         Q.   Was that as part of your exemption

21    testing?

22         A.   At times it would be.

23         Q.   Did you also do that when you were

24    working on the job descriptions project?

25         A.   I don't remember.