**Outten & Golden LLP**
Adam T. Klein (AK 3293)
Jack A. Raisner (JR 6171)
Linda A. Neilan (LN 4095)
Tara Lai Quinlan (TQ 0717)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **PHILIP FEI,** on behalf of himself and classes of those similarly situated,<br><br>    **Plaintiff,**<br><br> -against-<br><br>**WEST LB AG,**<br><br>    **Defendant.** | 07 Civ. 8785 (HB)(FM) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION TO COMPEL THE DEPOSITIONS OF ATTORNEYS**
**LEAHY AND GREENBERG**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................................... 1

    I.     WestLB Asserted a Good Faith Affirmative Defense to Liquidated Damages. .............. 1

    II.    WestLB Relied on the Advice of Counsel in (Mis)classifying Managers and Executives and Not Paying Them All of Their Retroactive Overtime Wages. ................ 2

    III.   Defendant's Assertion of the Attorney-Client and Work Product Privilege Is Simply Another Transparent Attempt to Delay Discovery. ........................................................ 3

LEGAL FRAMEWORK............................................................................................................... 4

ARGUMENT ................................................................................................................................ 6

   WestLB Waived Privilege by Asserting a Good Faith Affirmative Defense. ........................... 6

CONCLUSION............................................................................................................................ 11

## TABLE OF AUTHORITIES

### CASES

*Abbe v. City of San Diego*,
  Nos. 05 Civ. 1629, 06 Civ. 0538,
  2007 U.S. Dist. LEXIS 87501 (S.D. Cal. Nov. 9, 2007) ..........9

*Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*,
  210 F.R.D. 506 (S.D.N.Y. 2002) ..........7

*Bowne, Inc. v. AmBase Corp.*,
  150 F.R.D. 465 (S.D.N.Y. 1993) ..........8

*Brock v. Wilamowsky*,
  833 F.2d 11 (2d Cir. 1987) ..........5

*Brownell v. Roadway Package Sys., Inc.*,
  185 F.R.D. 19 (N.D.N.Y. 1999) ..........7

*ESPN, Inc. v. Office of the Comm'r of Baseball*,
  76 F. Supp. 2d 383 (S.D.N.Y. 1999) ..........6

*In re Grand Jury Proceedings John Doe Co. v. United States*,
  350 F.3d 299 (2d Cir. 2003) ..........7, 8

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
  184 F.R.D. 49 (S.D.N.Y. 1999) ..........6

*Herman v. RSR Sec. Servs., Ltd.*,
  172 F.3d 132 (2d Cir. 1999) ..........4, 5

*Martin v. Cooper Elec. Supply Co.*,
  940 F.2d 896 (3d Cir. 1991) ..........5

*McGrath v. Nassau County Health Care Corp.*,
  204 F.R.D. 240 (E.D.N.Y. 2001) ..........6, 7, 8

*McLaughlin v. Lunde Truck Sales, Inc.*,
  714 F. Supp. 916 (N.D. Ill. 1989) ..........9, 10, 11

*Pray v. New York City Ballet Co.*,
  No. 96 Civ. 5723, 1997 U.S. Dist. LEXIS 6995 (S.D.N.Y. May 19, 1997) ..........8, 9, 11

*OneBeacon Ins. Co. v. Forman Int'l, Ltd.*,
  No. 04 Civ. 2271, 2006 U.S. Dist. LEXIS 90970 (S.D.N.Y. Dec. 15, 2006) ..........7

*Reich v. S. New England Telecomm. Corp.*,
    121 F.3d 58 (2d Cir. 1997) ...............................................................................................5

*Resolution Trust Corp. v. Mass. Mut. Life Ins. Co.*,
    200 F.R.D. 183 (W.D.N.Y. 2001)......................................................................................7

*Sanofi Synthelabo v. Apotex Inc.*,
    299 F. Supp. 2d 303 (S.D.N.Y. 2004)................................................................................8

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) .......................................................................................7, 8

*In re von Bulow*,
    828 F.2d 94 (2d Cir. 1987) ................................................................................................7

*Worthington v. Endee*,
    177 F.R.D. 113 (N.D.N.Y. 1998)......................................................................................6

## FEDERAL STATUTES

29 U.S.C. § 216(c) ..............................................................................................................4

29 U.S.C. § 260..................................................................................................................5

## MISCELLANEOUS

6 *Moore's Federal Practice* 26.70[6][c] at 26-226 (3d ed. 1997)....................................................7

## INTRODUCTION

Plaintiff files this motion to compel the depositions of Gregory Leahy, WestLB AG's ("WestLB" or "Defendant") former in-house counsel, and Richard Greenberg, WestLB's outside counsel, with respect to Defendant's assertion of the good faith affirmative defense.[1] WestLB refuses to produce Leahy and Greenberg for depositions, claiming that its communications with them and their work for WestLB are protected by the attorney-client privilege and work product privilege. WestLB, however, waived any applicable privilege by asserting a "good faith" affirmative defense to Plaintiff's claims under the Fair Labor Standards Act ("FLSA"), thereby putting at issue the legal advice it received from its counsel. Accordingly, Plaintiff respectfully requests that the Court order Leahy and Greenberg to appear for depositions.

## FACTUAL BACKGROUND

**I.   WestLB Asserted a Good Faith Affirmative Defense to Liquidated Damages.**

In its Answer and Counterclaims ("Answer"), WestLB asserted the following as its Sixth Affirmative Defense:

> WestLB acted in good faith at all times in its dealings with Plaintiff, the Proposed FLSA Collective, and the Proposed Class and had reasonable grounds to believe that it was in compliance with the Fair Labor Standards Act and New York Labor Law. WestLB did not engage in willful conduct which would justify an award of liquidated damages or extend the statue of limitations under the FLSA.

(Neilan Decl. Ex. D (Answer) ¶ 68.)

---

[1] Plaintiff also seeks to depose Leahy and Greenberg on other areas of inquiry, including, but not limited to, the scope of WestLB's exemption testing of executives and managers and the job duties of executives and managers. During a court conference on May 22, 2008, the Court ruled that it was reserving judgment on whether it was ordering them to attend these depositions pending the outcome of the depositions of other fact witnesses that are scheduled to take place in June. (Neilan Decl. Ex. G (Court Tr. dated 5/22/08) at 3.) Accordingly, Plaintiff's motion to compel is limited solely to Defendant's assertion of the good faith affirmative defense.

II.     **WestLB Relied on the Advice of Counsel in (Mis)classifying Managers and Executives and Not Paying Them All of Their Retroactive Overtime Wages.**

Lisa Carro – Executive Director of Human Resources, Regional Head of the Americas, and one of WestLB's corporate designees pursuant to Fed. R. Civ. P. 30(b)(6) – testified at length regarding Leahy's and Greenberg's involvement in WestLB's exemption testing of managers and executives, WestLB's subsequent reclassification of some executives and some managers in reliance on their advice, and WestLB's issuance of retroactive payments to some executives and no managers in reliance on their advice.

With respect to executives, Ms. Carro testified as follows: "There was a project that was initiated by consultants and our internal counsel [i.e., Leahy] to address changes in legislation and, as part of that, they reviewed the classification of all of our executives." (Neilan Decl. Ex. E (Carro Dep.) at 33:18-24.) Leahy examined job descriptions and duties of executives. (Neilan Decl. Ex. E (Carro Dep.) at 66:9-12.) Executive is "a title for certain employees who are at a lower level in the organization. By 'lower,' [Ms. Carro] mean[t] secretaries, people in the mail room, not necessarily professional, what we considered to be professionals." (Neilan Decl. Ex. E (Carro Dep.) at 19:2-7.) As a result of the exemption testing, in June 2005, WestLB decided that some executives "*should have been reclassified as exempt*." (Neilan Decl. Ex. E (Carro Dep.) at 78:3-6 (emphasis added).)

After effectively admitting that it had improperly paid these "executives" (e.g., secretaries, receptionists, personal assistants, team assistants, clerks, senior clerks, and administrators, among others) for years, WestLB gave them retroactive payments to compensate them for *some* of the overtime hours that they had worked, but for which WestLB had never paid them. (Neilan Decl. Ex. E (Carro Dep.) at 84:7-10.) WestLB, however, paid them only as far back as August 23, 2004. (Neilan Decl. Ex. E (Carro Dep.) at 84:23-85:2; 94:19-95:3.) WestLB

2

relied on Leahy's advice in deciding to pay executives retroactive overtime payments for only ten months, rather than for all of the months that they had worked for WestLB without getting paid overtime wages. (Neilan Decl. Ex. E (Carro Dep.) at 88:2-10; 207:8-19.)

With respect to managers, WestLB's corporate witness testified at length about Greenberg's role in conducting the exemption testing and subsequent reclassification of some managers at WestLB, which included interviewing supervisors regarding the managers' job duties and reviewing job descriptions. (Neilan Decl. Ex. E (Carro Dep.) at 117:20-118:4; 122:19-125:14.) As a result of Greenberg's investigation, in January 2007, WestLB reclassified approximately 12 managers from exempt to nonexempt, (Neilan Decl. Ex. E (Carro Dep.) at 119:18-24; 120:4-13) and, in May 2007, WestLB reclassified another 12 managers. (Neilan Decl. Ex. E (Carro Dep.) at 119:25-120:13.) WestLB made this decision based on Greenberg's advice. (Neilan Decl. Ex. E (Carro Dep.) 131:6-9; 132:1-6-14.)

Unlike the executives whom WestLB reclassified as nonexempt, WestLB did not pay *any* of the newly-classified nonexempt managers *any* back wages whatsoever for the overtime hours that they had worked without pay. (Neilan Decl. Ex. E (Carro Dep.) at 132:10-13.) WestLB also made this decision based on Greenberg's advice. (Neilan Dec. Ex. E (Carro Dep.) at 132:14-21.)

**III.   Defendant's Assertion of the Attorney-Client and Work Product Privilege Is Simply Another Transparent Attempt to Delay Discovery.**

Although Plaintiff noticed Leahy's and Greenberg's depositions weeks in advance, WestLB delayed in advising Plaintiff of their availability and did not tell Plaintiff until even later that it was going to seek a protective order, thereby further delaying discovery.

3

On March 27, 2008, Plaintiff notice Leahy's deposition for April 14, 2008. (Neilan Decl. ¶ 2.) Despite Plaintiff's repeated requests to WestLB to confirm Leahy's availability on that date, Defendant refused. (Neilan Decl. ¶ 3.) On Friday, April 11, 2008 – three days before the scheduled deposition – Defendant raised the privilege issue for the first time by stating that "the deposition of Mr. Leahy would not accomplish much as Defendant is not *now* waiving the applicable attorney-client and work product privileges." (Neilan Decl. Ex. A (Email from J. Habinsky to L. Neilan dated 4/11/08) (emphasis added).) Plaintiff continued to ask Defendant to produce Leahy for his deposition, but it was not until a meet and confer conference on April 30, 2008 that Defendant stated that it was going to seek a protective order. (Neilan Decl. ¶ 6.)

On April 3, 2008, Plaintiff served Greenberg with a subpoena noticing his deposition for April 21, 2008. (Neilan Decl. ¶ 3.) On April 11, 2008, Defendant informed Plaintiff that Greenberg was not available on April 21, 2008, but was available on May 12 or 13, 2008. (Neilan Decl. ¶ 8.) Although Defendant stated that it was "not now waiving the attorney-client and work-product privileges," it did not state that it was going to seek a protective order. Accordingly, Plaintiff scheduled the deposition of Greenberg for May 13, 2008. On May 7, 2008, however, WestLB informed Plaintiff, for the first time, that it was seeking a protective order to prevent Greenberg's deposition.

**LEGAL FRAMEWORK**

An employer who violates the FLSA is liable for unpaid wages "and an additional equal amount as liquidated damages." 29 U.S.C. § 216(c). Liquidated damages are not considered a penalty, but rather "compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." *Herman v. RSR Sec. Servs., Ltd.,* 172 F.3d 132, 142 (2d Cir. 1999) (citation omitted).

An employer may avoid an award of liquidated damages only if it can prove that its failure to pay proper overtime compensation was in "good faith" and that the employer had "reasonable grounds" for believing that its acts or omissions did not violate the FLSA. 29 U.S.C. § 260; *Herman*, 172 F.3d at 142. An employer's burden to show good faith and reasonableness is "a difficult one" to meet because "double damages [are] the norm and single damages the exception." *Herman*, 172 F.3d at 142.

To establish good faith, an employer bears the burden of showing what "active steps" it took to ascertain the mandates of the FLSA, and then what actions it took to comply with them. *Id.*; *see also Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir. 1987). Such steps include seeking an opinion from counsel or the DOL, or otherwise attempting to determine the lawfulness of its employment practices. *Wilamowsky,* 833 F.2d at 15. An employer cannot establish "good faith" by simply asserting that it had no intent to violate the FLSA, by arguing that its employees did not complain about its practices, or by claiming that it was acting in conformity with industry practice. *Reich v. S. New England Telecomm. Corp.,* 121 F.3d 58, 71 (2d Cir. 1997); *see also Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991) ("To carry his burden, a defendant employer must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions. The fact that an employer has broken the law for a long time without complaints from employees does not demonstrate the requisite good faith required by the statute.") (internal quotation and citation omitted).

**ARGUMENT**

**<u>WestLB Waived Privilege by Asserting a Good Faith Affirmative Defense</u>.**

Any claim that the depositions of Leahy and Greenberg are protected by the attorney-client privilege or work product privilege fails, as Defendant has waived such protection. It is well-settled that by placing attorney-client communications or work product "at issue," a party waives relevant attorney client communications. *Granite Partners, L.P. v. Bear, Stearns & Co*., 184 F.R.D. 49, 54 (S.D.N.Y. 1999) ("The work product privilege is waived when a party to a lawsuit uses it in an unfair way that is inconsistent with the principles underlying the doctrine of privilege."); *ESPN, Inc. v. Office of the Comm'r of Baseball*, 76 F. Supp. 2d 383, 416 n.34 (S.D.N.Y. 1999) (same). Employers implicitly waive any privilege by putting "at issue" "the protected communication through an affirmative act such as a claim of an affirmative defense; and making the protected communication relevant information and necessary to the original claim of the adversary." *Worthington v. Endee,* 177 F.R.D. 113, 116 (N.D.N.Y. 1998).

In *Worthington*, the plaintiff sought the production of defendant's report of its investigation into plaintiff's allegations of sexual harassment and misconduct asserted. 177 F.R.D. at 117. The court found that the "advice that the defendants received via the entire report, including the notes of the investigation, are relevant in determining what corrective actions, if any, were taken, and whether they were sufficient to placate plaintiff's allegations of a hostile work environment." *Id.* at 118 n.5. The court held that "[w]ithout allowing discovery of the entire report and the notes from the investigation, the defendants' protections under the attorney/client privilege and the work product doctrine are simultaneously used as a shield and a sword. Under such circumstances, the protections of the attorney/client privilege and the work product doctrine shall not abide." *Id.* at 118; *see also McGrath v. Nassau County Health Care*

6

*Corp.,* 204 F.R.D. 240, 248 (E.D.N.Y. 2001) ("Where, . . . an employer defends itself 'by relying upon the reasonableness of its response to the victim's allegations, the adequacy of the employer's investigation becomes critical to the issue of liability. The only way that Plaintiff, or the finder of fact, can determine the reasonableness of [the employer's] investigation is through full disclosure of the contents thereof.") (citation omitted)). "[E]quity requires that Plaintiff be permitted to explore the parameters of the investigation in order to rebut th[e] affirmative defense." *Brownell v. Roadway Package Sys., Inc.*, 185 F.R.D. 19, 25 (N.D.N.Y. 1999).

This "fairness" doctrine is "based on the principle that where a party selectively discloses privileged information during litigation and withholds other privileged materials relating to an issue in litigation, principles of fairness may require more complete disclosure." *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2271, 2006 U.S. Dist. LEXIS 90970, at *30 (S.D.N.Y. Dec. 15, 2006); *see also In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) (the fairness doctrine "aim[s] to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information").

Privilege and work product[2] may not be used as both a "sword and shield." *See, e.g., United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991); *In re von Bulow*, 828 F.2d at 101. When a party seeks to use privilege or work product in such a manner, it is waived in order to

---

[2] The "'at issue' waiver doctrine applies to information protected by the work product privilege as well [as the attorney client privilege.]" *Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 210 F.R.D. 506, 511 (S.D.N.Y. 2002). *See also In re Grand Jury Proceedings John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003) ("A party . . . impliedly waives work product protection if it places the substance of the documents for which the protection is claimed at issue." (*citing* 6 *Moore's Federal Practice* 26.70[6][c] at 26-226 (3d ed. 1997)); *Resolution Trust Corp. v. Mass. Mut. Life Ins. Co.*, 200 F.R.D. 183, 192 (W.D.N.Y. 2001) ("The 'at-issue' waiver applies both to the attorney-client and work-product privileges.").

7

remedy "the *unfairness* to the adversary of *having to defend* against the privilege holder's claim without access to pertinent privileged materials that might refute the claim." *John Doe Co.*, 350 F.3d at 304 (emphasis in original). This is so even where waiver extends to "core work product." *McGrath,* 204 F.R.D. at 246.

In the Second Circuit, the law is well settled that where a defendant asserts a defense based in part on privileged communications, it waives the attorney-client privilege. In *Bilzerian*, the Second Circuit held that the defendant waived the attorney-client privilege by asserting a defense of his good faith attempt to comply with securities law. 926 F.2d at 1291-1294. The court reasoned that the waiver principle was applicable because the defendant's conversations with his counsel regarding the legality of his actions were directly relevant in determining the validity of his good faith defense. *Id.* at 1292; *see also Sanofi Synthelabo v. Apotex Inc.*, 299 F. Supp. 2d 303, 308-309 (S.D.N.Y. 2004) (attorney-client privilege forfeited in the context of patent litigation where a party gave a partial explanation for its conduct before the Patent Office, when a complete explanation was relevant to the validity of the patent and was likely to be contained in privileged communications); *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 489 (S.D.N.Y. 1993) (finding that defendant waived attorney-client privilege by asserting a counterclaim based on communications with its attorney).

In *Pray v. New York City Ballet Co.*, the court ordered the depositions of four partners from Proskauer Rose Goetz & Mendelsohn, defendant's outside counsel, finding the following:

> [S]ince the [defendant] is affirmatively asserting the corrective action it took as a result of the investigation as a defense to liability, the advice it received and whether it followed that advice is in issue. For example, *if Proskauer recommended five corrective steps as a result of the investigation, the number of*

8

> *steps actually implemented would be relevant to the sufficiency of the corrective action*.

No. 96 Civ. 5723, 1997 U.S. Dist. LEXIS 6995, at *8 (S.D.N.Y. May 19, 1997) (citation omitted) (emphasis added).

A defendant who asserts a "good faith" affirmative defense to the FLSA waives privilege. *McLaughlin v. Lunde Truck Sales, Inc*., 714 F. Supp. 916, 920 (N.D. Ill. 1989). In *McLaughlin*, the court granted plaintiff's motion to compel the deposition of the defendant's attorney even though the defendant claimed it was relying on an opinion of the Department of Labor ("DOL"), not the attorney, in support of its good faith affirmative defense. *Id*. at 919-20. The court found that the defendant waived the attorney-client privilege by asserting the good faith defense and relying on an attorney affidavit interpreting the DOL's actions. *Id*. at 919-20. The court reasoned that the primary way to asses the validity of the defendant's good faith affirmative defense of reliance on the DOL's opinion was to investigate the attorney-client communications because those communications contained defendant's interpretation of the DOL's actions. *Id*. at 919.

In *Abbe v. City of San Diego*, Nos. 05 Civ. 1629, 06 Civ. 0538, 2007 U.S. Dist. LEXIS 87501, at *68-69 (S.D. Cal. Nov. 9, 2007), another wage and hour case involving waiver of privilege, the court held that the defendant did not implicitly waive the attorney-client privilege by simply asserting a good faith affirmative defense in its answer. *Id. Abbe* is readily distinguishable, however, because the court found that there was no evidence whatsoever of reliance on any advice of counsel nor could it presume such reliance. *Id.* at 68-69. Rather, the defendant in *Abbe* relied on its agents' regular review of labor policies and attendance at FLSA seminars to support its good faith affirmative defense. *Id.* at 68.

Here, WestLB waived any claim of privilege by asserting a good faith affirmative defense. *McLaughlin*, 714 F. Supp. at 920. Although WestLB claims that "there is no showing that defendant is relying on advice of counsel to establish the good faith affirmative defense," (Neilan Decl. Ex. F (Letter from N. Bassen to Court dated 5/14/08; *see also* (Court Tr. dated 5/22/08) at 3), there is no question that Defendant *did* rely on counsel in reclassifying some executives and some managers.[3] With respect to managers, Ms. Carro testified as follows:

> Q: Why did WestLB reclassify [12 managers in 2007] as non-exempt?
> A: They were reclassified based on the advice of counsel.
> \* \* \*
> Q: Why did WestLB reclassify the approximately twelve managers that it reclassified in May 2007 from exempt to non-exempt?
> A: They were reclassified based on the advice of counsel.
> Q: Why did WestLB make retroactive payments to executives in 2005 that had been classified as exempt and reclassified as non-exempt and not mak[e] retroactive payments to managers who were classified as exempt and then classifed as non-exempt.
> A: Based on the advice of counsel.

Neilan Decl. Ex. E (Carro Dep.) at 131:6-9; 132:1-6, 14-21.) With respect to executives, Ms. Carro testified as follows:

> Q: Why did WestLB choose to pay [executives] the back pay to August 2004?
> A: We were advised by counsel to do it.

Neilan Decl. Ex. E (Carro Dep.) at 88:2-4.) Due to WestLB's reliance on counsel in reclassifying some executives and managers and paying some newly-classified executives some retroactive overtime wages, Plaintiff is entitled to know the full scope of counsel's advice regarding WestLB's flawed reclassification plan. For example, if Leahy and Greenberg recommended that WestLB reclassify all executives and managers as nonexempt, which it did

---

[3] Tellingly, WestLB has not asserted what evidence it will proffer, if any, to support its good faith affirmative defense.

10

not do, that would be "relevant to the sufficiency of the corrective action" or, in other words, Defendant's good faith defense. *Pray*, 1997 U.S. Dist. LEXIS 6995, at *8.

As in *McLaughlin*, Plaintiff needs to assess the validity of defendant's good faith affirmative defense – whatever it may be – by investigating all information available to WestLB regarding its compliance (or lack thereof) with the mandates of the FLSA. As the court held in *McLaughlin*, defendant cannot seek to "proffer 'favorable' information regarding [its] understanding of FSLA [sic] compliance . . . [while] seek[ing] to preclude discovery of other potential evidence of defendant['s] understanding of FSLA [sic] compliance as evidenced by or through counsel." 714 F. Supp. at 920.

## CONCLUSION

WestLB has placed at issue the advice it received from counsel, and therefore, waived the privilege with respect to its good faith affirmative defense. Accordingly, Plaintiff is entitled to ask Leahy and Greenberg about the advice they gave Defendant regarding its classification of employees so that Plaintiff can gather sufficient discovery to rebut whatever evidence Defendant eventually proffers, if any, to support its good faith affirmative defense. Accordingly, Plaintiff respectfully requests that the Court order Gregory Leahy and Richard Greenberg to appear for depositions.

Dated: New York, NY
May 30, 2008

**OUTTEN & GOLDEN LLP**

*Attorneys for Plaintiff and the Putative Class*

By: /s/ Linda A. Neilan

>Adam T. Klein (AK 3293)
>Jack A. Raisner (JR 6171)
>Linda A. Neilan (LN 4095)
>Tara Lai Quinlan (TQ 0717)
>3 Park Avenue, 29th Floor
>New York, NY 10016
>Telephone: (212) 245-1000
>Facsimile: (212) 977-4005