**Outten & Golden LLP**
Adam T. Klein (AK 3293)
Jack A. Raisner (JR 6171)
Linda A. Neilan (LN 4095)
Tara Lai Quinlan (TQ 0717)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**PHILIP FEI,** on behalf of himself and classes of those similarly situated,

**Plaintiff,**

**-against-**

**WEST LB AG,**

**Defendant.**

**07 Civ. 8785 (HB)(FM)**

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I. Plaintiff Meets His Modest Burden. ................................................................................ 2

A. Plaintiff is Similarly Situated to Exempt Executives and Managers (Both Exempt and Non-Exempt) Because They Were All Subject to WestLB's Flawed Reclassification Plan. ........................................................................................................................ 4

B. Plaintiff is Similarly Situated to Exempt Executives and Managers (Both Exempt and Non-Exempt) Because They Were All Subject to the Same Company Policy Denying Them Overtime. ............................................................................................................ 7

C. Plaintiff is Similarly Situated to Exempt Executives and Managers (Both Exempt and Non-Exempt) Because They Were All Originally Misclassified as Exempt Without an Individualized Inquiry Into Their Duties. ....................................................................... 8

II. At This Early Stage of the Litigation, Different Job Positions or Duties Are Not a Bar to Conditional Certification. ................................................................................ 9

CONCLUSION .................................................................................................................... 10

## TABLE OF AUTHORITIES

*Cuzco v. Orion Builders, Inc.*,
477 F. Supp. 2d 628 (S.D.N.Y. 2007)....................4

*Dean v. Priceline.com, Inc.*
No. 3:00-CV-1273, 2001 U.S. Dist. LEXIS 24982 (D. Conn. June 5, 2001)....................7

*Freeman v. Wal-Mart Stores, Inc.*
256 F. Supp. 2d 941 (W.D. Ark. 2003)....................7

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
282 F. Supp. 2d 101 (S.D.N.Y. 2003)....................4, 8

*Harrington v. Educ. Mgmt. Corp.*,
02 Civ. 0787, 2002 U.S. Dist. LEXIS 8823 (S.D.N.Y. May 17, 2002)....................4, 8

*Harrington v. Educ. Mgmt. Corp.*,
02 Civ. 0787, 2002 U.S. Dist. LEXIS 10966 (S.D.N.Y. June 19, 2002) ....................3, 4

*Heagney v. European Am. Bank*,
122 F.R.D. 125 (E.D.N.Y 1988) ....................10

*Hoffman v. Sbarro*,
982 F. Supp. 249 (S.D.N.Y. 1997)....................1, 2

*Hoffman-La Roche, Inc. v. Sperling*,
493 U.S. 165 (1989)....................6

*Hunter v. Sprint Corp.*,
346 F. Supp. 2d 113 (D.D.C. 2004) ....................5

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
239 F.R.D. 363 (S.D.N.Y. 2007) ....................3, 8

*Krueger v. N.Y. Tel. Co.*,
93 Civ. 0178-79, 1993 U.S. Dist. LEXIS 9988 (S.D.N.Y. July 21, 1993) ....................3

*Martin v. Malcolm Pirnie, Inc.*,
949 F.2d 611 (2d Cir. 1991) ....................6

*Morisky v. Pub. Serv. Elec. & Gas Co.*
111 F. Supp. 2d 493 (D.N.J. 2000) ....................7

*Torres v. Gristede's Operating Corp.*,
04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 28, 2006) .............................4, 8

*Trinh v. JP Morgan Chase & Co.*
No. 07-CV-1666, 2008 U.S. Dist. LEXIS 33016 (S.D. Cal. Apr. 22, 2008).........................7, 8

*Young v. Cerner Corp.*,
503 F. Supp. 2d 1226 (W.D. Mo. 2007) ......................................................................8

**STATUTES**

29 U.S.C. § 216(b) ..........................................................................................5

29 C.F.R. § 541.2 ............................................................................................9

**INTRODUCTION**

By its disregard of the law, WestLB AG ("WestLB" or "Defendant") is itself the author of the Court-ordered notice its employees must receive so they can seek damages for the years of virtually uncontested, unlawful conduct that affected them. Plaintiff has indisputably made "a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hoffman v. Sbarro*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997). WestLB subjected its so-called "executives" (e.g., secretaries, receptionists, personal assistants, and the like) and "managers" (e.g., assistants, clerks, administrators, and other back-office workers) to a flawed reclassification plan that resulted in the wholesale misclassification of these two discrete groups, it perpetuated its discredited scheme by not paying those it chose to "reclassify" all of their lawful back wages, and WestLB perpetuates it to this day by singling out some group members for non-reclassification in line with its original bankrupt policy.

Despite WestLB's opposition papers, there is no question that WestLB misclassified executives and managers for years. There is no question that WestLB did not pay the admittedly misclassified managers *any* retroactive back wages. There is no question that WestLB did not pay the admittedly misclassified executives *all* of the retroactive back wages it owed them. Thus, there is really no question about liability here.[1] Yet, WestLB would have this Court believe that, although it violated the Fair Labor Standards Act ("FLSA") for years by not paying overtime compensation to misclassified executives and managers, it ultimately complied when it reclassified 63 executives and 26 managers as non-exempt. A company that so blatantly violated

[1] In fact, Magistrate Judge Maas opined as much when he stated at a discovery conference the following: "Particularly in light of the reclassification, it sounds like liability is not the issue so much as damages for the class[.]" (Neilan Ex. A (Court Tr. 4/3/08) at 63.)

the law for years and did not make its employees whole after finally conceding wrongdoing by reclassifying some employees is not a company that should get the benefit of the doubt that it made correct reclassification determinations.

Plaintiff's motion for 216(b) notice is merely an attempt to finish what WestLB started when it embarked on its flawed reclassification plan. Plaintiff readily meets his burden at this early stage of the litigation by showing that he is similarly situated to the other executives and managers who were subject to this flawed reclassification plan. Accordingly, Plaintiff respectfully requests that the Court send out notice to the victims of the flawed reclassification plan – the exempt executives and all managers[2] – so that they can benefit from Court-authorized notice and an opportunity to join this lawsuit.

## ARGUMENT

### I. <u>Plaintiff Meets His Modest Burden</u>.

Plaintiff readily meets his early-stage "modest" burden to identify similarly situated workers through his "modest factual showing" that he and other employees were victims of "a common policy or plan that violated the law." *Id.* at 261. Plaintiff and potential plaintiffs are similar situated by virtue of WestLB's flawed reclassification project, its policy of not paying executives and managers overtime compensation in accordance with WestLB policy, and its plan of classifying them without conducting an individualized inquiry into their actual job duties. (Pl. Mem. at 17-20.) "[E]ven if . . . all the plaintiffs turn out *not* to be similarly situated, notification

---

[2] Although Defendant maintains that it is not clear whether newly-classified non-exempt managers are included in Plaintiff's proposed notice (Def Mem. at 13), Plaintiff's motion makes clear that they are. Unlike the newly-classified non-exempt executives, WestLB did not pay the newly-classified non-exempt managers *any* retroactive overtime compensation. Further, unlike the non-exempt executives, all of their federal claims are timely. With respect to the "nine newly hired non-exempt managers," (Def. Mem. at 1), Plaintiff does not seek to include them in the collective.

at this stage . . . may enable more efficient resolution of the underlying issues[.]" *Krueger v. N.Y. Tel. Co.*, 93 Civ. 0178-79, 1993 U.S. Dist. LEXIS 9988, at *6 (S.D.N.Y. July 21, 1993) (emphasis in original).

WestLB attempts to raise Plaintiff's burden by claiming that discovery "has been significant" and citing the fact that WestLB took Plaintiff's deposition, Plaintiff took the deposition of Vivian Yost (the internal consultant who conducted the exemption testing of executives), and WestLB produced more than 1,700 pages of discovery. (Def. Mem. at n.3.) WestLB, however, fails to mention that those depositions did not take place until *after* Plaintiff had filed the instant motion. (Neilan Suppl. Dec. ¶¶ 3, 4.) WestLB also fails to mention that it did not produce the 1,700 pages of documents until the night before Plaintiff's motion papers were due. (Neilan Suppl. Dec. ¶ 2.) Finally, WestLB also fails to mention that Plaintiff has not yet deposed five key employees from Human Resources who were involved in the reclassification project, (Neilan Suppl. Dec. ¶ 5), and Gregory Leahy, Esq. (former in-house counsel at WestLB) and Richard Greenberg, Esq. (outside counsel from Jackson Lewis) – both of whom were intimately involved in WestLB's reclassification project.[3]

Thus, although there has been some discovery in this matter, this case is currently at the initial notice stage. Because Plaintiff's motion remains at the early stage, the Court should apply the "fairly lenient" standard. *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007). "[O]pt-in notice at this early stage of the litigation – at the outset of discovery – is to be construed broadly in furtherance of the remedial purposes of the FLSA." *Harrington v. Educ. Mgmt. Corp.*, 02 Civ. 0787, 2002 U.S. Dist. LEXIS 10966, at *2-3 (S.D.N.Y. June 19,

2002) (citing cases); *see also Cuzco v. Orion Builders, Inc*., 477 F. Supp. 2d 628, 632 (S.D.N.Y. 2007) ("[I]t would be inappropriate at this time to attempt to make more than the first-step certification decision" regarding whether putative class members are "similarly situated."). At the second stage, after full discovery, typically on a motion for decertification, the Court may undertake a more searching factual inquiry and re-examine whether members of the collective are, in fact, similarly situated. *Torres v. Gristede's Operating Corp.*, 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at *22-23 (S.D.N.Y. Sept. 28, 2006); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 105 n.1 (S.D.N.Y. 2003); *Harrington v. Educ. Mgmt. Corp.*, 02 Civ. 0787, 2002 U.S. Dist. LEXIS 8823, at *5 (S.D.N.Y. May 17, 2002).

### A. Plaintiff is Similarly Situated to Exempt Executives and Managers (Both Exempt and Non-Exempt) Because They Were All Subject to WestLB's Flawed Reclassification Plan.

As part of WestLB's reclassification plan, WestLB reclassified 63 of 81 executives, (Neilan Suppl. Dec. Ex. C (WestLB Executive Staff Exemption Tests)), and 26 managers from exempt to nonexempt. (Carro Aff. ¶ 9.) WestLB, however, did not pay these newly-reclassified employees all of their retroactive overtime wages. It paid the newly-reclassified non-exempt executives retroactive overtime wages only from August 2004 through June 2005. (Pl. Mem. at 6; Carro Aff. ¶ 4.) It did not pay them any liquidated damages. (Pl. Mem. at 6.) As for the newly-reclassified non-exempt managers, it did not pay them *any* retroactive overtime wages whatsoever. (Pl. Mem. at 10.) Under the FLSA, they were – and are – entitled to their back wages for three years where, as here, the violations were willful, and they were – and are – also

[3] Magistrate Judge Maas reserved decision on whether Leahy and Greenberg have to attend depositions as fact witnesses until after Plaintiff deposes the key employees from Human Resources who were involved in the reclassification project. (Neilan Decl. Ex. B (Court Tr. dated 5/22/08) at 3.)

entitled to liquidated damages where, as here, WestLB cannot show good faith. 29 U.S.C. § 216(b).

Based on WestLB's effective admission of liability, at least with respect to the 26 managers, there can be no doubt that they should receive notice of this lawsuit and be given an opportunity to opt-in.[4] *See, e.g.*, *Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 120 (D.D.C. 2004) (granting collective action notice to two groups of employees that the employer had reclassified during two separate time periods).[5] Since WestLB readily admits that it misclassified them, they should be given an opportunity to join this lawsuit and collect their back wages.

With respect to the executives and managers whom WestLB continued to classify as exempt as a result of its flawed reclassification project, they, too, should be given notice of this lawsuit and an opportunity to opt-in. Given WestLB's history of misclassifying employees who are obviously not subject to any exemption (like secretaries, receptionists, and personal assistants) and then not even paying them all of their back wages after effectively admitting liability, there should be no presumption in its favor that it ultimately made the correct classification as part of its reclassification project. Accordingly, the exempt executives and exempt managers should also be given notice that the Court is evaluating the legality of

---

[4] Plaintiff is not requesting that notice be sent to the non-exempt executives whom WestLB reclassified in June 2005 because the statute of limitations on their FLSA claims will have most likely passed by the time they receive notice.

[5] Although the court in *Hunter* did not authorize the mailing of notice to employees whom the company continued to classify as exempt after reclassification, the employer paid the newly-reclassified non-exempt employees their retroactive overtime wages for the two-year statute of limitations. *Hunter*, 346 F. Supp. 2d at 116, 120-121. WestLB, of course, did not. Thus, WestLB's distinction between exempt and nonexempt is inherently unworthy of trust or deference because it is a distinction made in the course of continuing to violate – not comply – with the law.

WestLB's flawed reclassification plan, and they should also be given an opportunity to join this lawsuit and challenge WestLB's classification.

To find otherwise and send notice only to the employees whom WestLB reclassified as non-exempt will effectively validate WestLB's flawed reclassification plan. It will also deny these wronged employees an opportunity to vindicate their rights. Given the fact that most employees' claims may be too small to file their own lawsuits, coupled with the high costs of litigation, the FLSA collective is necessary. It was Congress' intent in passing the FLSA to encourage small wage and hour claims to be brought collectively and enable the "efficient resolution in one proceeding of common issues of law and fact . . . ." *Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989). If these claims are not brought together in a collective action, many, if not all, will go unheard and WestLB's unlawful practices will go unchecked. It is the ultimate manipulation of the 216(b) notice requirement for WestLB to argue that notice *not* be sent to a group simply because it continues to hang its completely discredited "exempt" label on them. This is precisely the group that needs notice the most because WestLB defiantly continues to misclassify them. If WestLB can defend its classification, which is its burden under the FLSA, *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991), then it should be readily able and willing to do so when moving to decertify the group. Since it cannot, it instead seeks to bar notice from being sent, so that this group does not have an opportunity to challenge its discredited labeling.

**B. Plaintiff is Similarly Situated to Exempt Executives and Managers (Both Exempt and Non-Exempt) Because They Were All Subject to the Same Company Policy Denying Them Overtime.**

There is no question that in denying exempt executives and exempt managers overtime compensation, WestLB subjected all of them to the same policy. (Pl. Mem. at 3.) That is sufficient to meet Plaintiff's modest burden at this stage. (Pl. Mem. at 18-20.)

The four out-of-district cases cited by WestLB in its effort to refute this point are all distinguishable. (Def. Mem. at 10.) In *Morisky v. Pub. Serv. Elec. & Gas Co.*, discovery was closed at the time the motion was filed and 100 people had already opted in, thereby warranting application of the higher standard. 111 F. Supp. 2d 493, 498 (D.N.J. 2000). Here, discovery has just begun. (Neilan Dec. ¶¶ 9-13; Neilan Suppl. Dec. ¶¶ 2-5.) In *Freeman v. Wal-Mart Stores, Inc.*, the plaintiff sought to certify a collective of "all salaried Wal-Mart employees below officer level." 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003). The court denied the motion because the prospective class included more than 7,000 current and former employees and because the plaintiff failed to propose a class that was "sufficiently defined and manageable," especially in light of the fact that the employer was one of the "largest employers in the world." *Id.* Given the fact that there are only about 500 employees in total at WestLB (including about 40 executives and approximately 50 manager job titles), the concerns in *Freeman* are not present here. (Neilan Suppl. Dec. Ex. E (Carro Dep.) at 81:7-25; Carro Aff. ¶ 11.) In *Dean v. Priceline.com, Inc.*, the employee did not identify a common policy or plan that violated the law, but instead simply challenged the defendant's failure to "implement a company-wide policy by which it could accurately categorize exempt and non-exempt employees." No. 3:00-CV-1273, 2001 U.S. Dist. LEXIS 24982, at *5-6 (D. Conn. June 5, 2001). Here, Plaintiff did identify three common policies or plans to which WestLB subjected all executives and managers. Finally, in

*Trinh v. JP Morgan Chase & Co.*, where the court found that the plaintiffs failed to demonstrate that they are "similarly situated with respect to job requirements and pay provisions," there was no widespread reclassification project, as there is here. No. 07-CV-1666, 2008 U.S. Dist. LEXIS 33016, at *10 (S.D. Cal. Apr. 22, 2008).[6]

Moreover, district courts in the Second Circuit routinely certify 216(b) collectives based on a company's failure to pay overtime wages. *See, e.g.*, *Iglesias-Mendoza*, 239 F.R.D. at 370; *Harrington*, 2002 U.S. Dist. LEXIS 8823, at *3. Thus, the Court should authorize notice to all exempt executives and all managers and give them an opportunity to join this lawsuit. After fact discovery closes on February 15, 2009, (Neilan Suppl. Dec. Ex. D (Pretrial Scheduling Order)), and the duties of these individuals are ascertained, WestLB can move, if appropriate, for a motion to decertify the class. *Torres*, 2006 U.S. Dist. LEXIS 74039, at *22-23; *Gjurovich*, 282 F. Supp. 2d at 105 n.1; *Harrington*, 2002 U.S. Dist. LEXIS 8823, at *5.

### C. Plaintiff is Similarly Situated to Exempt Executives and Managers (Both Exempt and Non-Exempt) Because They Were All Originally Misclassified as Exempt Without an Individualized Inquiry Into Their Duties.

Before the reclassification project, WestLB did not conduct an individualized inquiry of each executive's and manager's job duties in hiring new employees. Instead, WestLB simply classified executives and managers as exempt by virtue of them having filled the position of a former executive or manager that WestLB had already deemed exempt. (Pl. Mem. at 8-10.)

---

[6] WestLB's reliance on *Young v. Cerner Corp.*, 503 F. Supp. 2d 1226 (W.D. Mo. 2007) – another out-of-district case – is also misplaced. In *Young*, the plaintiff sought to send notice to a proposed collective that included over 4,500 current and former exempt associates who worked in different facilities and countries and held more than 300 different titles with diverse job duties and responsibilities. *Id.* at 1129. The plaintiff's only basis for such a collective was a 2001 orientation document entitled "Compass Culture" that referred to them as "staff associates" and discussed what was expected of them. *Id.* Unlike here, there was no reclassification.

This practice of (mis)classifying incumbent employees simply based on the classification of their predecessors without an individualized inquiry is also sufficient to satisfy Plaintiff's burden.

WestLB attempts to undermine this fact by citing select testimony to support its proposition that "WestLB made individual assessments based on job duties and responsibilities in order to determine the FLSA classification of each Executive and Manager." (Def. Mem. at 12.) Almost all of the testimony that WestLB cites, however, references what WestLB did *during* or *after* the reclassification project. (Def. Mem. at 12.) WestLB does not even attempt to address the binding testimony of Lisa Carro, its Rule 30(b)(6) designee on "policies and practices concerning classification of [executives and managers] as exempt," (Neilan Suppl. Dec. Ex. E (Carro Dep.) at 12:6-22), that "[y]ou can't determine by looking at an individual whether or not they are exempt or nonexempt." (Pl. Mem. at 5.)

## II. <u>At This Early Stage of the Litigation, Different Job Positions or Duties Are Not a Bar to Conditional Certification</u>.

WestLB places too much stock in the fact that there are different job positions in support of its argument that it is inefficient to grant collective action notice. (Def. Mem. at 14.) Because it is so early in discovery, Plaintiff has not ascertained the duties of the executives and managers. Moreover, there is no evidence that the members of the proposed collective have different material job duties based simply on the fact that there are "50 job titles" for managers. (Def. Mem. at 17.) Under the FLSA, titles are meaningless. 29 C.F.R. § 541.2. This is especially true here given WestLB's history of giving secretaries and personal assistants the corporate title of "executive" and individuals who do not manage anyone whatsoever the corporate title of "manager." Discovery will reveal whether the managers with these 50 job titles have the same material duties (or lack thereof) with respect to any relevant exemption(s).

Further, WestLB's reliance on the job descriptions is misplaced. (Carro Aff. Exs. A & B (Job Descriptions).) The job descriptions – many of which were created as part of the reclassification project – may not be representative of what job duties executives and managers actually performed at WestLB. (Neilan Suppl. Dec. Ex. F (Yost Dep.) at 28:6-9; 37:6-9.) Indeed, WestLB's outside consultant who conducted the job testing of executives testified that she could not make a determination regarding the classification of an employee based on job descriptions alone. (Neilan Suppl. Dec. Ex. F (Yost Dep.) at 70:14-21: 101:10-16.)

Even if their job duties were different, the Court can still certify a collection action because exempt executives and managers were all subject to the same policy and practice – WestLB's flawed reclassification project. *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y 1988). (*See also* Pl. Mem. at 20-22.)

**CONCLUSION**

For all of these reasons, Plaintiff respectfully requests that the Court authorize the mailing of Plaintiff's proposed notice to all exempt executives and all managers (except the nine newly hired non-exempt managers) employed by WestLB in the past three years.

Dated: New York, NY
June 6, 2008

**OUTTEN & GOLDEN LLP**
*Attorneys for Plaintiff and the Putative Class*

By: /s/ Linda A. Neilan

Adam T. Klein (AK 3293)
Jack A. Raisner (JR 6171)
Linda A. Neilan (LN 4095)
Tara Lai Quinlan (TQ 0717)
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005