# Exhibit B

```
------------------------------------------------------------

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------x
PHILIP FEI,

         Plaintiff
                              DOCKET NO.: CV-07-8785 (HB)
         -vs-                 New York, New York
                              May 22, 2008  WEST LB A.G.,


         Defendant
-------------------------------x

TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE

BEFORE THE HONORABLE FRANK MAAS
UNITED STATES MAGISTRATE JUDGE


A P P E A R A N C E S:

For the Plaintiff:      LINDA A. NEILAN, ESQ.
                          Outten & Golden LLP
                          3 Park Avenue, 29th Floor
                          New York, NY   10016


For the Defendant:      JASON HABINSKY, ESQ.
                          Hughes Hubbard & Reed LLP
                          One Battery Park Plaza
                          New York, NY   10004




Audio Operator:         No Audio Operator

Proceedings Recorded by Electronic Sound Recording Transcript Produced
by Transcription Service
------------------------------------------------------------
KRISTIN M. RUSIN
217 Pine Meadows Circle
Hickory NC 28601
kmrusin@earthlink.net
```

        THE CLERK:  This is a conference in the matter of Fei versus WestLB.

        Counsel, state your name for the record, please.

        MS. NEILAN:  Linda Neilan for plaintiff Fei and the putative class.  Good morning, Your Honor.

        THE COURT:  Good morning.

        MR. HABINSKY:  Jason Habinsky, from Hughes Hubbard & Reed, for WestLB, defendant.

        THE COURT:  Good morning.

        MR. HABINSKY:  Good morning.

        THE COURT:  We don't suffer for a lack of letters in this case, but I guess the first is Hughes Hubbard's letter seeking a protective order regarding the deposition of Messieurs Greenberg and Leahy, both of whom were attorneys who at some juncture advised WestLB with respect to the reclassification of its employees.

        Generally speaking, my reaction to requests not to depose people because they may have privileged information is well, let's take the deposition and see.  But here, it does strike me that except to the extent that there's an argument that the privilege has been waived, it may well be a colossal waste of time, and that, at a minimum, the other witnesses who potentially have information about the reclassification project ought to be deposed first.

        I guess some of those depositions are currently scheduled but haven't yet been taken, is that correct, Ms. Neilan?

        MS. NEILAN:  That is correct, actually.  We did notice some depositions this morning that will involve some of those same individuals that you're referring to.

        THE COURT:  Well, if they're able to answer adequately -- I understand that there was nobody in-house, apparently, at West who could provide information.  But if the outside consultants are able to describe the entire process, why do I have to direct that the attorneys be deposed, except for -- to the extent that the good faith issue enters into this?

        MS. NEILAN:  Okay.  Well, with respect -- setting aside that issue, with respect to the group of managers or executives and managers in this case, there was no outside consultant that WestLB hired to conduct any exemption testing of managers.  They hired outside counsel, Richard Greenberg, from Jackson Lewis to conduct this exemption testing.

        And he was the person who interviewed some of the supervisors of the managers in question.  I don't know if he interviewed the managers himself.  I asked in a deposition of the -- of Lisa Karo [phonetic], who was the head of H.R., who was the company's 30(b)(6) deposition witness, whether he also interviewed the managers themselves, and she didn't know.

        I mean, I asked her many questions about what he did as part of the exemption testing, and she didn't know, and she is the head of H.R.  This was a pretty massive undertaking that they took.  I would presume that she would have knowledge about this, but she did not know.

        And when I asked her if anybody else at WestLB conducted any study into the duties of managers or made observations regarding managers' job duties, she said 'no' or 'I didn't know' to that.  So I think he really is an indispensable fact witness, because he conducted the investigation.  He found out what the duties were of these individuals.

        I don't know what else he did.  I tried to find out in other ways and I couldn't find out, so I want to -- we want to be able to ask

him those questions in a deposition regarding the who, what, when, where, and why -- or maybe not the why yet, but the -- all the -- you know, those W reporter questions about what he actually did.
    And setting aside whether the legal advice he ultimately gave the company -- we do think that's waived.  But even just setting that aside, I think certainly his underlying investigation -- there's nothing privileged about that, and it is central to this case.
    THE COURT:  Mr. Habinsky?
    MR. HABINSKY:  Thank you, Your Honor.  With respect to the evaluation of the managers and the reclassification of the managers, Ms.
Karo also testified that there were four or five employees from WestLB in the human resources department who also participated in the project.  And in fact, plaintiff has sent us the notices for depositions of three of those folks this morning, and so it's our position that they will be able to provide adequate information regarding the project.
    Also, Your Honor, defendant has provided extensive document discovery regarding the evaluation and reclassification of the managers, including the very job descriptions.  Among the documents produced by defendant is a notebook from one of the human resources employees, Amy Favetta [phonetic], which is basically the work notebook regarding this whole project, which includes job descriptions.  It includes notes.  It includes lists.
    THE COURT:  Is she one of the people who's now been noticed?
    MR. HABINSKY:  She has.  So it's our position that there's already been extensive discovery on this very issue, and there's going to be continued discovery on this issue, including the three depositions which were noticed today, and there's two additional employees who haven't been noticed yet who also could provide information regarding this project.
    And as far as the executives, which we haven't spoken to, just last week plaintiff deposed Vivian Yost [phonetic], who was the consultant who conducted the project regarding the executives, and she testified in detail about the project, and she also was asked if she had --
    THE COURT:  Executives are different than managers?
    MR. HABINSKY:  That's correct.  They're two different groups.  With respect to the executives, the consultant, Vivian Yost, was asked what, if any, conversations she had with the in-house attorney, Greg Leahy, and she testified that she had one conversation with him only about the project, and that was just a preliminary conversation about whether or not she was qualified to do the job.
    THE COURT:  How about with Mr. Greenberg?
    MR. HABINSKY:  She participated in the executive project, not the manager project, so the two of them did not work together.
    THE COURT:  Okay.
    MR. HABINSKY:  And also, with respect to the first issue, waiver of the attorney-client privilege by asserting the good faith defense, we're -- I mean, we're willing to stipulate --
    THE COURT:  Well, go on.
    MR. HABINSKY:  We're willing to stipulate that we're not going to rely upon advice of counsel as a defense.
    THE COURT:  But the problem -- well, let me first say that I'm going to reserve decision on the depositions of the attorneys pending the outcome of the depositions of the other witnesses.
    But having said that, with respect to the good faith defense, it's fine that you're willing to so stipulate as you indicated, but

let's suppose for argument's sake Mr. Greenberg told your client at an early date this is crazy, you can't classify people that way, and they continued along their merry way.

That would pretty much, if it were disclosed, undermine the good faith defense, and you would be using the attorney-client privilege as a shield. Your stipulation addresses, to my mind, using it as a sword but not using it as a shield. You're saying we won't use it to say counsel told us that this was proper, but there's the possibility that counsel at an early stage told West that what it was doing was improper and it, for some reason, chose to ignore that advice.

If I hold that all of the discussions are privileged, if there was such a conversation, it would never be unearthed.

MR. HABINSKY: But it's my position that through discovery plaintiff will -- already knows what was done, when it was done, who was reclassified, what those job duties were.

THE COURT: Well, suppose -- and you know, I'm not real familiar with the dates. The suit was filed in oh-seven. Let me assume that the reclassification project was in oh-six. But in oh-three, Mr. Greenberg said to somebody running WestLB in New York what you're doing is outrageous, you can't continue this way, and that important person at WestLB said well, it's too expensive to do it the other way, we're going to continue along our merry way.

MR. HABINSKY: But those facts alone would be known, because it's known when WestLB did certain things and when they reclassified. So as far as the timing goes, those facts would be disclosed in discovery.

THE COURT: I'm not following you. If West says that's very nice advice, Mr. Greenberg, we're not going to follow it, and then several years later they decide to reclassify because employees are complaining more vociferously, how does the fact that they were told, in my example, in 2003 what you're doing is wrong become unearthed?

MR. HABINSKY: I understand your point, Your Honor.

THE COURT: I mean, it seems to me there are differences between a good faith defense, for example, in the patent area where usually the defense is we consulted with our attorney, and he or she told us that this patent didn't infringe, or the patent that the plaintiff had is not valid for some reason, and you have the option of saying, in those cases, we're not going to rely on the good faith defense, and therefore what our counsel advised us simply isn't relevant.

Here, because of the problem I just posed, I'm not certain that you can simply say that because as part of our good faith defense we're not relying on counsel's advice as a sword, it follows that there's been no waiver. Candidly, I don't know what the right answer in this area is, notwithstanding the example I've given.

So I think in this area what I'm inclined to do is let one side or the other file a motion, and I'm not sure whether it's more appropriately a motion to compel or a motion for a protective order. I guess you had written originally about this, is that right, or --

MR. HABINSKY: That's right, Your Honor.

THE COURT: -- no, I guess it was -- I guess it was Outten & Golden that wrote first, or --

MR. HABINSKY: Defendants sent --

THE COURT: -- no, you wrote first.

MR. HABINSKY: -- the first letter, Your Honor.